UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

------------------------------X **Docket#**
UNITED STATES OF AMERICA,    : 18-M-1101-RML
                             :
     - versus -              : U.S. Courthouse
                             : Brooklyn, New York
                             :
LUCIO CELLI,                 : February 5, 2019
              Defendant      : 2:33 PM
------------------------------X

TRANSCRIPT OF CRIMINAL CAUSE FOR BAIL HEARING
BEFORE THE HONORABLE ROBERT M. LEVY
UNITED STATES MAGISTRATE JUDGE

**A P P E A R A N C E S:**


**For the Government**:          **Richard P. Donoghue, Esq.**
                                 United States Attorney

                        BY:      **Kayla Bensing, Esq.**
                                 Assistant U.S. Attorney
                                 271 Cadman Plaza East
                                 Brooklyn, New York  11201


**For the Defendant**:           **Leticia Olivera, Esq.**
                                 Federal Defenders of NY
                                 One Pierrepont Plaza
                                 Brooklyn, NY 11201




**Transcription Service**:       **Transcriptions Plus II, Inc.**
                                 61 Beatrice Avenue
                                 West Islip, New York 11795
                                 laferrara44@gmail.com




Proceedings recorded by electronic sound-recording,
transcript produced by transcription service

2

Proceedings

1 (The Court's microphone not functioning properly for most

2 of the proceeding, thereby causing indiscernible portions

3 in the record.)

4          THE CLERK:  Criminal Cause for a Bail

5 Application, case number 18-M-1101, United States v.

6 Lucio Celli.

7          Counsel, your name for the record.

8          MS. BENSING:  AUSA Kayla Bensing.

9          Good afternoon, your Honor.

10          MS. OLIVERA:  Good afternoon, your Honor.

11          Leticia Olivera, Federal Defenders of New York

12 on behalf of Mr. Celli, who is standing to my left.

13          THE COURT:  Good afternoon, Mr. Celli.

14          THE DEFENDANT:  Good afternoon, sir.

15          THE COURT:  Okay.  So I understand there's an

16 application.

17          MS. OLIVERA:  Yes, your Honor.  We are

18 presenting a bail package today.  We're asking that Mr.

19 Celli -- so we submitted a written bail application to

20 the Court.

21          As we represented in that motion, we're asking

22 the Court to release Mr. Celli on a collateral bond

23 secured by his parent's home.  His parents are in the

24 courtroom today.  If released, Mr. Celli is prepared to

25 go live with his parents and submit to whatever

3

Proceedings

1   restrictive conditions of bail the Court imposes

2   including home detention with electronic monitoring,

3   restrictions on email and internet use.

4           He is also willing to submit to whatever mental

5   health treatment but, you know, I will say whether or not

6   pretrial services recommends treatment here, Mr. Celli

7   does want to participate in mental health treatment.  He

8   was seeing a psychologist before his arrest and

9   participating in treatment at St. Joseph's Medical

10  Center.  If released, he would like to continue receiving

11  mental health treatment.

12          During the past three months at the MDC, Mr.

13  Celli has only had access to a psychiatrist who has

14  prescribed him medication.  He has been taking that

15  medication for the past three months.  Despite his mental

16  health needs and, of course, the fact that he has been in

17  jail for the first time in his life for the past three

18  months, Mr. Celli has adjusted as well, as can be

19  expected to the situation.  He hasn't had any incidents

20  while at the jail.  He understands the offense that he is

21  charged with and the gravity of it.  He has been working

22  closely with me on his case.

23          The offense that Mr. Celli is charged with

24  carries a five-year maximum term of imprisonment.  Based

25  on my calculation, he's facing a guidelines range,

4

Proceedings

1  assuming he pleads guilty, of 10 to 16 months.

2         We're asking the Court to give him the

3  opportunity to be released on bond, to continue to make

4  progress on his mental health.  Given that he's already

5  done three months in jail and is facing such a low

6  guidelines range, we think it makes sense to give him the

7  opportunity to prove himself, to potentially go back to

8  work if he is able to and live with his family and

9  continue to move forward with his life while his case is

10  pending.

11        Now -- one moment.

12        THE DEFENDANT:  Sorry, your Honor.

13 (Counsel and client confer)

14        MS. OLIVERA:  Mr. Celli is doing everything he

15  can to participate in mental health services at the MDC.

