

U.S. Department of Justice

United States Attorney
Eastern District of New York

NS:KCB/ALK
F. #2018R02184

271 Cadman Plaza East
Brooklyn, New York 11201

November 23, 2020

<u>By E-mail and ECF</u>

The Honorable Paul A. Engelmayer
United States District Court
Eastern District of New York
*Sitting by designation*
40 Foley Square
New York, New York 10007

       Re:    United States v. Lucio Celli
                  Criminal Docket No. 19-127 (PAE)

Dear Judge Engelmayer:

        The government respectfully submits these motions <u>in</u> <u>limine</u> in advance of trial in the above-referenced case.[1] The defendant is charged with one count of transmitting threats to cause death and bodily injury, in violation of Title 18, United States Code, Section 875(c). The government moves to: (1) preclude the defendant from introducing his own self-serving hearsay statements; (2) permit the government to offer certain email communications from the defendant, as well as prior interactions with deputy marshals of the United States Marshals Service, as direct evidence of the charged crime, or, alternatively, under Federal Rule of Evidence 404(b); (3) limit the introduction of evidence relating to two civil lawsuits the defendant litigated before the Honorable Margo K. Brodie and the Honorable Brian M. Cogan, United States District Judges for the Eastern District of New York; and (4) preclude the defendant from making arguments about the defendant's nonexistent First Amendment right to send the threatening communications charged in this case.

---

[1] The government reserves its right to supplement this filing with additional motions <u>in</u> <u>limine</u> as it prepares for trial, reviews evidence and interviews potential witnesses. The government will meet and confer with defense counsel to resolve any issues as they arise before engaging in motion practice.

I.        Relevant Factual Background[2]

On November 12, 2018, the defendant threatened to kill Judge Brodie and Judge Cogan. The defendant sent these threats in emails addressed to Judge Brodie and Judge Cogan, as well as to the Honorable Robert A. Katzmann, United States Circuit Judge for the Second Circuit Court of Appeals, among other individuals.

The defendant sent the first threat at approximately 6:57 p.m. The email's subject line stated the following: "Brodie and cogan you mother fuckers sent the us marshalls and they threatened my dui case . . . fraud upon the court.. i spent all night reading . . . but i can't file in court like a normal person i have to fuck stab you to get justice."[3]

Minutes later, at approximately 7:00 p.m., the defendant sent a second threat. Specifically, he sent a second email to Judges Brodie, Cogan and Katzmann, as well as other individuals, with the following subject line: "KATZMANN AND STEWDART …EITHER YOU DEAL WITH THE US MARSHALL THREAT FROM BRODIE AND COGAN OR I HUNT THEM DOWN AND KILL THEM BECAUSE THEY WANT TO ACT LIKE THE MAFIA THEY HAVE TO DIE LIKE THE MAFIA."

The defendant did not stop there. At approximately 7:04 p.m. and 7:07 p.m. the same night, the defendant sent two more threats to the judges and other individuals. The subject line of the 7:04 p.m. email stated, "KATZMANN AND STEWDART ..IF I HURT ANYONE IT IS ON YOU BECAUSE YOU WANT TO COVER UP THEIR CRIMINAL MISCONDUT …I PROMISE THAT I KILL THEM IF YOU DONT ADDRESS THE CRIME AGAINST ME …MOTHER FUCKERS." The subject line of the 7:07 p.m. email stated: "KATZMANN AND STEWDART …YOU BOTH ARE FUCKING PROVOKING ME BY NOT ANSWERING …THEY SENT AND CARRIED OUT THEIR THREAT AND OW IETHE YOU DEAL M=WITH IT OR I KILL THM E."

