UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------x

UNITED STATES OF AMERICA,

 -against-

19 Cr. 127 (PAE)

LUCIO CELLI,

               Defendant,

--------------------------------------------------------x

**LUCIO CELLI'S MEMORANDUM OF LAW
IN SUPPORT OF HIS PRETRIAL MOTIONS**

Benjamin Silverman
Law Office of Benjamin Silverman
224 West 30th Street, Suite 302
New York, NY 10001
(212) 203-8074

# TABLE OF CONTENTS

**Page**

I.   This case should be transferred to a district judge outside of the
Second Circuit…………………………………………..…………………………1

   A.  The communications charged as threats were sent to almost every
Second Circuit judge……………………………………………………………1

   B.  Applicable Law…………………………………………………………………3

      1.  Rule 21…………………………………………..………………………3

      2.  Section 455(a) requires recusal when impartiality might
reasonably be questioned……………………………...……………..…3

   C.  Venue transfer is appropriate because the alleged victims include almost
all of the present judges of the Second Circuit, which hears
appeals from this Court………………………………………………………4

II.  Mr. Celli's pre-arrest interactions with the Marshals are admissible as
circumstantial evidence of his state of mind and as evidence about
whether an objective person would consider his emails threatening………………..8

   A.  Background: Mr. Celli told the Marshals that he did not intend his
emails to be threatening……………………………………………………...9

   B.  Applicable law: the government most prove that Mr. Celli knew
his statements were be preserved as threatening………………………………11

   C.  Mr. Celli's statements to the Marshals are admissible state of mind evidence
under Rule 803(3)…………………………………………….………………11

   D.  Mr. Celli's interactions with the Marshals are relevant and
important evidence……………………………………………………………15

   E.  The Marshals' decision to close the case file bears on whether
Mr. Celli's communications were in fact threats………………………………16

III.  Any emails offered into evidence should be redacted to exclude
potentially offensive comments…………………..……………………………17

IV.  Counsel reserves the right to make further objections upon reviewing
the government's exhibits……………………………………………….………17

CONCLUSION………………………………………………………………...18

Lucio Celli, by and through his undersigned counsel, respectfully moves the Court to (1) transfer venue to a district court outside of the Second Circuit; (2) admit testimony about his interactions with representatives of the United States Marshals Services (Marshals) and the New York City Department of Health and Mental Hygiene (DOHMH) throughout 2018; and (3) preclude the government from offering irrelevant and inflammatory statements contained in emails attributed to Mr. Celli.

**I.**

**This case should be transferred to a district judge outside of the Second Circuit.**

Venue should be transferred pursuant to Fed. R. Crim. P. 21(a) to a district outside of the Second Circuit because the alleged victims in this case include judges of both the United States District Court for the Eastern District of New York and the United States Court of Appeals for the Second Circuit.

**A. The communications charged as threats were sent to almost every Second Circuit judge.**

The Indictment charges that Mr. Celli a threat on November 12, 2020. The government informs counsel that it will offer, as direct evidence to prove its case, emails sent by Mr. Celli in March and November 2018.

The March 16, 2018 email that the government intends to offer was sent to every judge then sitting on the Second Circuit and in the Eastern District. It stated, in part, "I

said I am going to f****g haunt Randi [Weingarten] and I want to know that I won't stop until Cogan and the panel f****g answers."[1]

A November 12, 2018 email was also sent to every judge then sitting on the Second Circuit and in the Eastern District. The email states, in part, "Hon. Brodie, Cogan and anyone who complained about my email . . . . THEY WANTED ME TO BE ASHAMED OF BEING RAPE[D], LIKE RANDI . . . ." The subject line stated: "re:KATZMANN AND STWDART …EITHER YOU DEAL WITH THE US MARSHAL THREAT FROM BRODIE AND COGAN OR I HUNT THEM DOWN AND KILL THEM BECAUSE THEY WANT TO ACT LIKE THE MAFIA THEY HAVE TO DIE LIKE THE MAFIA." Another email sent on the same day stated: "KATZMANN AND STEWDART …YOU BOTH ARE F******G PROVOKING ME BY NOT ANSWERING …THEY SENT AND CARIED OUT THEIR THREAT AND . . . DEAL M=WITH IT OR I KILL THM E."

