1

```
UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF NEW YORK

--------------------------------------x

UNITED STATES OF AMERICA,

                    Plaintiff,        Docket No.:
                                      19 CR 127 (AMD)
          versus

LUCIO CELLI,                          U.S. Courthouse
                                      225 Cadman Plaza East
                    Defendant.        Brooklyn, NY 11201
--------------------------------------x
                                      August 10, 2020
                                      11:00 a.m.


     Transcript of Criminal Cause for Status Conference

Before:   HONORABLE ANN M. DONNELLY,
                              District Court Judge


                         APPEARANCES

For the Government:          SETH D. DuCHARME, ESQ.
                             Acting United States Attorney
                             Eastern District of New York
                             271 Cadman Plaza East
                             Brooklyn, New York 11201
                             BY:  KAYLA BENSING, ESQ.,
                                  Assistant U.S. Attorney

For the Defendant:           ZACHARY TAYLOR, ESQ.

Also Present:                MICHAEL DORN, Pretrial Services

Official Court Reporter:     MICHELE NARDONE, CSR
                             Email:  Mishrpr@aol.com

Proceedings recorded by mechanical stenography.  Transcript
produced by computer-aided transcription.
```

MICHELE NARDONE, CSR -- Official Court Reporter

USA v. Celli

1             (Via teleconference.)

2             (Defendant present via teleconference.)

3             THE COURT:  Hi.  It's Judge Donnelly.

4             Donna, would you call the case in, please.

5             THE CLERK:  Yes.  This is criminal cause for a

6    telephone status conference, Docket number 19 CR 127, USA

7    versus --

8             THE COURT:  Stop.  I'm just going to interrupt you

9    for a second.  There is a lot of noise on the line.  Whoever

10   that is, if you can just mute your phone so we don't hear it.

11   Sorry, no, not yet.

12            Okay.  Try again, Donna.

13            THE CLERK:  Before asking the parties to state their

14   appearances, I would like to note the following.

15            Persons granted remote access to proceedings are

16   reminded of the general prohibition against photographing,

17   recording, and rebroadcasting of court proceedings.  Violation

18   of these prohibitions may result in sanctions, including

19   removal of court-issued media credentials, restricted entry to

20   future hearings, denial of entry to future hearings, or any

21   other sanctions deemed necessary by the court.

22            Counsel, state your appearance, government first.

23            MS. BENSING:  Kayla Bensing for the government.  Good

24   morning, Your Honor.

25            THE COURT:  Hi.

MICHELE NARDONE, CSR -- Official Court Reporter

1          MR. TAYLOR:  Good morning, Your Honor.  Zachary
2    Taylor for Lucio Celli.
3          THE COURT:  Mr. Celli, are you on the line?  Is that
4    you, Mr. Celli?
5          THE DEFENDANT:  Good morning.  Yes, Your Honor.  Good
6    morning.
7          THE COURT:  Hi.  I'm just going to give you the usual
8    reminders, because we are on the phone, that everybody should
9    just speak slowly and don't talk over each other.
10         So this is a status conference, and since the last
11   time that we met I know we have gotten the results of the
12   evaluation from the doctor.  I also know Mr. Celli visited his
13   friend.
14         How did that go, Mr. Celli?
15         THE DEFENDANT:  Fine.  Thank you.
16         THE COURT:  Good.  But I also think we might have had
17   a little problem.  I'm going to ask our Officer Dorn to tell me
18   about that.
19         MR. DORN:  Good morning, Your Honor.  I just dialed
20   back in.  My call had dropped.  This is Michael Dorn from
21   Pretrial.
22         THE COURT:  Okay.  Hi.  Go ahead.
23         MR. DORN:  We just wanted to inform the court I was
24   informed by Mr. Celli's supervising officer in the Southern
25   District of New York that on August 3rd he was given permission

MICHELE NARDONE, CSR -- Official Court Reporter

1  to attend a dentist appointment.  He arrived home an hour and

2  40 minutes late.  Upon inquiring, Mr. Celli informed his

3  supervisor he had stopped for a brief romantic encounter.

