LAW OFFICE OF
# BENJAMIN SILVERMAN
224 WEST 30TH ST., SUITE 302
NEW YORK, NY 10001

TEL (212) 203-8074
FAX (646) 843-3938
Benjamin@bsilvermanlaw.com

December 7, 2020

**By ECF and Email**
Honorable Paul A. Engelmayer
United States District Judge
Eastern District of New York[1]
40 Foley Square
New York, NY 10007

Re: *United States v. Lucio Celli*, 19 Cr. 127 (PAE)

Your Honor:

I write respectfully in response to the government's *in limine* motions dated November 23, 2020 (Dkt. 100).

The contours of the parties' respective trial cases are now clear. The government will argue that Mr. Celli engaged in escalating rhetoric culminating in illegal threats despite false assurances to the United States Marshals Service (Marshals) that he would stop. Mr. Celli will argue that he was trying to bring attention to injustices in civil cases and that he had every reason to believe that his communications would not be viewed as threats. After all, he told the Marshals he did not intend his communications to harass or intimidate and they believed him, including in March 2018, when they closed the case out, and then in an exchange immediately following his arrest on November 16, 2018, which is described in Point I.B.2 below.

The government, however, seeks to include only its own narrative, deprived of context properly admitted under Rules 401, 403, and 803(3). It seeks to excise portions of Mr. Celli's post-arrest statement to deprive the full context of Mr. Celli's explanations. It seeks to offer evidence of Mr. Celli's "motives" without allowing him to rebut or contradict its narrative. Many of the government's motions – for example, to offer excerpts from prison calls – are unopposed. But others go too far. The government's *in limine* motions addressed below in the order in which they appear in the government's letter brief.

---

[1] Sitting by designation.

### I. Post-Arrest Statements and Prison Phone Calls

Mr. Celli does not object to the government offering the identified excerpts from his MDC phone calls.

As to the post-arrest statement, Mr. Celli respectfully submits that if selective excerpts from his 17-minute interview are to be played, then the statement should be played in its entirety. Further, only the audio should be admitted, and not the prejudicial video of Mr. Celli being interrogated while restrained by handcuffs.

#### A. Applicable Law: The Rule of Completeness

The Rule of Completeness provides that where one party "introduces all or part of a writing or recorded statement, an adverse party may require the introduction, at that time, of any other part – or any other writing or recorded statement – that in fairness ought to be considered at the same time." Fed. R. Evid. 106. Its purpose is to "avoid misleading the trier of fact," specifically to ensure that the factfinder is not led astray by the introduction of a highly edified portion of a statement that inaccurately depicts the true "tenor" of the statement as a whole. *United States v. Marro*, 669 F.2d 73, 84 (2d Cir. 1982). "The completeness doctrine does not, however, require the admission of portions of a statement that are neither explanatory of nor relevant to the admitted passages." *United States v. Johnson*, 507 F.3d 793, 796 (2d Cir. 2007). When a statement is offered to complete the evidence and avoid a misleading impression, it is properly introduced for a nonhearsay purpose even if it is an out-of-court statement otherwise excludable. *United States v. Williams*, 930 F.3d 44, 60 (2d Cir. 2019)

#### B. The government's motion to preclude portions of Mr. Celli's post-arrest statement should be denied

The government moves to exclude certain key portions of Mr. Celli's post-arrest statement that provide full context to his explanation of his intent in sending certain emails, in particular the following two excerpts.

##### 1. Excised excerpt 1 (Tr. at 8; Video at 10:52)[2]

The government moves to exclude the following answer to an open-ended

---

[2] "Transcript" refers to Exhibit A to the government's *in limine* motions dated November 23, 2020 (Dkt. 100-1) and "Video" refers to the videotape of the post-arrest statement is being transmitted to Chambers at the time that this letter is filed.

question:

> **Marshal**: So what do you, I understand you're upset and, um, when you stated in your email about stabbing them?
>
> **Celli**: I don't mean to actually do it because I'm not a violent person. I want justice. Like, I don't think I should have had to, I've emailed many times without threatening and I think, I submitted the right way the judicial complaint and then the New York City Mental healthy came to me . . . .

