

U.S. Department of Justice

United States Attorney
Eastern District of New York

NS:KCB/ALK                                   *271 Cadman Plaza East*
F. #2018R02184                               *Brooklyn, New York 11201*

December 7, 2020

By E-mail and ECF

The Honorable Paul A. Engelmayer
United States District Court
Eastern District of New York
*Sitting by designation*
40 Foley Square
New York, New York 10007

      Re:    United States v. Lucio Celli
                Criminal Docket No. 19-127 (PAE)

Dear Judge Engelmayer:

      The government respectfully submits this response to the defendant's November 23, 2020 motions in limine. See ECF No. 101 ("Def. Br.").[1] As detailed in the government's motions in limine, see ECF No. 100 ("Gov. Br."), the defendant is charged with one count of transmitting threats to cause death and bodily injury in violation of Title 18, United States Code, Section 875(c). See id. at 2-4 (detailing factual conduct underlying charged crime). For the reasons set forth below, (1) the defendant's motion to transfer venue should be denied; (2) the defendant may not introduce his own hearsay statements at trial; and (3) the Court's intervention regarding the redaction of trial exhibits is unnecessary as the government will work with defense counsel to reach agreed-upon redactions to trial exhibits as appropriate.

    I.    **The Defendant's Motion to Transfer Venue Should be Denied**

      The defendant first asserts that this case should be transferred to a district court outside of the Second Circuit. See Def. Br. 3-7. This motion should be denied. In moving to transfer, the defendant invokes 28 U.S.C. § 455(a), which governs judicial recusal, and Federal Rule of Criminal Procedure 21(a), which governs transfer of venue to avoid

---

[1] The defendant represented that he would be making additional motions. See Def. Br. 18. To date, the government has not received these and accordingly has not responded to them herein.

juror prejudice. As explained below, although recusal is committed to the Court's discretion, the government respectfully submits that it is not required here. Even assuming arguendo that recusal were appropriate (which it is not), the defendant has not demonstrated that transfer of venue is warranted under Rule 21(a).

### A. Relevant Legal Standards

Section 455(a) states that "[a]ny justice, judge, or magistrate judge of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned." 28 U.S.C. § 455(a). Disqualification under Section 455(a) "requires a showing that would cause 'an objective, disinterested observer fully informed of the underlying facts [to] entertain significant doubt that justice would be done absent recusal.'" In re Aguinda, 241 F.3d 194, 201 (2d Cir. 2001) (quoting United States v. Lovaglia, 954 F.2d 811, 815 (2d Cir. 1992)); accord United States v. Yousef, 327 F.3d 56, 169 (2d Cir. 2003). This analysis is made "not by considering what a straw poll of the only partly informed man-in-the-street would show[,] but by examining the record facts and the law, and then deciding whether a reasonable person knowing and understanding all the relevant facts would recuse the judge." United States v. Bayless, 201 F.3d 116, 127 (2d Cir. 2000) (alteration in original) (quoting In re Drexel Burnham Lambert Inc., 861 F.2d 1307, 1313 (2d Cir. 1988)). Where a case involves interests that are "remote, contingent, indirect or speculative" recusal is not required. E.g., Lovaglia, 954 F.2d at 815; Aguinda, 241 F.3d at 201. Whether to grant a recusal motion is "committed to the sound discretion of the district court." Lovaglia, 954 F.2d at 815; see also Yousef, 327 F.3d at 169 ("We review a judge's denial of a recusal motion for abuse of discretion.").

In contrast to Section 455(a), Rule 21(a) focuses on a defendant's constitutional guarantee to "a fair trial by a panel of impartial, indifferent jurors." See, e.g., United States v. Salim, 151 F. Supp. 2d 281, 282 (S.D.N.Y. 2001) (quoting Irvin v. Dowd, 366 U.S. 717, 722 (1961)). The rule provides that, upon a motion by the defendant, a district court must transfer a proceeding to another district "if the court is satisfied that so great a prejudice against the defendant exists in the transferring district that the defendant cannot obtain a fair and impartial trial there." Fed. R. Crim. P. 21(a). Transfer of venue under Rule 21(a) is reserved for "extraordinary circumstances." United States v. Awadallah, 457 F. Supp. 2d 246, 250 (S.D.N.Y. 2006); see also, e.g., Skilling v. United States, 561 U.S. 358, 378 (2010) ("The Constitution's place-of-trial prescriptions, however, do not impede transfer of the proceeding to a different district at the defendant's request if extraordinary local prejudice will prevent a fair trial."). Indeed, "[t]o satisfy this standard, a defendant must establish that the alleged community bias is 'so pervasive and prejudicial as to have created a reasonable likelihood that a fair trial could not be conducted.'" United States v. Prado, No. 10-CR-74 (JFB), 2011 WL 3472509, at *13 (E.D.N.Y. Aug. 5, 2011) (quoting United States v. Sabhnani, 599 F.3d 215, 233 (2d Cir. 2010)).