16  They are somewhat limited but he has, you know, requested

17  books on PTSD.  He's trying to do whatever he can to make

18  it through his time there and would like the opportunity

19  to be released and participate in -- and continue to

20  participate in psychiatric treatment.

21        Now, there is no presumption of detention in

22  this case.  So the burden is on the government to prove

23  that Mr. Celli is a danger by clear and convincing

24  evidence.  There is no allegation that Mr. Celli did

25  anything other than send emails.

5

Proceedings

1      We have -- the government to-date has not
2 indicated that there was any reason to believe Mr. Celli
3 presented a danger of physical harm to anyone.  He has no
4 criminal history.  His long record of public service,
5 close family ties and law-abiding conduct, I think, all
6 weighs in favor of finding that he does not present a
7 danger to the community which means that under the Bail
8 Reform Act, he must be released.
9      THE COURT:  All right
10      MS. BENSING:  Thank you, your Honor.  The
11 government continues to oppose the defendant's release
12 and I want to just touch upon a few things.  The first is
13 that defense counsel characterizes the conduct in this
14 case as sending emails but I think it's worth
15 underscoring the nature and content of the emails sent in
16 this case which was violent.
17      It was sent to a number of individuals.
18 Subject line was: "Brodie and Cogan.  You mother-f'ers
19 sent the U.S. Marshals and they threatened my DUI case,
20 et cetera, but I can't file in court like a normal
21 person.  I have to f-stab you to get justice."
22      A second email sent the same day said, "Katzman
23 and Stewart, either you deal with the U.S. Marshal threat
24 from Brodie and Cogan or I hunt them down and kill them
25 because they want to act like the Mafia.  They have to

6

Proceedings

1  die like the Mafia."

2          I understand that this was emails and there's

3  no physical or attempted physical conduct -- contact in

4  this case yet but I want to highlight the progression

5  here which is that the defendant was arrested in a DUI

6  case, I believe a couple of years ago now.

7          Subsequent to that he got or around the same

8  time, he got embroiled in civil litigation.  He was a

9  defendant in one case.  He was a pro se plaintiff in

10  another case.  Both of the cases were dismissed.  Both of

11  which were dismissed, you know, pursuant to opinions,

12  pursuant to the way that our court system works.

13          He sent one email in March of last year that

14  was inappropriate.  The marshals approached him, asked

15  him to stop, obtained his understanding that he knew that

16  these were inappropriate communications and yet there was

17  another round of emails in the fall.

18          And I understand that there are real --

19  potentially real mental health issues in this case and

20  the government is open to getting submissions about that

21  that are detailed and that have a treatment plan and that

22  contain information as to whether the defendant was on

23  medications at the time that he committed this, whether

24  the defendant is on those same medications now, what

25  treatment he was receiving at the time that he did this

7

Proceedings

1    offense, what treatment he is receiving now and what

2    treatment he is going to receive when he gets out.

3           But the submission presented today doesn't

4    contain any of that information and so I -- the

5    government continues to be concerned about the safety of

6    the community and the safety of the victims and continues

7    to oppose bail.

8           THE COURT:  Yes.  Predictions of future

9    violence and other (indiscernible) threats but threats of

10   harm are serious and we have to take them seriously but

11   what concerns me the most (indiscernible) stop sending

12   inappropriate email (indiscernible).  You know, something

13   (indiscernible) November 12th (indiscernible) something

14   happened to cause him, not only to send more

15   inappropriate (indiscernible) Judge Brodie but that more

16   -- more serious, more disturbing threats (indiscernible).

17          So the question what happened between those

18   dates and what's happened since then --

19          MS. OLIVERA:  Well, your Honor, just to correct

20   the time line presented by the government, Mr. Celli's --

21   Mr. Celli has no prior convictions.  Around the time of

22   his DUI offense, he was experiencing issues with

23   substance abuse.  That is why he was placed in substance

24   abuse treatment at St. Joseph's Medical Center.

25          THE COURT:  And this was somewhere around the

8

Proceedings

1   arrest of September 8th, 2017?