The defendant's November 12, 2018 threats were not his first communications to Judges Brodie and Cogan. The defendant was a party to two civil lawsuits before the judges, both involving claims related to his employment with, and disciplinary actions taken against him by, the New York City Department of Education: Celli v. New York City Department of Education, et al., No. 15 Civ. 3679 (BMC) (E.D.N.Y. June 24, 2015) ("the 2015 lawsuit") and Combier v. Portelos, et al., No. 17 Civ. 2239 (MKB) (E.D.N.Y. Apr. 13, 2017) ("the 2017 lawsuit"). As relevant here, in the 2015 lawsuit, Judge Cogan denied the defendant's motion to disqualify him from presiding over the case and dismissed the defendant's third amended complaint with prejudice. See ECF No. 52. Judge Cogan declined to sanction the defendant for his inappropriate conduct in the case, but admonished

---

[2] The proffer of facts set forth herein is not a complete statement of all facts and evidence of which the government is aware or will seek to introduce at trial.

[3] Unless otherwise indicated, the defendant's emails are transcribed verbatim.

2

the defendant that "should he ever find himself in any court on some other case and conduct himself in the manner that he did here, the result of a motion [for sanctions] may be different." See ECF No. 60 at 2. The defendant appealed Judge Cogan's dismissal of the 2015 lawsuit, and the Second Circuit affirmed Judge Cogan's decision. See ECF No. 64.

With respect to the 2017 lawsuit, in which the defendant was both a defendant and counter-claimant, on May 22, 2018, Judge Brodie issued an order in response to "harassing and duplicative motions and letters" filed by the defendant in that case. See ECF No. 135 at 2. That order "warned [the defendant] that should he continue filing such letters or motions, the Court w[ould] take appropriate action, which may include barring him from filing additional letters or motions without leave from the Court." Id. at 3. A few months later, on September 29, 2018, Judge Brodie granted a motion to dismiss the defendant's counterclaims. See ECF No. 144. The defendant attempted to appeal Judge Brodie's decision, but the Second Circuit "decline[d] to hear the arguments both because they [we]re untimely and because Celli did not file a notice of appeal." See ECF No. 147.

In March 2018, after Judge Cogan dismissed the 2015 lawsuit and while the 2017 lawsuit was still pending, the defendant started sending emails to both judges.[4] On March 16, 2018, the defendant sent an email to the judges and other individuals stating that he was "going to fucking haunt" the President of the American Federation of Teachers, and that he wanted the recipients of the email "to know that I wont stop until Cogan and the panel fucking answers." The same day, deputy marshals of the United States Marshals Service ("USMS") met with the defendant to discuss the email. During that discussion, which was voluntary and occurred in a McDonald's parking lot, the defendant admitted that he sent the email and assured the deputy marshals that he would stop sending inappropriate communications to court officials and, instead, would change the tone of his emails to business correspondence. The defendant at that time stated that his intent was not to harm or stalk the judges.

Thereafter, the defendant continued to send increasingly hostile emails to Judges Brodie, Cogan and Katzmann, among other individuals. For example, on May 23, 2018, the defendant sent an email with the subject line, "Hon. Brodie knows." The email accused Judge Brodie and Judge Cogan of "misconduct" and of "not car[ing] about public confidence or their Oath of Office," among other accusations. A few months later, on July 15, 2018, the defendant sent additional emails to the judges with the subject lines, "Brodie— you are a fucking lied under oath because you Sent the us marshalls" and "Cogan—is a criminal too, as you lied about mandatory recusal."

---

[4] The emails identified herein are representative of the communications that the government intends to introduce at trial. They are not necessarily exhaustive, and the government may seek to introduce as evidence emails of a similar nature that are not specifically identified here.

3

Eventually, on November 12, 2018, the defendant's emails culminated in the threats to kill Judge Brodie and Judge Cogan described above. On November 14, 2018, the defendant was arrested for transmitting threats to cause death and bodily injury in violation of Title 18, United States Code, Section 875(c). Following his arrest, the defendant was given Miranda warnings, which he waived, and he chose to speak with Deputy Marshals Elba Rapalo and Gregory Mapp. During his post-arrest interview, the defendant stated, in sum, substance and in part, that: (1) the email addresses used to send the above-described emails belonged to him and he is the only person with access to the accounts used to send the emails; (2) he became angry and wrote emails threatening violence to Judge Brodie and Judge Cogan; and (3) he did so with the intent to threaten them.