Mr. Celli was arrested two days later, on November 14, 2018. He was detained without bail for nearly five months and indicted on March 8, 2019. Following numerous changes of counsel, on October 5, 2020, the Honorable Roslynn R. Mauskopf, Chief United States District Judge, issued an Order Requesting Designation of a District Judge from Outside the Eastern District of New York. Dkt. 79. Chief Judge Mauskopf's Order observed that "both the Complaint and the indictment filed in 19-CR-12[7] alleges that

---

[1] The emails are reproduced verbatim, including typographical errors, but expletives have been replaced in part by asterisks.

victims of the alleged crime are judges of this Court." *Id.* The Honorable Rosemary L. Pooler appointed this Court by Order dated October 6, 2020. Dkt. 80.

### B. Applicable Laws

#### 1. Rule 21

Fed. R. Crim P. 21(a) requires the district court to transfer a case if it finds that "so great a prejudice against the defendant exists in the transferring district that the defendant cannot obtain a fair and impartial trial there."

#### 2. Section 455(a) requires recusal when impartiality might reasonably be questioned.

"Any justice, judge, or magistrate judge of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned." 28 U.S.C. § 455(a).

The Second Circuit analyzes § 455 by asking:

> Would a reasonable person, knowing all the facts, conclude that the trial judge's impartiality could reasonably be questioned? Or phrased differently, would an objective, disinterested observer fully informed of the underlying facts, entertain significant doubt that justice would be done absent recusal?

*United States v. Bayless*, 201 F.3d 116, 126 (2d Cir. 2000). The standard is "designed to promote public confidence in the impartiality of the judicial process." *Id.*

The Eastern District has long recognized, as Chief Judge Mauskopf did in this case last month, that recusal is appropriate if "the indictment . . . alleges that the victims of the alleged crime are a judge of this Court . . . ." Administrative Order 2012-11, docketed by then-Chief Judge Amon in *United States v. Romano*, No. 12 Cir. 691 (JFK) (E.D.N.Y.

3

Nov. 8, 2012), Dkt. 12 (transferring case under Rule 21 to a judge outside of the Eastern

District where the Indictment alleged a plot to kill a judge and Assistant United States

Attorney in the Eastern District of New York); *cf. United States v. Wright*, 603 F. Supp.

2d 506, 509 (2009) (transferring prosecution under Rule 21 to Southern District of New

York without government objection where defendant was charged with assaulting an

Assistant United States Attorney in an Eastern District of New York courtroom) (citing

New York County Civil Court procedure "mandat[ing] that any case involving one of its

employees as a party must be automatically transferred to a county other than the one in

which the employee works or resides.").

### C. Venue transfer is appropriate because the alleged victims include almost all of the present judges of the Second Circuit, which hears appeals from this Court.

This case was transferred to this Court – a Southern District of New York judge

sitting by designation in the Eastern District – because Chief Judge Mauskopf observed,

as then-Chief Judge Amon did in *Romano*, that "both the Complaint and the

indictment . . . alleges that victims of the alleged crime are judges of this Court." Dkt. 79.

The same is also true for almost every judge of the Second Circuit in 2018.[2] The reasons

that compelled Chief Judge Mauskopf to request a judge from outside of the Eastern

District also require that the case be transferred to a judge outside of the Second Circuit.

Judges of the Second Circuit were just as victimized by the alleged conduct as judges of

---

[2] Since 2018, three new judges have been confirmed for seats on the Second Circuit (Hons. Michael H. Park, William J. Nardini, and Steven Menashi). A fourth, Judge Bianco, was a recipient or intended recipient in his then-capacity as a district court judge.

the Eastern District. They were included on the alleged emails addressed to then-Chief Judge Katzmann. Allowing this case to proceed in a court within this Circuit, and subject to review by the Second Circuit, poses continuing concerns about the appearance of unfairness to Mr. Celli.