4           This is not the first time this type of incident is

5  being reported to the court.  We just respectfully request that

6  the court remind Mr. Celli that deviations from his approved

7  schedules are violations of the location monitoring program.

8           THE COURT:  Mr. Taylor, do you have anything to say

9  about that?  Were you aware of this?

10          MR. TAYLOR:  I was not aware of this.  I'm just --

11 I'm not sure.  I'm not saying that the government did not

12 inform me, although --

13          THE COURT:  I think they just found out.

14          MR. TAYLOR:  -- although I haven't received any

15 information until this moment.

16          MR. DORN:  Your Honor, Michael Dorn.  That's actually

17 my fault.  We were informed late last weekend.  We were unable

18 to get a memo out to everybody, which is why I wanted to report

19 it in the hearing this morning.

20          THE COURT:  Okay.  So, Mr. Celli, here is the thing.

21 You know, I mean, I'm trying to work with you here.  That's why

22 I let you have that visit, even over the government's

23 objection; but you have got to follow the rules or else I'm

24 going to have to make it a little more restrictive, and I

25 really don't want to do that.

1   I just feel like we maybe shouldn't be having this
2   happen.  It happens kind of often.  So I don't know if --
3   Mr. Celli, I don't want to put you on the spot here or
4   anything, but I do want you to understand that I have tried to
5   make some accommodations for you, but you are putting me in a
6   bad spot here a little bit.  So I don't want to hear about
7   these things anymore.  I really don't.
8   I think we are really trying to do our best under
9   these difficult -- under a difficult situation to make things a
10  little easier for you; but, you know, you can't do this, or
11  else I'm going to have to change the terms of your release.  Is
12  that clear?
13              THE DEFENDANT:  That's clear, but --
14              THE COURT:  Good.  That's good.
15              THE DEFENDANT:  But I still have to, you know, talk
16  about the terms of the release, but we will talk about it in a
17  minute.
18              THE COURT:  Okay.  All right.  Let's figure out what
19  our next step is going to be because the last time we were here
20  I set a motion schedule, and I'm just going to repeat that,
21  that the defense motion was due by October -- is due by
22  October 9, with the government's response to be November 9, and
23  then any reply by the defendant will be due on November 30.  So
24  that motion schedule is still in place.
25              I don't think we have anything more casewise to talk

MICHELE NARDONE, CSR -- Official Court Reporter

1    about.

2            I think I would rather hear from Mr. Taylor about the

3    terms of your release because he is your representative and he

4    is doing a good job for you.  So if there is something that I'm

5    not aware of, I will certainly hear it.  Let me first hear from

6    the government, to see if there is anything else that you want

7    to say.

8            MS. BENSING:  No, Your Honor.  Thank you.

9            THE COURT:  Okay.  Mr. Taylor, what about you?  Is

10   there anything that I'm missing about the conditions of

11   Pretrial release?

12           MR. TAYLOR:  No, Your Honor, not at this time.

13           I mean, what I propose is, since I have just been

14   informed of the incident on August 3rd, is that I be given an

15   opportunity to speak with Mr. Celli; and, if we are going to

16   make an application for a modification of his bail conditions,

17   then we would make it in due course, after the conference

18   today.

19           THE COURT:  I think that's fine.

20           THE DEFENDANT:  That doesn't work.

21           THE COURT:  No, no, no.  Mr. Celli, I'm feeling a

22   little bit impatient today.  So that is what we are going to do

23   because your lawyer can't represent you if he hasn't had a

24   chance to go over what happened with you.  So that's what we

25   are going to do.