The problem is that the government wants to play for the jury the exchange immediately afterwards, in which Mr. Celli responds ambiguously to a leading question:

> **Marshal**: So you were aware that the emails you sent out were threatening?
>
> **Celli**: Cause I feel threatened as well. Cause I don't know how to get justice anymore. Because if it's okay to threaten me it's okay to be threatened back. Because they're not above the law. That's how I feel.

The government's attempt to excise a critical portion of the colloquy should be rejected and the omitted exchange should be admitted under Rule 106. The government wants to admit only Mr. Celli's ambiguous response to a leading question ("So you were aware that the emails you sent out were threatening?") while omitting his clearer response to an open-ended question immediately prior. Mr. Celli's answer to the second, leading question, assumes the listener's knowledge of the explanation provided immediately before. That explanation is consistent with what Mr. Celli told the Marshals since March 2018, and it is part and parcel of Mr. Celli's response to this line of questioning by the Marshal about Mr. Celli's intent.

### 2. Excised excerpt 2 (Tr. at 10; Video at 14:23)

The government seeks to exclude the following exchange, again sandwiched between statements that it wishes to play for the jury:

> **Celli**: I have the – excuse me, I don't want to come off as threatening. I apologize.
>
> **Marshal**: That's okay.

>**Celli**: No, because I know, I-I apologize.
>
>**Marshal**: That's alright. You're a person that talks with his hands. I know what you mean. You're fine. You're fine, you're fine.

The Marshals statements to Mr. Celli during the interrogation are not hearsay – not if the Marshals are called as adverse witnesses – and they are probative. They show how courthouse personnel reacted when Mr. Celli informed them that, despite how worked up he gets, he did not intend to frighten them. They corroborate Mr. Celli's understanding of the Marshal's exchanges with him eight months earlier in March 2018 – indicating to him that the courthouse's own personnel understood that he did not actually intend to be threatening and therefore would not view subsequent statements as threats. *See* Celli Mot. dated 11/23/20 (Dkt. 101) at 9-11. This videotape of the Marshals interacting with Mr. Celli adds, materially, to the portrait painted by the evidence of the March through November interactions between Mr. Celli and law enforcement: Mr. Celli apologizes for being heated, and is given reason to believe that law enforcement does not view his heated rhetoric as actually threatening. Mr. Celli's own statements are not admissible for the truth, but rather to provide context for what the Marshals say.

### C. Only Audio Should Be Played

The government has informed me that it will offer not just the audio, but also the videotape of Mr. Celli restrained and clearly in custody. The video – perhaps the only images that jurors would ever see of Mr. Celli without a mask on – should be excluded under Rule 403 and because it undermines the presumption of innocence.

It is well-established that "[a] defendant 'should not be compelled to go to trial in prison or jail clothing because of the possible impairment' of the presumption of innocence guaranteed as part of a defendant's due process right to a fair trial." *United States v. Hurtado*, 47 F.3d 577, 581 (2d Cir. 1995) (quoting *Estelle v. Williams*, 425 U.S. 501, 504 (1976)).

Here, the videotape the government wants to offer will have the same effect. Unlike a typical police interrogation, in which the suspect is uncuffed in a stationhouse room when questioned by officers, Mr. Celli's cuffing is prominently featured on the videotape. It suggests to the jury that the Marshals – trained law enforcement professionals – were so afraid of this man that they would not sit across from him if he was unrestrained. The prejudice from this imagery will be substantial. Moreover, the visual is unnecessary for the government's case. It is the audio that the government

wishes to offer as proof. The Rule 403 balance favors excluding the video and only allowing audio from this interrogation.

## II.     Pre-Arrest Statements to the Marshals

Mr. Celli does not object to the government offering his prior statements to the Marshals and, indeed, has moved to offer them and informed the government that he intended do so. *See* Celli Br. (Dkt. 101) at Point II.

As to the emails, Mr. Celli does not object except as noted in his November 23 *in limine* motion (Point III on page 17) that the government should be precluded from offering irrelevant portions of emails that are inflammatory but do not prove anything relevant to the government's case.

## III.    The Underlying Civil Disputes

Counsel understands that Mr. Celli has stressed repeatedly throughout this litigation that he believes the trial should include evidence about the substance of his prior civil cases, which may be why the government makes this motion.