B. <u>Discussion</u>

On October 6, 2020, Chief Judge Roslynn R. Mauskopf recused the district judges of the Eastern District of New York from this case under Section 455(a) because "the victims of the alleged crime"—the Honorable Margo K. Brodie and the Honorable Brian M. Cogan—"are judges of [the Eastern District]." <u>See</u> ECF No. 79. The defendant now asserts that "the reasons that compelled Chief Judge Mauskopf to request a judge from outside of the Eastern District also require that the case be transferred to a judge outside of the Second Circuit." Def. Br. 4. More specifically, the defendant argues that, because certain judges currently sitting on the United States Court of Appeals for the Second Circuit may have received emails from the defendant, those judges were "just as victimized" by the defendant's conduct and, therefore, "[a]llowing this case to proceed in a court within this Circuit, and subject to review by the Second Circuit, poses continuing concerns about the appearance of unfairness" to the defendant. <u>See id.</u> at 4-5. In so arguing, the defendant improperly conflates (a) this Court's impartiality; (b) the impartiality of judges sitting on the Second Circuit should this case result in an appeal; and (c) the ability of jurors in the Eastern District of New York—where the conduct occurred and the case was charged—to be the arbiters of the defendant's criminal conduct.

1. <u>Recusal under Section 455(a) Is Not Required</u>

As an initial matter, the government does not understand the defendant to be arguing that this Court should disqualify the judges of the Second Circuit Court of Appeals from this case. To the extent the defendant is advancing such an argument, the issue is not properly before this Court. The defendant may move for recusal of any member of the three-judge panel assigned to decide any appeal in this case, if and when any part of this case is on appeal.[2]

With respect to this Court, the defendant has not demonstrated that a disinterested observer fully informed of the underlying facts would entertain significant doubt that justice would be done in this case absent recusal. <u>See</u> <u>Lovaglia</u>, 954 F.2d at 815. The defendant argues that this Court might appear partial given that Second Circuit judges who were recipients of certain emails sent by the defendant might hear an eventual appeal in this case. This argument is meritless.

First, the defendant's argument that every judge on the Second Circuit was "just as victimized by the alleged conduct" as Judge Brodie and Judge Cogan, Def. Br. 4, strains credulity. No Second Circuit judge can fairly be described as the defendant's victim. Even Judge Katzmann, the only Second Circuit judge who received the emails containing threats on November 12, 2018, as charged in the Indictment, was not the defendant's

---

[2] The government notes that any such recusal would be far from automatic here, even if the eventual panel members included a judge who received email communications from the defendant.

professed target. Rather, in a series of emails, the defendant specifically threatened to kill Judge Brodie and Judge Cogan. See Gov. Br. 2 (describing, inter alia, the defendant's threat to "stab" "Brodie and Cogan" to "get justice;" the defendant's email to Judge Katzmann that he would "hunt them [i.e., Judges Brodie and Cogan] down and kill them because . . . they have to die like the mafia;" and the defendant's email to Judge Katzmann "promis[ing]" that he would "kill them"). Nor were the judges of the Second Circuit similarly positioned to Judge Brodie and Judge Cogan, who both ruled against the defendant in civil lawsuits and against whom the defendant had repeatedly demonstrated animosity. See id. at 2-3. That circuit judges may have received other email communications from the defendant does not render those judges victims, as the defendant appears to assert. See Clemens v. U.S. Dist. Court for Cent. Dist. of California, 428 F.3d 1175, 1179 (9th Cir. 2005) (noting that no "reasonable person" could "draw an inference of a threat against the entire bench" where the "the defendant made personal threats against three individual judges in the district, not to any other judge"). Indeed, the defendant's argument falls particularly flat here, where he urges that the Court "move this prosecution to a nearby Circuit, for example a district court in the neighboring state of Massachusetts, which is in the First Circuit," Def. Br. 6, despite the fact that he mass-emailed judges who sit on the First Circuit Court of Appeals right alongside those who sit on the Second Circuit. See LC028415 (email sent by the defendant on November 13, 2018, to, among others, judges of the First Circuit Court of Appeals and Second Circuit Court of Appeals, stating, among other things, "DEAR JUDGES—I SENT KATZMANN 4,000 EMAILS . . . I EVEN THREATENED TO KILL COGAN AND BRODIE . . . I DONT CARE BECAUSE I [HA]VE THE EVIDENCE TO SHAME THEM").