2        MS. OLIVERA:  That was --

3        THE COURT:  You're talking about the DUI.

4        MS. OLIVERA:  -- early in 2018.  So I am

5   starting a little bit further back than your Honor

6   requested but --

7        THE COURT:  I'm talking about the active DUI.

8        MS. OLIVERA:  Yes.  So he was experiencing

9   issues with substance.  He did become involved in an

10  employment dispute and I think the fact that the marshals

11  went to visit him and then didn't take any action on his

12  case for over eight months, I think, shows that there was

13  no indication at that time that he presented a real

14  danger to anyone.

15        Now if --

16        THE COURT:  I'm sorry, but we're going to have

17  to start (indiscernible)?

18        MS. OLIVERA:  March -- from March to November.

19        THE COURT:  Right, because of the date

20  (indiscernible) and then (indiscernible) two

21  (indiscernible) and then everything was going fine, no

22  problem with (indiscernible).  In November, somewhat --

23  perhaps more disturbing (indiscernible).

24        THE DEFENDANT:  So I am -- no, I -- no, wait.

25  (Counsel and client confer)

9

Proceedings

1      THE DEFENDANT:  The New York City Mental Health

2  was sent by Judge Brodie to threaten me with either take

3  away my judicial complaint or they were going to

4  institutionalize me.

5  (Counsel and client confer)

6      THE DEFENDANT:  No, wait.  No.  And then my DUI

7  lawyer told me I was gig to be convicted of DUI drugs,

8  even though I tested negative for cocaine.  I was going

9  to be convicted of DUI drugs because I was having

10  flashbacks.  So that's what -- and then I had the U.S.

11  Marshals -- no, you can record everything -- I had U.S.

12  Marshals threaten my -- my -- my DUI case.

13      So there's documents missing from the docket.

14  So I felt I had no other -- I had no other choice.  Would

15  I -- would I -- I prefer to do everything on the up and

16  up.  I felt I had no other choice.  And I even said that

17  on the audio recording, so -- on video tape.  So

18  that's --

19      So I don't have any plans on carrying out any

20  threat.  My plans are to get vindicated and because Judge

21  Brodie lied, she knew -- she knew that March 16th, I said

22  that Randi Weingarten has to look me in my eyes and tell

23  me why I need to be ashamed of being raped.  That's what

24  I want.  That has nothing to do with hurting anybody and

25  the -- the AUSA knows she's mischaracterizing it and is

Transcriptions Plus II, Inc.

10

Proceedings

1   conducting misconduct.

2           I had no intention of hurting anybody.  I want

3   my rights and I was born in this country.  My parents are

4   immigrants and I want my rights.

5           MS. OLIVERA:  Your Honor, as --

6           THE COURT:  Sounds like a pretty awful

7   experience that you had some -- I don't want to say

8   anything more to make (indiscernible) place

9   (indiscernible) have a lot of PTSD and flashbacks

10  afterwards (indiscernible).

11          MS. OLIVERA:  Your Honor, Mr. Celli, as he just

12  conveyed, was experiencing some psychological distress

13  but the person that was arrested in November is very

14  different than the person that is standing before the

15  Court today.

16          He has been in custody for the past three

17  months.  He's been charged with a federal crime.  His job

18  is on the line.  His freedom is on the line.  He

19  understands the gravity of the situation that he fines

20  himself in and we're asking for an opportunity for him to

21  be released, get the psychiatric treatment he needs and

22  resolve not only this case but also his pending DUI case.

23          Since he's been in federal custody, he hasn't

24  been produced to state court to help him deal with that

25  case.  Now if there's any concern that Mr. Celli presents

11

Proceedings

1  a danger to the community, he is willing to submit to

2  home confinement and electronic monitoring.  And as I

3  mentioned, have his internet and email access restricted

4  and monitored by pretrial services.

5           His parents are in the courtroom today.  They

6  are willing to not only put up their home as collateral

7  for any bond but they're also willing to serve as third-

8  party custodians to ensure that Mr. Celli complies with

9  whatever conditions of pretrial release that he is

10 subject to.