On March 8, 2019, a grand jury returned an indictment against the defendant, charging him with one count of transmission of one or more threats to injure in violation of Title 18, United States Code, Section 875(c).

II.   Argument

A.   The Defendant's Own Self-Serving Statements Are Inadmissible

At trial, the government expects to introduce inculpatory statements made by the defendant to Deputy Marshals Rapalo and Mapp in his post-Miranda, post-arrest statement, as well as inculpatory statements made by the defendant on recorded telephone calls from the Metropolitan Detention Center ("MDC"). The government does not intend to introduce the defendant's post-arrest statement or the relevant telephone calls in their entirety. As explained below, the Court should preclude the defendant from introducing his own self-serving hearsay statements, even if the government introduces evidence about the defendant's inculpatory statements.

It is well established that a defendant may not "attempt to get his side of the . . . story in front of the jury without himself testifying and opening himself up to cross-examination." United States v. Davidson, 308 F. Supp. 2d 461, 480 (S.D.N.Y. 2004). Accordingly, when offered by him to prove the truth of the matter asserted, the defendant's own statements are inadmissible hearsay. See, e.g., United States v. Rutigliano, 614 F. App'x 542, 545 (2d Cir. 2015); United States v. Jackson, 180 F.3d 55, 73 (2d Cir. 1999); United States v. Marin, 669 F.2d 73, 84 (2d Cir. 1982). In contrast, when the government offers a defendant's out-of-court statements for their truth, those statements are not hearsay, they are "simply a statement of the opposing party" and admissible pursuant to Federal Rule of Evidence 801(d)(2)(A). Marin, 669 F.2d at 84.

These principles generally preclude the defendant from offering his own statements into evidence, even when the government offers other parts of those statements. See, e.g., United States v. Moore, 793 F. App'x 1, 4 (2d Cir. 2019); United States v. Johnson, 507 F.3d 793, 796-97 (2d Cir. 2007). Accordingly, courts routinely parse a defendant's statements to admit the inculpatory portions offered by the government and exclude the self-serving, unconnected portions offered by the defendant. See, e.g., United States v. Lange,

4

834 F.3d 58, 79 (2d Cir. 2016) (affirming district court decision to admit redacted portions of defendant's grand jury testimony while excluding other portions); United States v. Hill, 658 F. App'x 600, 605 (2d Cir. 2016) (affirming district court's parsing of a defendant's recorded telephone calls to admit discrete inculpatory statements and exclude other self-serving statements); Rutigliano, 614 F. App'x at 545 (affirming district court decision to admit portions of defendant's statements offered by government and preclude other portions offered by defendant); United States v. Johnson, 507 F.3d 793, 796-97 (2d Cir. 2007) (holding that the court properly bifurcated a defendant's post-arrest statement and precluded the defense from introducing a self-serving portion of the defendant's post-arrest statement); United States v. Jadusingh, No. 18-CR-257 (KAM), 2020 WL 4261122, at *3 (E.D.N.Y. July 24, 2020) (granting government's motion to admit discrete portions of post-arrest statement and preclude portions offered by defendant).

As noted earlier, the government expects to offer inculpatory statements the defendant made during his post-arrest interview and on recorded telephone calls from the MDC. With respect to the defendant's post-arrest statement, the government expects to introduce portions of the statement in which the defendant admitted that: (1) the email addresses used to send the above-described emails belonged to him and he is the only person with access to the accounts; (2) he became angry and wrote emails threatening violence to Judge Brodie and Judge Cogan; and (3) he did so with the intent to threaten them. The portions of the defendant's post-arrest statement that the government expects to introduce at trial are highlighted in Exhibit A.[5]

As to the recorded telephone calls, the government expects to introduce the defendant's statement on a November 22, 2018 call that he "knew what [he] was doing" and that he "went the right way and it didn't work so I figured I would go this way and, you know, it is what it is," and on a December 3, 2018 call that he sent the threats because Judge Brodie and Judge Cogan "need[ed] to answer for" their alleged misconduct. The portions of the defendant's November 22, 2018 and December 3, 2018 calls that the government expects to introduce are highlighted in Exhibits B and C, respectively.