Judge Posner's opinion in *In re Nettles*, 394 F.3d 1001, 1003 (7th Cir. 2005), is instructive. In *Nettles*, the Seventh Circuit *sua sponte* recused itself from the case of a defendant who threatened to bomb the Everett M. Dirksen United States Courthouse in Chicago. Judge Posner reasoned that it might appear to "a reasonable, but outside, observer of the judicial system" that "a judge might be convinced of Nettles' guilt yet concerned that a jury might acquit him, and might therefore rule against him on evidentiary and procedural issues, regardless of the merits." *Id.* Judge Posner also noted the potential for the appearance of unfairness at sentencing, in which an outside observer might wonder whether the judge imposed a higher sentence because she or her colleagues were the recipients of threats rather than third parties. *Id.* Because "[n]o purpose would be served by requiring Nettles to renew his transfer motion in the district court, before a judge brought in from outside the Northern District [of Illinois], or to make a subsequent motion to recuse the members of this court," the Seventh Circuit concluded that the "more efficient method of proceeding is for us to recuse ourselves now, to be replaced by judges from other circuits who will be designated to hear any further proceedings." *Id.* Here too, an outside observer might wonder about the impartiality of a trial judge – both pretrial and at sentencing – who may not want to anger judges of the Court of Appeals that routinely reviews the district judge's myriad decisions. Further, any appeal, whether

interlocutory or otherwise, will run into precisely the problem identified in *Nettles*. It is efficient to resolve the matter right now and move this prosecution to a nearby Circuit, for example a district court in the neighboring state of Massachusetts, which is in the First Circuit.

To be sure, there is a view of this case in which the underlying conduct was not sufficiently serious or directed to constitute a threat requiring recusal under § 455. *See Diamondstone v. Macaluso*, 148 F.3d 113, 121 (2d Cir. 1988) (recusal unnecessary following threats to "remote, contingent, indirect or speculative interests."); *United States v. Yousef*, 327 F.3d 56, 170 (2d Cir. 2003) ("[W]here a threat is made simply 'to harass,' recusal is not warranted."). Indeed, after the first email to Second Circuit and Eastern District judges on March 16, 2018, Mr. Celli satisfied the Marshals that he was not violent or dangerous and did not intend to alarm anyone. But that is decidedly not the government's view of this matter. It alleges serious and alarming threats and it opposed bail; Mr. Celli remained in the MDC during the blackout and heat loss in February 2019. It is difficult to imagine the government now arguing that the threats were too indirect or unserious to warrant transfer.

Nor is this a case in which the defendant has strategically sought to remove a specific judge or to transfer an already-pending criminal case. *E.g.*, *Yousef*, 327 F.3d at 169-70 ("[R]ecusal would not have been warranted if there had 'been any reason to believe that threats were made only in an attempt to obtain a different judge, to delay the proceedings, to harass, or for other vexatious or frivolous purpose.'") (quoting *United*

6

*States v. Greenspan*, 26 F.3d 1001, 1006 (10th Cir. 1994)); *United States v. Basciano*, 2008 WL 794945, at *11 (E.D.N.Y. Mar. 24, 2008) (same).

It is not sufficient merely to proceed before a judge from the Southern District of New York who is sitting by designation in the Eastern District. The unfairness to Mr. Celli derives from the venue as much as from the presiding judge. *See Wright*, 603 F. Supp. 2d at 508 (observing that "[t]he potential witnesses, with their Eastern District roots . . . are all familiar by name and nod to the personnel who would staff any trial of this case in this district . . . . The point is whether the criminal trial of a defendant, staffed by such personnel and literally in the victim's 'home court,' will appear objectively to be on an equal footing, fair and just.").

Moreover, every judge within the Second Circuit has numerous decisions pending for review by the Court of Appeals at any given time. It is judicially noticeable that, at minimum, rumors are widespread about district judges' dislike for being reversed. Counsel by no means suggests that this Court is unable to perform its duties. Rather, the same considerations addressed by the Second Circuit in *Bayless* and Judge Posner in *Nettles* apply here: what might an outside, objective observer think? Is it possible to imagine that a district judge within the Second Circuit might be concerned about offending or angering reviewing Second Circuit judges if an acquittal is obtained in that district judge's courtroom on allegations of threatening then-Chief Judge Katzmann? Or, if the government obtains a conviction, will a district judge be concerned about victimized Second Circuit judges frowning on too light a sentence? The questions answer themselves: there appearance of bias is clear, as an outside observer's concerns would be

7

non-frivolous. This case should therefore be transferred to a judge outside of the Second Circuit.