MICHELE NARDONE, CSR -- Official Court Reporter

1  I want you to take a minute before you tell me what
2  you want, and then speak to your lawyer; and then, in due
3  course, either by letter or if we need to have another
4  conference, we can do that.
5  But you are really not in a position right now to
6  dictate what the conditions of your release are going to be.
7  So let's leave that as it is and just hold your thoughts, make
8  sure you run them by your lawyer first, because you probably
9  have a better -- it's just a much better thing to do.
10  THE DEFENDANT:  I don't even want him.  So because I
11  already told him that, you know, under Screws.
12  THE COURT:  Under what?
13  THE DEFENDANT:  Screws, S-C-R-E-W.  If you want the
14  citation, I will give it to you.
15  THE COURT:  No.  That's okay.
16  THE DEFENDANT:  This issue --
17  THE COURT:  Stop.  The reason why I'm asking is
18  because our court reporter has to write down what you are
19  saying.
20  THE DEFENDANT:  Sure.
21  THE COURT:  So go ahead.  So you were upset with your
22  lawyer.
23  THE DEFENDANT:  Well, it's not only him.  It's
24  multiple lawyers.  The fact that the bail hearing was not
25  conducted as -- I was advised my civil rights were violated.  I

MICHELE NARDONE, CSR -- Official Court Reporter

1  wasn't allowed to testify.  I wasn't allowed to present

2  evidence.  I mean, it's a crime.

3           THE COURT:  I beg your pardon?

4           THE DEFENDANT:  It's a crime, what was done to me.

5           THE COURT:  Well, I'm just going to tell you that a

6  lot of judges, the number of times you violated the conditions

7  of your Pretrial release, a lot of judges would have said that

8  you can't follow directions and would have put you in jail.

9           THE DEFENDANT:  The order --

10          THE COURT:  Let me finish.

11          THE DEFENDANT:  I apologize.

12          THE COURT:  Let me finish.  I have not done that,

13 even though the government has taken that position.  It's not

14 unreasonable.  When you are charged with a crime there are

15 certain conditions that go along with your release, and these

16 are conditions that you have to follow.

17          When you don't follow -- I mean, I will certainly --

18 after you consult with your lawyer, I will certainly consider

19 if there is something that isn't -- that is unfair or doesn't

20 work, but I just don't think this is a very good idea for you

21 to do right now because you haven't spoken to your lawyer about

22 what the position should be.

23          Just from where I sit, you know, when I direct

24 somebody to do something, when I direct a party or a lawyer to

25 do something, I expect the person to do it, particularly if

1    it's reasonable.
2            And so, as I said, the government didn't want you to
3    be able to go visit your friend.  I disagreed.  I think it's
4    good for you to be able to go visit your friend.
5            I think you are making this more difficult than it
6    has to be, because if you -- if there was -- you went to the
7    dentist.  If there was somebody else you wanted to visit, you
8    should have put that question to your Pretrial Service officer
9    so we are not in these positions, but that's what happened.
10           So this is what I'm going to direct you to do.  Talk
11   to your lawyer, and if you do want to have another conference
12   with me on this subject, we will schedule it.  But I don't want
13   to have an argument with you back and forth when Mr. Taylor
14   hasn't even heard what you are going to say.
15           THE DEFENDANT:  All right.
16           THE COURT:  Okay?
17           THE DEFENDANT:  One more thing.  What about the audio
18   recording from MDC Brooklyn, when am I going to get that, and
19   the other --
20           THE COURT:  Hold on a second.  What did you say?  I
21   didn't hear you.  You've got to slow down.
22           THE DEFENDANT:  The audio recording from MDC
23   Brooklyn.
24           THE COURT:  The order?
25           THE DEFENDANT:  The audio recording.

1    THE COURT:  Oh, audio recording.

2    I don't know what that has to do with this case.  I
3 know I've heard you mention it before.  Is that a piece of
4 evidence in this case, or this something that you are talking
5 about in --

6    THE DEFENDANT:  It is --

7    THE COURT:  Hold on.  Hold on.  Hold on.

8    THE DEFENDANT:  Sorry.

9    THE COURT:  That's okay.  Is this something you are
10 talking about in connection with your civil case?

11    THE DEFENDANT:  No.  It's this case and the State
12 case.

13    THE COURT:  Right.  So I think I have told you this
14 before.  My recollection was that you -- oh, the State criminal
15 case.  Is that this Ms. Richmond?