For its part, the government wants to establish Mr. Celli's "motives for threatening the judges." G. Br. at 8. Motivation is not an element of the offense, *see id.* (citing the Sand's Modern Federal Jury Instructions), but if the government wishes to put it at issue, Mr. Celli respectfully submits that a defense rebuttal case is warranted. Mr. Celli's case is as follows. He filed civil lawsuits against his former employer, felt aggrieved by his treatment in court, and wanted to get the attention of Second Circuit judges who oversee those courts. Mr. Celli views his actions as corresponding and mirroring actions taken by the American Federation of Teachers, the New York City Board of Education, and certain district court judges. His motivation was to pursue justice and remedies for wrongs done to him, first by his employer and union, and later by judges who he believed were improperly affiliated with his former union and unfair to him.

The government may argue that these motivations are foolish or disingenuous or even crazy, but if the government wants to put Mr. Celli's "motives" in issue, then he will want to address them as well. As the past years of litigation illustrate, there is nothing that Mr. Celli would like more than to have an opportunity in front of a jury to discuss his "motives" – the very subject that the government wants to raise, *see* G. Br. 8.

One thing should not be allowed to happen: the government should not be the only party able to tell a story about "the defendant's motives" without Mr. Celli permitted to address, and to contradict, that narrative. The government may wish to portray Mr. Celli

as driven by rage or spite or unwillingness to stay within proper bounds. But Mr. Celli has a story that he would like to tell as well if the government opens the door for it. He should be allowed to address, and contradict, any narrative presented by the government by offering his own, counter-narrative about how this all started and what "motives" led him to send emails to judges. For Mr. Celli, that story begins with the underlying civil cases.

### IV. References to the First Amendment

Insofar as the government moves to preclude counsel from pursuing jury nullification by arguing a non-existent First Amendment right to threaten, its motion is unopposed. The government appears to go further, however, and make a Rule 403-like argument that the prejudice to the government in permitting counsel to use the words "free speech" or "freedom of speech" will unduly prejudice the government's case. Counsel should be permitted to argue to the jury that Mr. Celli cannot be convicted merely because his statements are crude and inflammatory; that knowledge that statements are offensive or startling does not equal intent to threaten; and that the jury can use its common sense and everyday experiences to infer that a citizen like Mr. Celli could believe that he has every right to say offensive things – and to mail them to people – if he did not believe that they would be perceived as threats.

### V. Venue for This Case

Counsel offers a correction to it own motions dated November 23, 2020. In the discussion of venue, a parenthetical erroneously describes an order in *United States v. Romano*, No. 12 Cr. 691 (cited on pages 3-4) as having been decided under Rule 21. On the contrary, that order sought a visiting judge from outside of the Eastern District to preside over the case in the Eastern District, as has occurred in this case.

The larger points remain that there is prejudice to Mr. Celli both by trying the case (1) in the Cadman Plaza Courthouse – the victim's "home court" in Judge Vitaliano's words in his decision in *United States v. Wright*, 603 F. Supp. 2d 506, 509 (E.D.N.Y. 2009) – and (2) before a judge from within the Second Circuit given that the alleged threats at issue were transmitted to Second Circuit judges and addressed to the then-Chief Judge.

### VI. Conclusion

Mr. Celli's responses to the government's *in limine* motions are summarized as follows:

1. **Post-Arrest Statements**. Only audio should be permitted – not the video of Mr. Celli questioned while restrained in handcuffs – and the full context of the statements should be played for the jury.

2. **Prison calls**. There is no objection to the proposed excerpts of prison calls.

3. **Pre-Arrest Statements**. There does not appear to be a dispute between the parties.

4. **Underlying civil disputes**: Mr. Celli feels strongly that he should be permitted to address the substance of his civil cases and counsel notes that if the government wants to litigate Mr. Celli's motives, which are not an element of the offense, then the door will be open for a rebuttal case on that matter.

5. **First Amendment**. Insofar as the government moves to preclude argument that threats are allowed under the First Amendment, its motion is without objection. Counsel should be permitted to argue to the jury that it may rely on common sense and everyday experiences to understand why a United States citizen would feel free to communicate offensive or inflammatory statements to prominent individuals so long as he did not view them as threats and did not believe others would.

Respectfully submitted,

 /s/ Benjamin Silverman
Benjamin Silverman
*Attorney for Lucio Celli*

cc: Counsel of record (by ECF)