   Second, the fact that some Second Circuit judges were recipients of emails from the defendant does not cast doubt on the ability of this Court to be impartial in this case. The defendant's claims that district judges "dislike . . . being reversed;" that they will "be concerned about offending or angering reviewing Second Circuit judges if an acquittal is obtained" in this case; and that they will "be concerned about victimized Second Circuit judges frowning on too light a sentence," among others, are too "remote, contingent, indirect [and] speculative" to require recusal here. See, e.g., Lovaglia, 954 F.2d at 815; Aguinda, 241 F.3d at 201; see also Clemens, 428 F.3d at 1179 (rejecting argument that "no judge of the district could preside impartially" over trial involving threats to judges in the same district).

   Finally, the defendant erroneously asserts that In re Nettles, 394 F.3d 1001 (7th Cir. 2005) instructs that recusal is required here. In Nettles, the defendant was charged with plotting to blow up the courthouse in which certain judges of the Northern District of Illinois and the Seventh Circuit Court of Appeals worked every day. Id. at 1002. The Seventh Circuit concluded that the circuit judges and the district judges who worked in the building should recuse because "[a] reasonable observer would think that a judge who works in the Dirksen building would want Nettles to be convicted and given a long sentence, rather than to be set free, either forthwith or sooner rather than later, to make another attempt to destroy the courthouse or its occupants." Id. at 1003. In other words, both the circuit judges and the district judges who worked in the building could fairly be characterized as victims of the defendant's plot. Here, as explained above, the Second Circuit judges who received

4

emails from the defendant were not impacted by the charged crime in nearly the same way. Moreover, the defendant does not assert, and the evidence does not support, that any Southern District of New York district judge could possibly be considered a victim here.

### 2. Transfer of Venue under Rule 21(a) Is Not Warranted

In any event, even if the Court were to agree with the defendant that the Court—and every other Southern District judge—should recuse from this case, transfer of venue would not be warranted. The appropriate remedy where recusal of a judge or judges is required is to designate a visiting judge or visiting judges to preside over the proceedings. On this issue, Nettles is instructive. After the judges of the Seventh Circuit and Northern District of Illinois recused in that case, the Honorable John F. Keenan of the Southern District of New York was designated as a visiting judge to preside over the proceedings, which remained in the Northern District of Illinois. See Executive Committee Order, United States v. Nettles, No. 4-CR-699 (N.D. Ill. Mar. 21, 2005), ECF No. 30. Judge Keenan denied the defendant's motion to transfer venue under Rule 21(a), finding that the defendant had not made a showing that he would not receive a fair and impartial trial in the Northern District of Illinois. See id. at ECF No. 46. On appeal from the jury's guilty verdicts, three Sixth Circuit judges, sitting by designation on the Seventh Circuit Court of Appeals, affirmed Judge Keenan's denial of the motion to transfer. See United States v. Nettles, 476 F.3d 508, 513-15 (7th Cir. 2007). Accordingly, whether recusal is required under Section 455(a) here has no bearing on whether transfer of venue is warranted.

Instead, for transfer of venue to be warranted, the defendant must demonstrate that "extraordinary local prejudice will prevent a fair trial." Skilling, 561 U.S. at 378. He has not, and cannot, do so here. The defendant offers only the conclusory assertion that the "unfairness" against him "derives from the venue as much as from the presiding judge." Def. Br. 7. In support, the defendant cites United States v. Wright, 603 F. Supp. 2d 506 (E.D.N.Y. 2009). But Wright is readily distinguishable. In that case, the defendant was charged with brutally attacking an Assistant United States Attorney during his sentencing hearing in a courtroom in the Eastern District of New York. See id. at 507. The Court transferred the case, without government objection, to the Southern District of New York in the interests of justice under Rule 21(b). The Court did so because, among other considerations, the attack on the Assistant United States Attorney occurred in a courtroom in the Eastern District of New York and the witnesses included the Eastern District judge who sentenced the defendant. Id. at 509. With respect to prejudice under Rule 21(a), under which the defendant moves here, the Court "reject[ed] as totally unfounded even the mere thought that the men and women responsible for the administration of justice in our courthouse would handle Wright's case differently than they would any of the other hundreds of cases which pass through the Court's doors—that is, with courtesy, efficiency, fairness and a commitment to protect the rights of all." Id. at 508. Indeed, in United States v. Romano, No. 12-CR-691 (JFK) (E.D.N.Y. 2012), a defendant charged with hiring a hit man to kill an Eastern District judge and an Eastern District Assistant United States Attorney