11          MS. BENSING:  Your Honor, may I respond?

12          THE COURT:  Yes.

13          MS. BENSING:  Thank you.  Just initially as to

14 the state case, I just want to note for the record that

15 the defendant pled guilty in that case on October 30th,

16 2018, to operating a motor vehicle without a license and

17 driving while his ability was impaired.  So I would note

18 that that's the status of the state case and I actually

19 got a call from the prosecutor in that case today

20 requesting his production which, of course, I would

21 consent to.  I forgot the date.  I literally just got the

22 call right before I came over.

23          THE COURT:  Uh-hum.

24          MS. BENSING:  So that's the status of the state

25 case.  I also wanted to say that the government has

12

Proceedings

1    obtained several of the defendant's calls that he's

2    placed while incarcerated and I want to highlight some of

3    them for the Court.

4            On November 20th, the defendant stated in a

5    call, "I don't want them to get away with what they did

6    to me, the judges."

7            On November 22nd in a call, the defendant

8    stated, "You 'F' with judges and they're going to 'F'

9    with you.

10           Later on November 22nd, he said, "Well, I went

11   the right way.  It didn't work, so I figured I'd go this

12   way and it is what it is.  I have plans of getting

13   justice."

14           In a call on December 3rd, the defendant

15   stated, "I am not ashamed of why I am here.  There is a

16   reason why I did this.  I did this because the judges

17   lied under oath and they need to answer for it, plain and

18   simple."

19           There's a number of statements like this that I

20   think are on par with the statements that the defendant

21   has made today and I am sympathetic to the mental healths

22   concerns here and I am sympathetic to the fact that there

23   appears to be a real history here.

24           But nonetheless, the government's concern is

25   the safety of the victims and the progression in this

13

Proceedings

1   case has not been positive.

2            THE COURT:  And so I think what you've

3   requested which doesn't seem unreasonable is that the

4   (indiscernible) in terms of the (indiscernible) to ensure

5   that there won't be (indiscernible) threats or acting on

6   the statements that the government is (indiscernible).

7            So I think it's a (indiscernible).  I think

8   it's missing that (indiscernible) experts

9   (indiscernible).

10           MS. OLIVERA:  What we have provided to the

11  Court are records showing that Mr. Celli was

12  participating in treatment at St. Joseph's Medical

13  Center.  That treatment was focused on addressing

14  substance abuse, help PTSD, and also helping him with his

15  interpersonal relationships.

16           Now if he is released, I am confident that

17  pretrial services will work with him to help make sure

18  that he's getting all of the treatment that he needs.

19  Mr. Celli is willing to submit to intensive outpatient

20  mental health treatment, or in-patient drug treatment, if

21  it's deemed necessary but I think that there's no doubt

22  that if he is released, pretrial services is going to

23  make sure that he not only gets access to the treatment

24  that he needs but also complies with whatever they

25  require of him in terms of treatment.

Proceedings

14

1   So I have no issue with providing a treatment

2   plan to the Court and providing additional records but I

3   think what's going to be most important when he is out on

4   bail is that he comply with the conditions of bail, and I

5   have no doubt that pretrial is going to take his mental

6   health issues seriously and get him the help that he

7   needs.

8         THE COURT:  What's the status with the case?

9         MS. BENSING:  The current federal case, your

10  Honor?

11        THE COURT:  Uh-hum.

12        MS. BENSING:  So I am not sure whether or not

13  the defense will be seeking a third OED today but they

14  have previously sought two prior OEDs which the

15  government has consented to in the hopes of receiving a

16  submission as to the defendant's mental health status and

17  potentially resolving this case short of the charges in

18  the complaint.

19        I received a submission on Friday evening.  I

20  spoke to Ms. Olivera about it yesterday and raised

21  similar concerns to what I am raising today which is that

22  the government continues to lack an understanding of when

23  he receives certain diagnoses, what treatment during what

24  periods he received, what medication during what periods

25  he was on and a coherent treatment plan moving forward.

15

Proceedings

1    And I expressed those concerns to Ms. Olivera last night.

2              THE COURT:  So it sounds as though the same

3    issues that could resolve this case are the same issues

4    that (indiscernible) today (indiscernible).

5              MS. OLIVERA:  Yes, but what I would say is, you

6    know, under the Bail Reform Act, Mr. Celli is presumed to

7    be released unless the government can prove his

8    dangerousness by clear and convincing evidence. So I

9    don't want to confuse our plea negotiations with what's

10   required under the Bail Reform Act and I think that it's

11   inconsistent with the Bail Reform Act to require Mr.