As explained above, when offered by the government, these statements constitute admissions of an opposing party and, thus, are admissible under Rule 801(d)(2)(A). Moreover, the statements are relevant, highly probative evidence of the charged crime, including that the defendant sent the emails charged in the indictment, that he knew those emails were threatening, and that he acted knowingly and intentionally in sending them. See Fed. R. Evid. 403.

As discussed above, the same hearsay exception would not apply should the defendant seek to introduce his own self-serving statements. Accordingly, even if the government introduces those portions of the defendant's statements outlined above, the defendant should be precluded from introducing other portions of his statements. The

---

[5] The transcriptions attached hereto are in draft form and are subject to revision.

defendant is free to take the stand and testify on his own behalf. He should not, however, be permitted to elicit his self-serving hearsay statements from other witnesses.

### B. Email Communications from the Defendant and Prior Interactions with the USMS Are Admissible

As explained above, the defendant sent numerous emails to Judge Brodie and Judge Cogan from March 2018 until his arrest in November 2018, despite indicating to deputy marshals that he would not do so. Over time, his emails became increasingly hostile and eventually culminated in his November 12, 2018 threats to kill the judges. As explained below, the defendant's other email communications, as well as his prior interactions with deputy marshals, are admissible as direct evidence of the charged crime or, in the alternative, under Federal Rule of Evidence 404(b).

It is well-established that evidence that arises "out of the same transaction or series of transactions as the charged offense," or is "inextricably intertwined with the evidence regarding the charged offense," or "is necessary to complete the story of the crime on trial" is admissible as direct evidence and not subject to Rule 404(b). See, e.g., United States v. Carboni, 204 F.3d 39, 44 (2d Cir. 2000). Accordingly, the Second Circuit has repeatedly upheld the admission of other act evidence as direct evidence of the charged crimes where the evidence provided necessary background or context. See, e.g., United States v. Gonzalez, 110 F.3d 936, 942 (2d Cir. 1997) (uncharged burglary admissible in trial for felon in possession of a firearm because, among other things, it provided "crucial background evidence that gave coherence to the basic sequence of events that occurred"); United States v. Inserra, 34 F.3d 83, 89 (2d Cir. 1994) (noting that evidence of other "bad acts" may be admitted "to provide the jury with the complete story of the crimes charged by demonstrating the context of certain events relevant to the charged offense"). "Evidence that does not directly establish an element of the offense charged" may nevertheless be admissible to "provide background for the events alleged in the indictment," including "to show, for example, the circumstances surrounding the events or to furnish an explanation of the understanding or intent with which certain acts were performed." United States v. Coonan, 938 F.2d 1553, 1561 (2d Cir. 1991) (quoting United States v. Daly, 842 F.2d 1380, 1388 (2d Cir. 1988)). Indeed, as the Supreme Court has recognized, in analyzing the admissibility of evidence, the trial court should make its determinations "with an appreciation of the offering party's need for evidentiary richness and narrative integrity in presenting a case." Old Chief v. United States, 519 U.S. 172, 183 (1997).

Here, the defendant's series of increasingly hostile and, ultimately, threatening and criminal email communications, even after informing USMS deputy marshals that he would desist sending the same, are inextricably intertwined with the evidence regarding the charged offense, and provide necessary background and context to the charged offense.[6] As

---

[6] As noted above, the government has not identified every email that it may offer as an exhibit at this stage. The emails described herein are representative of the types of email

explained above, the indictment charges the defendant with threats made on November 12, 2018. But the numerous email communications that the defendant sent starting in or around March 2018 and ending with his 7:07 p.m. email on November 12, 2018—including emails sent after the defendant spoke with deputy marshals—are integral to proving the charged offense. In particular, these emails and USMS communications show that the defendant's communications grew increasingly hostile over time, and that when the defendant ultimately sent the emails underlying the indictment he knew what he was doing and intended those communications to be received as threats. The series of inappropriate emails demonstrate that the November 12, 2018 threats underlying the indictment were not sent by accident or mistake, or even in a momentary lapse of judgment, and should not be brushed aside as mere hyperbole. See, e.g., United States v. Graziano, 558 F. Supp. 2d 304, 320 (E.D.N.Y. 2008) (holding that evidence about "alleged threatening conduct in direct conversations with the victims as well as the alleged unsuccessful plan to assault the victims, [wa]s inextricably intertwined with the charged arson and [wa]s clearly necessary to complete the story of the crime on trial).