## II.

### Mr. Celli's pre-arrest interactions with the Marshals are admissible as circumstantial evidence of his state of mind and as evidence about whether an objective person would consider his emails threatening.

Mr. Celli was approached by the Marshals and DOHMH at least three times between March 2018 and his arrest on November 14, 2018. On or about March 16, 2018, the Marshals questioned Mr. Celli about his emails to Second Circuit and Eastern District judges earlier that day – emails that the government tells counsel it will offer as direct evidence of the charged offense. Mr. Celli told the Marshals that he did not mean to threaten, harass, or intimidate anyone. After their March 16, 2018 meeting with Mr. Celli, the Marshals closed their file, apparently satisfied that Mr. Celli did not pose a threat or intend to convey one.

These interactions are important evidence concerning two elements that the government must prove at trial: Mr. Celli's subjective understanding that he was transmitting threats and an objective assessment of whether the communications were in fact threats. Specifically, Mr. Celli's statements to the Marshals that he did not intend to harm, harass, or intimidate are admissible under Rule 803(3) as circumstantial evidence of his then-existing state of mind, and his interactions with the Marshals are necessary evidence to provide background and context about those statements and the charged conduct. Further, the Marshal's assessment and their decision in March 2018 to close the

file – in the middle of the email spree now charged as criminal conduct – weighs on whether the communications at issue may objectively be considered threats.

### A. Background: Mr. Celli told the Marshals that he did not intend his emails to be threatening.

The following background describes Mr. Celli's interactions with the Marshals, and why these facts are relevant, and admissible as non-hearsay and hearsay exceptions.

Lucio Celli is a special education teacher who has worked in the New York City public schools for over twenty years. In 2007, he endured a substantial trauma when he was sexually assaulted, and he later learned that his attacker infected him with HIV.

In March 2019, after certain civil actions he pursued against his employers at the New York City Department of Education were dismissed, and the dismissals affirmed by the Second Circuit, Celli wrote an email containing crude language to Randi Weingarten, the head of the UFT, copying judges of the United States Court of Appeals for the Second Circuit and the United States District Court for the Eastern District of New York.

Later that evening, Mr. Celli was visited by United States Marshals. He told the Marshals that it was "not his intention" to harass, stalk, or intimidate, and that he would "never harm anyone." The Marshals did not arrest Mr. Celli. They admonished him, then left him alone. The Marshals closed the case, they wrote in their report, "based on the . . . interview with Celli in which [he] expressed no intention in harming, stalking, harassing, or intimidating EDNY judges or court personnel."

A few months later, during the summer, Celli revived what the Marshals characterized, in internal emails and reports as "nuisance" behavior, "nuisance calls," and

"inappropriate emails." The Marshals referred Celli to the DOHMH Co-Response Unit on July 31, 2018, noting in an internal email that Celli "appears to be suffering from some mental issues." Internal emails reflect the Marshal's frustration with a man they perceived as a "nuisance" litigant: "Celli continues to e-mail harassing and inappropriate emails to the court. He is now becoming a nuisance caller as well." DOHMH tried unsuccessfully to contact Celli through August 2018, and he advised that he was already seeing someone to address his issues.

Having told the Marshals that he did not intend to intimidate, and that he would not actually hurt anyone, Celli could reasonably have inferred that the Marshals, and by extension, the judges and courthouse staff, understood and believed that he did not intend his emails as real threats. He may have reasonably understood that his efforts to get people's attention, while provocative, unbecoming, and even flatly improper, were seen for what they were: plaintive cries for attention, not threats intended to instill fear.