16    THE DEFENDANT:  No longer, yes.

17    THE COURT:  Right, but you wanted some calls about --
18 between you and her, is that it?

19    THE DEFENDANT:  Yes.

20    THE COURT:  All right. Okay.  That doesn't have
21 anything to do with this case.  It has to do with your State
22 case.  I thought you already took a plea on that case.

23    THE DEFENDANT:  It has everything to do with this
24 case.  I had two U.S. Marshals threaten me.

25    THE COURT:  Wait.  I still didn't hear you.  You had

MICHELE NARDONE, CSR -- Official Court Reporter

1 two U.S. Marshals?

2 THE DEFENDANT: Threaten me, which I have said many
3 times, threaten me that Cogan with that case and has been
4 fixed.

5 THE COURT: So I think you are referring to Judge
6 Cogan.

7 THE DEFENDANT: Yes, I am. I'm sorry.

8 THE COURT: We don't refer to judges by their last
9 name.

10 THE DEFENDANT: I apologize.

11 THE COURT: Okay. Again, I don't know what that has
12 to do with this case, but if your lawyer -- if there has been
13 an application by a lawyer to get recordings -- I don't know if
14 recordings exist -- I'm going to ask Ms. Bensing.

15 I know we have talked about this before. Do you have
16 a position on this?

17 MS. BENSING: Your Honor, we have produced some of
18 the recordings from the MDC that the government obtained. It
19 was produced by the Rule 16 discovery.

20 I'm unaware of the audio recording that Mr. Celli is
21 referencing and within that set, but we have made that
22 production already.

23 THE COURT: Well, what I'm going to suggest that you
24 do, Mr. Celli, is look through what you have already and --
25 THE DEFENDANT: It's not there.

MICHELE NARDONE, CSR -- Official Court Reporter

1           THE COURT:  Hold on.

2           THE DEFENDANT:  Sorry.

3           THE COURT:  If there are other dates that you think

4    are relevant, you can tell your lawyer about them; and he can

5    put them in a letter.  Then I will consider it.

6           I think the government is willing to find them, if

7    they exist.

8           THE DEFENDANT:  One more thing.

9           THE COURT:  Go ahead.

10          THE DEFENDANT:  I need to put in ineffective

11   assistance of counsel because of what they have done to me, the

12   other lawyers.

13          THE COURT:  Well, we are moving forward.  You have a

14   lawyer now.  I will say that I think we have had a little bit

15   of a conversation about this before.  You have run through

16   about as best as we have got here, and so just because you

17   don't agree with what a lawyer says does not make that lawyer

18   ineffective.

19          So you are going to have to just take a breath and

20   listen to what your lawyer has to say.  You tend to fixate on

21   things that don't have to do with this case; and what I want to

22   do, because we have been -- I don't know; it's been since the

23   beginning of 2019, hasn't it, that we have had this case?  I

24   think you are either entitled to have a trial, which is --

25   which you will certainly have, if that's what you want, or, if

MICHELE NARDONE, CSR -- Official Court Reporter

1   there is a way to resolve the case --

2           THE DEFENDANT:  There's not going to be a way to

3   resolve the case when my lawyers have lied to me, have

4   threatened me, have told me that an e-mail has thoughts.  I

5   highly believe -- you said would give me the same type of

6   advice.  That's not a competent juror, if you believe an e-mail

7   has thoughts.  Because Michael Weil told me that e-mails have

8   thoughts.

9           THE COURT:  Is Mr. Weil your lawyer anymore?

10          THE DEFENDANT:  It doesn't make a difference.  You

11  don't want to address the fact that he is ineffective.

12          THE COURT:  Mr. Celli, I'm not going to keep having

13  these conversations with you about things that happened in the

14  past and are over.

15          Every lawyer that you have been given is an excellent

16  lawyer, and now -- but now Mr. Weil is not your lawyer.  You

17  have Mr. Taylor.