5

was tried in the Eastern District of New York before Judge Keenan of the Southern District of New York.[3]

The defendant falls far short of demonstrating that extraordinary local prejudice will prevent a fair trial in the Eastern District of New York, and provides no valid reason for the extraordinary measure of trying the case outside of the district and jury pool of the location in which the crime occurred. To the contrary, as Judge Vitaliano noted in Wright, those responsible for the administration of justice in the Eastern District will handle this case "with courtesy, efficiency, fairness and a commitment to protect the rights of all."

> II. The Court Should Deny the Defendant's Motion to Admit Pre-Arrest Interactions with Deputy Marshals

The Court should deny the defendant's motion to admit "pre-arrest interactions with the Marshals" as "circumstantial evidence of his state of mind and as evidence about whether an objective person would consider his emails threatening." Def. Br. 8.

By way of background, and as detailed in the government's motions in limine, Gov. Br. 3, on March 16, 2018, the defendant sent an email to various judges and other individuals stating that he was "going to fucking haunt" the President of the American Federation of Teachers, and that he wanted the recipients of the email "to know that I wont stop until Cogan and the panel fucking answers." The same day, deputy marshals of the United States Marshals Service met with the defendant to discuss the email. During that discussion, the defendant stated, among other things, that his intent was not to harm or stalk the judges. Id. The defendant also stated that he would stop sending inappropriate communications to court officials. Id. Despite these statements, the defendant sent increasingly hostile emails to Judges Brodie, Cogan and Katzmann, among other individuals, over the ensuing months. Id. at 3-4. On or about July 31, 2018, deputy marshals referred the defendant to the New York City Department of Health and Mental Hygiene ("DOHMH"). On August 8, 2018, the defendant agreed to meet with someone from DOHMH, but he later canceled the meeting. DOHMH reached out to the defendant again, but the defendant advised that he did not require their services.

As an initial matter, at present the government anticipates that it will elicit testimony at trial regarding the deputy marshals' interactions with the defendant, including the defendant's increasingly hostile and violent tone, in its case in chief, as set forth in its own motions in limine. See id. 6-8. Of course, the defendant may also present his own testimony and witnesses at trial.

The defendant, however, seeks to introduce his prior false exculpatory and self-serving statements to deputy marshals on March 16, 2018 for their truth. This motion

---

[3] The trial in Romano was held in the Brooklyn courthouse. The victims worked in the Central Islip courthouse.

6

should be denied.  As explained in the government's motions in limine, a defendant may not "attempt to get his side of the . . . story in front of the jury without himself testifying and opening himself up to cross-examination."  United States v. Davidson, 308 F. Supp. 2d 461, 480 (S.D.N.Y. 2004).  Thus, when offered by him to prove the truth of the matter asserted, the defendant's own self-serving statements are inadmissible hearsay.  See, e.g., United States v. Rutigliano, 614 F. App'x 542, 545 (2d Cir. 2015); United States v. Jackson, 180 F.3d 55, 73 (2d Cir. 1999); United States v. Marin, 669 F.2d 73, 84 (2d Cir. 1982).

   Contrary to the defendant's assertions, Rule 803(3) does not render these false exculpatory and self-serving statements admissible.  That rule establishes a hearsay exception for statements of the declarant's then-existing state of mind.  In particular, Rule 803(3) provides that "[a] statement of the declarant's then-existing statement of mind (such as motive, intent, or plan) . . . but not including a statement of memory or belief to prove the fact remembered or believed," will not be excluded as hearsay.  "A declaration of then-existing state of mind under FRE 803(3), however, must convey statements that 'face forward, rather than backward.'"  United States v. Blake, 195 F. Supp. 3d 605, 610 (S.D.N.Y. 2016) (quoting United States v. DiMaria, 727 F.2d 265, 271 (2d Cir. 1984)).  In other words, "to fall within Rule 803(3)'s 'state of mind' hearsay exception, the statements sought to be introduced must relate to the declarant's state of mind during the [charged crime]."  United States v. Netschi, 511 F. App'x 58, 61 (2d Cir. 2013) (emphasis in original); see also, e.g., United States v. Cardascia, 951 F.2d 474, 488 (2d Cir. 1991) ("To admit statements of one's state of mind with regard to conduct that occurred eight months earlier as in this case would significantly erode the intended breadth of this hearsay exception."); United States v. Lawal, 736 F.2d 5, 8 (2d Cir. 1984) ("Of course, to the extent that the declarations excluded by the trial court's rulings were not statements exhibiting Lawal's then existing state of mind, but were instead statements of what he or someone else had done in the past, they would be properly excludable as inadmissible hearsay not within the terms of Rule 803(3)."); United States v. Mendlowitz, No. 17-Cr-248 (VSB), 2019 WL 6977120, at *9 (S.D.N.Y. Dec. 20, 2019) ("The plain text of this rule does not cover the admission of statements regarding conduct or events that occurred earlier in time.").