12   Celli to bear the burden of proving that he doesn't

13   present a danger and we're happy to do -- to provide

14   whatever information is helpful but I think the standards

15   are very different and again, despite the nature of the

16   case, I am not disputing the nature or the content of the

17   emails.  This is an offense that carries a five-year max.

18   It's not a crime of violence and there's no presumption

19   of detention.

20             THE COURT:  Of course.  But I think the

21   government has raised -- I think the light turned off

22   here.

23   (The Court's microphone turned on)

24             THE COURT:  I think the government has raised

25   serious issues from the statements that were taken from

16

Proceedings

1  recorded conversations that suggests that the same

2  concerns that prior judges had about, where he is and

3  what his intentions are, still exist and in fact, in

4  troubling ways.

5          So in order to rebut that, I think it would be

6  incumbent on the defense to provide some information that

7  would provide insight either into his condition at this

8  point, and/or the treatment plan, so that he would not be

9  a danger to the community if he is released.

10         At this point, the evidence that I have is that

11  instead of de-escalating, the threats have actually

12  escalated or from March of 2018 to November of 2018 and

13  then thereafter, didn't dissipate and, in fact, continued

14  to be troubling based on what the government said

15  thereafter.

16         So at this point, there's no reason to -- I

17  mean, the finding that there was clear and convincing

18  evidence that he was a danger to the community was one I

19  believe that's been made earlier and there's nothing in

20  the record that changes that.

21         So that's -- my suggestion was if you want to

22  put in something in the record that would help change

23  that, then come back to court and the judge will hear you

24  on that but at this point, those statements are

25  uncontradicted, you know, other than your assurance and

17

Proceedings

1   an attorney's assurance -- I know you mean well but I

2   don't think your assurance is sufficient.

3           MS. OLIVERA:  Understood.

4           MS. BENSING:  As to --

5   (Counsel and client confer)

6           THE CLERK:  30 days from today?

7           MS. OLIVERA:  Yeah.

8           THE CLERK:  Let's do March 7th or 8th.  7th is

9   a Thursday, the 8th is a Friday.

10          MS. OLIVERA:  Okay, I will do March 7th.

11          THE COURT:  So, Mr. Celli, do you understand

12  what it means to exclude time?

13          THE DEFENDANT:  Yes, I've been through this

14  already with Judge Mann.

15          THE COURT:  All right.  Okay.  So your -- we

16  didn't put the day by which you want to exclude it to.

17  So we have 2/5 to --

18          THE CLERK:  3/7.

19          THE COURT:  -- 3/7, so shall I put that in?

20          THE CLERK:  Yes.

21          THE COURT:  Okay.  So you're excluding speedy

22  indictment time, as you've done before from March --

23  February 5th through March 7th.  Do you have any

24  questions about what you are doing?

25          THE DEFENDANT:  No.

18

                              Proceedings

1            THE COURT:  Are you making that decision

2    voluntarily?

3            THE DEFENDANT:  Yes.

4            THE COURT:  Okay.  The application is granted.

5    And again, if you would like to make a submission, the

6    Court will hear you on the other submissions.

7            MS. OLIVERA:  Thank you, your Honor.

8            THE CLERK:  Anything else?

9            MS. OLIVERA:  No, thank you.

10           MS. BENSING:  Nothing further.

11           THE CLERK:  Okay, thank you.

12              (Matter concluded)

13                  -o0o-

14

15

16

17

18

19

20

21

22

23

24

25

19

# C E R T I F I C A T E

I, LINDA FERRARA, hereby certify that the foregoing transcript of the said proceedings is a true and accurate transcript from the electronic sound-recording of the proceedings reduced to typewriting in the above-entitled matter.

I FURTHER CERTIFY that I am not a relative or employee or attorney or counsel of any of the parties, nor a relative or employee of such attorney or counsel, or financially interested directly or indirectly in this action.

IN WITNESS WHEREOF, I hereunto set my hand this **4th** day of **March**, 2019.

*Linda Ferrara*

Linda Ferrara

AAERT CET 656

Transcriptions Plus II, Inc.