Although the government respectfully submits that the defendant's hostile email communications to the victims in this case, as well as his prior conversation with deputy marshals, constitute direct evidence of the charged crime, in the alternative, the evidence is admissible under Rule 404(b) to prove the defendant's intent, knowledge, absence of mistake and motive. The Second Circuit takes an inclusionary approach to Rule 404(b), allowing the admission of other act evidence "for any purpose other than to show a defendant's criminal propensity." United States v. Moran-Toala, 726 F.3d 334, 345 (2d Cir. 2013); see also United States v. Carlton, 534 F.3d 97, 101 (2d Cir. 2008) (stating that "our Court follows the inclusionary approach to other crimes, wrongs or acts evidence") (internal quotation marks omitted)); United States v. Pascarella, 84 F.3d 61, 69 (2d Cir. 1996) (same). Such evidence is appropriately admitted if it is: "(1) offered for a proper purpose; (2) relevant, and (3) substantially more probative than prejudicial. In addition, (4) at the defendant's request, the district court should give the jury an appropriate limiting instruction." United States v. Downing, 297 F.3d 52, 58 (2d Cir. 2002) (citing Huddleston v. United States, 485 U.S. 681, 691-92 (1988)).

Here, the government anticipates that the defendant will argue that he lacked the requisite intent or knowledge to be found guilty of the charged crime. As explained above, the uncharged emails and prior conversation with deputy marshals undermine those arguments by showing that the threats charged in the indictment were intended as threats and were not made by mistake or in a momentary lapse of judgment. Additionally, many of the uncharged emails, like the July 15, 2018 emails accusing Judge Brodie of lying under oath and Judge Cogan of lying about "mandatory recusal," are evidence of the defendant's

---

communications the government may seek to admit at trial as direct evidence or, in the alternative, under Federal Rule of Evidence 404(b).

motives for threatening the judges. Accordingly, the uncharged email communications and prior interaction with deputy marshals are admissible under Rule 404(b).

### C. The Court Should Preclude Irrelevant Evidence About The Defendant's Civil Cases Before Judge Brodie And Judge Cogan

As explained above, the defendant was a party to two civil lawsuits before Judge Brodie and Judge Cogan from approximately June 2015 to September 2018. The government intends to offer limited evidence about these civil matters to establish necessary background and context and to show motive. In particular, the government expects to introduce the following facts: (1) the defendant was a party to two civil lawsuits, one before Judge Cogan and one before Judge Brodie; (2) Judge Cogan denied the defendant's motion for his recusal; (3) Judge Cogan and Judge Brodie dismissed the defendant's claims in both cases; (4) Judge Cogan and Judge Brodie admonished the defendant in both cases; and (5) the defendant's attempts to appeal the district court decisions were unsuccessful. To the extent the defendant intends to introduce evidence about the substance of the claims in those lawsuits or the other parties to those lawsuits, or use this criminal forum to attempt to relitigate claims already decided against him by Judge Brodie and Judge Cogan, the Court should preclude such evidence under Federal Rules of Evidence 402 and 403.

Under Rule 402, "[i]rrelevant evidence is not admissible." Fed. R. Evid. 402. Evidence is relevant if "(1) it has any tendency to make a fact more or less probable than it would be without the evidence; and (2) the fact is of consequence in determining the action." Fed. R. Evid. 401. Rule 403 provides that a court "may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403.