Mr. Celli submitted numerous filings and correspondence in his pending Eastern District civil cases throughout 2018. On November 12, 2018, Mr. Celli allegedly sent a large number of judges an email stating the following: "KATZMANN AND OR I HUNT THEM DOWN AND KILL THEM BECAUSE THEY WANT TO ACT LIKE THE MAFIA THEY HAVE TO DIE LIKE THE MAFIA." After waiting two days, the Marshals arrested Mr. Celli on November 14, 2018.

10

**B. Applicable law: the government most prove that Mr. Celli knew his statements were be preserved as threatening.**

The Indictment charges one count of violating 18 U.S.C. § 875(c). The requisite

*mens rea* for the offense is that "the defendant transmits a communication [1] for the

purpose of issuing a threat, or [2] with knowledge that the communication will be viewed

as a threat." *Elonis v. United States*, 575 U.S. 723, 135 S. Ct. 2001, 2012 (2015). In

addition to this subjective requirement that the defendant understand the communication

to be a threat, in order to pass muster under the First Amendment, a communication

charged under § 875(c) must also appear to a reasonable recipient as a "true threat."

*United States v. Francis*, 164 F.3d 120, 122-23 (2d Cir. 1999); *see also United States v.*

*Segui*, 2019 WL 8587291, at *4-5 (E.D.N.Y. Sept. 12, 2019) (discussing dual objective

and subjective components to § 875(c)).

With this legal principle in mind, as discussed below, it is clear that Mr. Celli's

exchanges with the Marshals are admissible and necessary for the jury to understand the

complete story of the charged conduct.

**C. Statements to the Marshals are admissible state of mind evidence under Rule 803(3).**

The Rule 803(3) hearsay exception permits introduction of an out-of-court

statement reflecting "the declarant's then-existing state of mind (such as motive, intent,

or plan) or emotional, sensory, or physical condition (such as mental feeling, pain, or

bodily health), but not including a statement of memory or belief to prove the fact

remembered or believed." Fed. R. Evid. 803(3). This exception thus permits even hearsay

statements that reflect the declarant's present or future state of mind at the time – "the

statement must face forward, rather than backward." *United States v. Harwood*, 998 F.2d 91, 98 (2d Cir. 1993). The reason for this distinction is based on "the contemporaneity of the statement and the unlikelihood of deliberate or conscious misrepresentation." *Id.* (citing *United States v. Cardascia*, 951 F.2d 474, 487 (2d Cir. 1991)). The rule permits testimony that the speaker "hate[e] X" right now, but not a statement that the person "hated X last year." *United States v. Cosentino*, 581 F. Supp. 600, 602 (E.D.N.Y. 1984). These statements "are categorically admissible, even if they are self-serving and made under circumstances which undermine their trustworthiness." *United States v. Lawal*, 736 F.2d 5, 8 (2d Cir. 1984).

The Second Circuit has repeatedly interpreted Rule 803(3) to permit introduction of hearsay statements that reflect the defendant's then-existing mental state while (or even immediately after) the charged offense is allegedly committed. In *United States v. DiMaria*, 727 F.2d 265 (2d Cir. 1984) (Friendly, J.), for example, the defendant was charged with purchasing contraband cigarettes and sought to introduce a statement he made when first approached by FBI agents *before* being arrested – that he "only came here to get some cigarettes real cheap." *Id.* at 270. The Second Circuit concluded that the trial court erroneously excluded the defendant's statement and vacated the conviction, explaining that it should have been admitted to show "that his existing state of mind was to possess bootleg cigarettes, not stolen cigarettes." *Id.* at 271. In other words, the defendant's statement was not "what he or someone else had done in the past. It was a statement of what he was thinking in the present," contemporaneously with acts constituting the alleged crime. *Id.*

12

Likewise, in *United States v. Harris*, 733 F.2d 994 (2d Cir. 1984), the defendant was charged with conspiracy to distribute heroin, and the government's proof focused in large part on recorded conversations between the defendant and an informer who allegedly was also part of the conspiracy. *Id.* at 997. The theory of the defense was that the defendant knew that the informant was cooperating with authorities and played along out of fear. *Id.* at 1000. To substantiate this defense, the defendant proffered testimony from his parole officer, who would have testified that, during the time period of the conspiracy, the defendant told the parole officer that he had "an encounter with some people who could cause him trouble"; that "the Government and people were after him and trying to help him"; and that the informant "had brought an agent to him." *Id.* at 1000-01, 1004. The district court excluded these statements, but the Second Circuit reversed and vacated the conviction because those statements showed the defendant's "state of mind – his knowledge of [the informant's] cooperation" and reluctance to go along with the proposed scheme, which could lead the jury to infer that he did not possess the requisite intent to commit a crime. *Id.* at 1004-06.