18          THE DEFENDANT:  Judge, so you are saying that someone

19  tells me that an e-mail has thoughts is an excellent lawyer.

20  That's one of the facts here.

21          THE COURT:  Okay.  Mr. Celli, you have exhausted my

22  patience for the day.

23          THE DEFENDANT:  Okay.

24          THE COURT:  I think if I were you I would stop

25  talking.  Do not insult me.

MICHELE NARDONE, CSR -- Official Court Reporter

14

USA v. Celli

1  THE DEFENDANT:  I was trying to make a statement.  I
2  don't think you believe it.  I think you are ignoring it.
3  THE COURT:  But it doesn't have anything to do with
4  anything.
5  I want to get you a fair trial on the accusations
6  against you, if that's what you want, if you want a fair trial.
7  But it's not helpful to focus on -- I mean, all of us in life
8  have things that make us mad, but this does not have anything
9  to do with your case.
10  So I am urging you to focus on this particular case
11  and what you want to do with it, and just take a breath.  Okay?
12  THE DEFENDANT:  Uh-huh.
13  THE COURT:  So the next time -- we have to set a time
14  for -- I think it should be after motion practice.
15  Ms. Bensing, do you have a date that you are thinking
16  of?
17  MS. BENSING:  Well, Your Honor, it looks like the
18  reply for the motion is November 30.  So I think it's also a
19  little bit more realistic to schedule a trial in the case in
20  the fall, when we have an idea when jury trials will return.
21  So I would suggest a date, perhaps the 13th of
22  December, which is the week after the motions will be fully
23  briefed.
24  THE COURT:  Okay.  So let's do that.
25  We are going to adjourn the case to December 13 at --

MICHELE NARDONE, CSR -- Official Court Reporter

1   Mr. Celli, I can't remember.  What's better for you, before
2   11:00?  I'm hopeful it will be in person then.  Morning or
3   afternoon?  Yes?
4            THE DEFENDANT:  Whatever.  I don't know what --
5            THE CLERK:  November 13 is a Sunday.
6            THE COURT:  All right.  Well, we won't be meeting
7   then.  Let's do the 15th.
8            THE CLERK:  Okay.
9            THE COURT:  Is morning okay for you, Mr. Celli?
10           THE DEFENDANT:  Yes.
11           THE COURT:  We may be back in person then; but
12  let's -- why don't we say 10:30.
13           THE CLERK:  How about 11:15, judge?
14           THE COURT:  11:15, is that okay with you, Mr. Taylor?
15           MR. TAYLOR:  Yes, Your Honor.
16           THE COURT:  And for you, Ms. Bensing?
17           MS. BENSING:  Yes, Your Honor.
18           We just ask that given the motion to be filed and the
19  continuing discussions between the parties as to resolving the
20  case, that time be excluded until December 15, Your Honor.
21           THE COURT:  Yes.  That time is excluded in the
22  interests of justice because we will be resolving motion
23  practice and to the extent that the parties are engaged in any
24  kind of negotiations.  All right.
25           Mr. Celli, listen, I don't want to have any more

MICHELE NARDONE, CSR -- Official Court Reporter

1  reports from Pretrial that you are not following the rules.  If
2  there is something else that you want to do that you are not
3  being permitted to do, just tell your lawyer.  Your lawyer will
4  make the request; and, if it's reasonable, I will let you do
5  it, just like I let you visit your friend Ms. Giordano.  So
6  that's the way that's going to be.  Okay?
7             THE DEFENDANT:  All right.
8             THE COURT:  All right.  Everybody, stay healthy, take
9  care.
10            MS. BENSING:  Thank you, Your Honor.
11            MR. TAYLOR:  Thank you, Your Honor.
12            THE DEFENDANT:  Bye.
13            (End of proceedings.)
14                            o O o
15
16 Certified to be a true and accurate transcript.
   /s/ Michele Nardone
17 MICHELE NARDONE, CSR -- Official Court Reporter
18
19
20
21
22
23
24
25