   Here, the defendant's statements to deputy marshals that he had not intended to harm or stalk the judges when he sent the March 16 email were self-serving explanations for conduct that had already occurred.  Moreover, the defendant ignores that the March email is not charged in the Indictment and that eight months passed between his March statements and his November threats.  Not only do his March statements not reflect his state of mind when he sent the March 16 email; they certainly do not reflect his state of mind eight months later when he threatened "to fuck[ing] stab" Judge Brodie and Judge Cogan, and emailed Judge Katzmann to "deal with the US Marshall threat from Brodie and Cogan or I hunt them down and kill them."  Instead, the defendant's statements are quintessential self-serving and false exculpatory statements that are inadmissible when offered by him to prove their truth.

   The defendant's assertion that his March 16, 2018 interactions are admissible "as evidence about whether an objective person would consider his emails threatening," Def. Br. 8, similarly misses the mark.  At trial, the government must prove that the words

7

communicated by the defendant on November 12, 2018 constituted a "serious statement" that expressed "an intention to inflict" death or bodily injury. See Sand, Instruction 31-8. In proving this element, the government must show, among other things, that a reasonable recipient of the communication would have considered it to be a threat. See id. This test is objective. See id.; United States v. Segui, No. 19-CR-188(KAM), 2019 WL 8587291, at *5 (E.D.N.Y. Dec. 2, 2019). The deputy marshals' decision to close the case file after speaking with the defendant on March 16, 2018, eight months before the defendant sent the threats charged in the Indictment, has no bearing on whether a reasonable recipient of the November 12, 2018 threats would have considered them to be threats.

Finally, with respect to the defendant's broader motion to admit "pre-arrest interactions" with deputy marshals and DOHMH, the defendant does not specify what evidence he intends to use to prove those events. In any event, as noted above and detailed in the government's motions in limine, the government expects to admit evidence about the defendant's interactions with the deputy marshals as necessary background and context to the charged offense.[4]

III. The Defendant's Motion to Redact Offensive Comments

As to the defendant's motion to redact "offensive comments" from the defendant's email communications, the government intends to confer with defense counsel to render unnecessary any pretrial motion practice regarding specific redactions to the government's exhibits. The Court's intervention on this matter is therefore unnecessary at this time.

---

[4] The defendant's motion details that he was sexually assaulted and infected with HIV in 2007. Def. Br. 11. The government does not understand the defendant to be seeking to admit these facts at trial, nor has he explained any possible relevance they might have to this case. Nonetheless, because the defendant placed them before this Court in his motion papers, the government notes that any such evidence should be precluded for lack of probative value and the "potential to engender sympathy in an inappropriate effort to excuse the defendant's commission of the charged offense." See, e.g., United States v. Miller, 641 F. Supp. 2d 161, 167 (E.D.N.Y. 2009); United States v. Battaglia, No. 5 Cr. 774 (KMW), 2008 WL 144826, at *3 (S.D.N.Y. Jan. 15, 2008) (precluding "evidence of Defendant's family and personal status" as not "relevant to the issue of whether Defendant committed the crimes charged").

IV. <u>Conclusion</u>

For the reasons set forth above, the government respectfully requests that the Court deny the defendant's motions <u>in limine</u>.

Respectfully submitted,

SETH D. DUCHARME
Acting United States Attorney

By:       /s/
      Kayla Bensing
      Anna L. Karamigios
      Assistant U.S. Attorneys
      (718) 254-6279/6225

cc:    Benjamin Silverman, Esq. (By Email and ECF)
      Clerk of the Court (PAE) (By ECF)