Here, any evidence about the substance of the allegations in the civil lawsuits or the other parties to the civil lawsuits, other than the fact of those lawsuits and their unfavorable outcomes for the defendant, would be irrelevant to the issues at trial. To carry its burden of proof on the sole count charged in the Indictment, the government must prove: (1) the defendant threatened the life of or bodily injury to Judge Brodie and Judge Cogan, identified in the Indictment as Jane Doe and John Doe; (2) at least one threat was transmitted in interstate commerce; and (3) the defendant transmitted at least one threat knowingly and intentionally. See L. Sand, et. al., Modern Federal Jury Instructions (2016 ed.), Instruction 31-7. Evidence about the substance of filings in the civil lawsuits and the other parties to those lawsuits, apart from the fact that those lawsuits existed and that Judge Brodie and Judge Cogan ruled against the defendant, has nothing to do with the charged crime. Even if the Court concluded that such evidence was relevant, the Court should still preclude the evidence under Rule 403 because its minimal probative value would be substantially outweighed by risk of confusing the issues, misleading the jury, unduly delaying the proceeding, and wasting time.

D. <u>The Court Should Preclude the Defendant from Presenting Evidence or Arguing About His Nonexistent First Amendment Right To Email Threatening Communications</u>

The Court should preclude the defendant from presenting evidence or making arguments referencing any First Amendment right to have sent the November 12, 2018 emails because no such right exists. The Second Circuit has repeatedly upheld the constitutionality of 18 U.S.C. § 875(c). <u>See, e.g.</u>, <u>United States v. Kelner</u>, 534 F.2d 1020, 1026-27 (2d Cir.), <u>cert. denied</u>, 429 U.S. 1022 (1976); <u>United States v. Turner</u>, 720 F.3d 411, 423 (2d Cir. 2013); <u>United States v. Xiang Li</u>, 381 F. App'x 38, 38 (2d Cir. 2010). In <u>Kelner</u>, the Second Circuit explained that the statute is "consonant with the protection of First Amendment interests" as long as the meaning of "threat" is construed, as it has been by courts, to mean a "true threat." <u>See</u> 534 F.2d at 1026-27. In concluding that the threat in that case was a "true threat," the Second Circuit explained that "[s]o long as the threat on its face and in the circumstances in which it is made is so unequivocal, unconditional, immediate and specific as to the person threatened, as to convey a gravity of purpose and imminent prospect of execution, the statute may properly be applied." <u>Id.</u> at 1027. The "question of whether a defendant's communication is a true threat rather than speech protected by the First Amendment" is a "question of law for the court," not the jury. <u>United States v. Francis</u>, 164 F.3d 120, 123 n.4 (2d Cir. 1999); <u>accord</u> <u>Kelner</u>, 534 F.2d at 1028.

Here, the defendant's November 12, 2018 threats to kill Judge Brodie and Judge Cogan are true threats not protected by the First Amendment. <u>See, e.g.</u>, <u>Turner</u>, 720 F.3d at 421-22 (defendant's statements on his website that three judges did not "get the hint" after another judge was killed, that "[i]t appear[ed] another lesson [wa]s needed," and that the judges "should be killed" were not constitutionally protected); <u>Kelner</u>, 534 F.2d at 1028 (defendant's statements at press conference that, "We have people who have been trained and who are out now and who intend to make sure that Arafat and his lieutenants do not leave this country alive;" "We are planning to assassinate Mr. Arafat;" and "Everything is planned in detail," were not protected by the First Amendment). Accordingly, the defendant should be precluded from presenting evidence or making arguments about any alleged First Amendment right to make the threats charged in this case.

9

III. <u>Conclusion</u>

        For the reasons set forth above, the government respectfully requests that the Court grant its motions <u>in limine</u>.

                                    Respectfully submitted,

                                    SETH D. DUCHARME
                                    Acting United States Attorney

By:            /s/
                                  Kayla Bensing
                                  Anna Karamigios
                                  Assistant U.S. Attorneys
                                  (718) 254-6279/6225

cc:     Benjamin Silverman, Esq. (By ECF)
        Clerk of the Court (PAE) (By ECF)