These cases apply here to Mr. Celli's contemporaneous statements to the Marshals illustrating that he lacked the *mens rea* necessary to be guilty of a *criminal* offense, *Elonis*, 135 S. Ct. at 2009, as opposed to a "nuisance" litigant with trauma or other "mental health issues." The statements were made during the course of conduct charged in this case. Even though the Indictment only charges Mr. Celli with the communication sent on November 12, 2018, the government informed counsel that it will offer the March 16, 2018 emails to the courthouse as direct evidence of the charged offense. Statements

13

Mr. Celli made contemporaneously with those emails reflect his then-existing state of mind and are admissible under Rule 803(3).

As Judge Haight succinctly put it: "to be admissible, on the defense case a criminal defendant's out-of-court statements must be probative of the defendant's then existing state of mind; and that state of mind must be relevant to the government's charges, or its proof in support of those charges. If those criteria are met, the statement is admissible, with issues of credibility being for the jury." *United States v. Shakur*, 1988 WL 31745, at *3 (S.D.N.Y. Mar. 22, 1988). Each of these criteria is met here. Mr. Celli's statements to the Marshals that he did not intend to harass, intimidate or stalk, and that he would never actually hurt anyone, are probative of his state of mind at the very time that he was sending the emails at issue in this case. They are also probative of Mr. Celli's belief the emails would be received through the lens of his disclaimers. Mr. Celli's state of mind is acutely relevant to the intent that the government must prove under *Elonis*: that Mr. Celli intended to transmit a threat and knew that his emails would be viewed as threatening.

The government is free to argue that Mr. Celli's statements were self-serving and should not be believed, but that is not enough to exclude them under Rule 803(3). *Lawal*, 736 F.2d at 8.

The most significant evidence reflecting Mr. Celli's state of mind at the time he sent the emails charged in this case – his cotemporaneous statements to U.S. Marshals – fall squarely within Rule 803(3) and the Second Circuit's precedents about admitting

14

state-of-mind evidence. Counsel respectfully submits that they should be admitted for the

jury to consider.[3]

### D. Mr. Celli's interactions with the Marshals are relevant and important evidence.

Mr. Celli's interactions with the Marshals are important background to explain his

state of mind at the time of the charged conduct and to provide further context to Mr.

Celli's affirmative statements and his post-arrest interview. *See United States v. Daly*,

842 F.2d 1380, 1388 (2d Cir. 1988) ("Background evidence may be admitted to show, for

example, the circumstances surrounding the events or to furnish an explanation of the

understanding or intent with which certain acts were performed."); *United States* v.

*Coonan*, 938 F.2d 1553, 1560-61 (2d Cir. 1991) ("[T]he trial court may admit evidence

that does not directly establish an element of the offense charged in order to provide

background for the events alleged in the indictment. Background evidence may be

admitted to show, for example, the circumstances surrounding the events or to furnish an

explanation of the understanding or intent with which certain acts were performed."); *see*

*also Old Chief v. United States*, 519 U.S. 172, 183 (1997) (encouraging "an appreciation

---

[3] To some extent, the Marshal's statements to Mr. Celli may also be admissible for their effect on the listener and to provide context for Mr. Celli's statements. *Cameron v. Comm. Aid for Retarded Children, Inc.*, 335 F.3d 60, 66 n.2 (2d Cir. 2003) ("Because these statements are not used to prove the truth of the matter asserted, but to establish Melville's state of mind, they are not hearsay as Cameron contends."); *Mendez-Nouel v. Gucci Am., Inc.*, 2012 WL 5451189 (S.D.N.Y. Nov. 8, 2012) (Engelmayer, J.) (statements may be offered for limited purpose of "effect on the listener").

of the offering party's need for evidentiary richness and narrative integrity in presenting a case.").

The government will likely argue that Mr. Celli intended to frighten people or make them feel threatened based on comments he made in select portions of his post-arrest statement. But the prior eight months of communications with the Marshals and DOHMH provides additional evidence reflecting Mr. Celli's non-criminal state of mind that contextualizes this post-arrest statement. A jury must know that Mr. Celli told the Marshals throughout 2018: that he did not intend to instill fear and that he would never hurt anyone.

### E.  The Marshals' decision to close the case file bears on whether Mr. Celli's communications were in fact threats.

In addition to Mr. Celli's subjective state of mind, the government must prove that his communications were in fact threats. *Francis*, 164 F.3d at 123; *Segui*, 2019 WL 8587291, at *4-5. The Marshals decision, after speaking with Mr. Celli on March 16, 2018, to close the file, bears directly on the assessment of whether the alleged emails were objectively threatening. So does the Marshals decision, throughout the summer of 2018, to treat this as a mental health issue. Surely the government believes that the Marshals are objectively reasonable people. In fact, the Marshals may even be considered experts at threat assessment. Their decision not to arrest Mr. Celli for eight months, and instead to close their case file, is important evidence for the jury to consider about whether the communications at issue are objectively viewable as threats.

## III.

### Any emails offered into evidence should be redacted
### to exclude potentially offensive comments.

As these motions are being drafted, the government is not prepared to share the exhibits it intends to offer. Counsel is unsure whether the government will offer certain emails in their entirety, or only in part. As the following issue may be mooted, I will not belabor it here. Suffice is to say right now, under Rule 403, the government should be precluded from offering any potentially offensive or sexist remarks in the underlying emails.

For example, in an email produced in discovery, the words "EVIL C***T" are used; this email does not appear to have been sent to judges. Further, the March 16 email states, in part that "Grand Leech . . . is a lesbian jew but allows straight Jews to be harmed."

None of these passages prove the government's case. All of them are offensive and will inflame the jury. They should be precluded under Rule 403.[4]

## IV.

### Counsel reserves the right to make further objections
### upon reviewing the government's exhibits.

Although defense counsel has endeavored, to the best of its ability, to identify issues lending themselves to *in limine* resolution, it is impossible to anticipate every

---

[4] These comments will also open the door to a trial within a trial to explain their context, which is precisely what the government will move to prevent.

evidentiary issue that will emerge, and Mr. Celli accordingly reserves the right to raise additional issues not here presented.

In particular, the government informs counsel that it intends to offer selective outtakes from Mr. Celli's approximately 16-minute post-arrest interrogation. The government avers that it will make its own motion concerning those portions it wishes to offer. Counsel will respond as appropriate to the governments' *in limine* motion. Counsel will also address any prison calls the government seeks to admit at that time.

Mr. Celli has asked me to inform the Court of his forthcoming motion for sanctions and redress for improper pretrial incarceration which, *inter alia*, violated the Speedy Trial Act, denied him due process, and constituted outrageous government misconduct. Mr. Celli also seeks, in the alternative to the change of venue motion, this Court disqualification on grounds Mr. Celli stated on the record at the October 16 conference. (10/16/20 Tr. at 30.) Mr. Celli will also seek to delay the Court's making certain transcripts publicly available in December.

## CONCLUSION

For the foregoing reasons, we respectfully request that the Court (1) transfer venue to a district court outside of the Second Circuit; (2) admit testimony about his interactions with representatives of the Marshals and DOHMH throughout 2018, including the Marshals decision to treat the emails as "nuisance" rather than criminal; and (3) preclude certain offensive statements that are not relevant to the government's case.

18

Dated:      New York, New York
            November 23, 2020

                                    Respectfully submitted,

                                    /s/ Benjamin Silverman
                                    Benjamin Silverman
                                    Law Office of Benjamin Silverman
                                    224 West 30th Street, Suite 302
                                    New York, NY 10001
                                    (212) 203-8074