# Exhibit A

1           UNITED STATES DISTRICT COURT
            EASTERN DISTRICT OF NEW YORK
2

3    - - - - - - - - - - - -    X

4    UNITED STATES OF AMERICA,   :    19-CR-127(AMD)

5           Plaintiff,           :
                                      United States Courthouse
6       -against-                :    Brooklyn, New York

7    LUCIO CELLI,                :
                                      April 27, 2020
8           Defendant.           :    11:15 o'clock a.m.

9    - - - - - - - - - - - -    X

10
                TRANSCRIPT OF TELEPHONE CONFERENCE
11           BEFORE THE HONORABLE ANN M. DONNELLY
                 UNITED STATES DISTRICT JUDGE.
12

13   APPEARANCES:

14
     For the Government:         RICHARD P. DONOGHUE
15                               United States Attorney
                                 BY: KAYLA C. BENSING
16                               Assistant United States Attorney
                                 271 Cadman Plaza East
17                               Brooklyn, New York

18
     For the Defendant:          MICHAEL O. HUESTON, ESQ.
19

20   Also Present:               ZACHARY S. TAYLOR, ESQ.

21

22   Court Reporter:             Charleane M. Heading
                                 225 Cadman Plaza East
23                               Brooklyn, New York
                                 (718) 613-2643
24

25   Proceedings recorded by mechanical stenography, transcript
     produced by computer-aided transcription.

1     THE CLERK:  This is criminal cause for a telephone
2  conference in docket number 19-CR-127, USA versus Celli.
3     Counsel, state your appearances for the court
4  reporter, please, government first.
5     MS. BENSING:  Kayla Bensing for the government.
6  Good morning, Your Honor.
7     THE COURT:  Hi.
8     MR. HUESTON:  Michael Hueston for Lucio Celli.  Good
9  morning, Your Honor.
10    THE COURT:  Hi.
11    MR. TAYLOR:  Good morning, Your Honor.  This is
12 Zachary Taylor, the CJA duty attorney today.
13    THE COURT:  Hi.
14    And Mr. Celli, you're there too?
15    THE DEFENDANT:  Yes.  Good morning, Your Honor.  How
16 are you?
17    THE COURT:  I'm good.  How are you?
18    THE DEFENDANT:  Good, thank you.
19    THE COURT:  Okay.  So I got a letter from
20 Mr. Hueston.
21    Do you want to just put your position on the record,
22 Mr. Hueston?
23    MR. HUESTON:  Yes, Your Honor.
24    Mr. Celli has authorized me to inform the Court that
25 he wants new counsel and I, I join in this application.

1          As Your Honor is aware, we've had issues arise in
2   the course of my representation that have twice, we've had
3   other counsel come in to advise Mr. Celli regarding our
4   relationship and issues that he wishes to raise and the reason
5   I'm joining in, the other times I did not, the reason I'm
6   joining this time is that I believe that we really do have a
7   breakdown in the relationship and that now, it's reached a
8   point where we're unable to move forward, like, for instance,
9   with the competency examination.
10          So given that, and I really do perceive that there
11  is sort of an imbedded problem, I think it's best that new
12  counsel be assigned and they move forward and I can assist in
13  obviously getting them up to speed.
14          Also, I do think that, you know, given, and I won't
15  go to the specifics, I think this is sort of a repeat of what
16  we've dealt with before, but given things that Mr. Celli has
17  said to me, I do think that we would have to have a <u>Curcio</u>, a
18  <u>Curcio</u> hearing in any event because, you know, based on those
19  statements, there's an issue about whether or not a reasonable
20  defendant would want to represent them given, you know, what
21  he has said.
22          So that's the basis, Your Honor, of my application
23  this morning.
24          THE COURT:  Okay.  Well, here's my concern and, you
25  know, Mr. Hueston has been a vigorous advocate for Mr. Celli

1 throughout these proceedings.

2 In the face of I would say some provocation, you
3 know, Mr. Celli, you haven't been the easiest client. I think
4 you probably agree with me on that, but this is my concern.
5 Your lawyer, Mr. Hueston has really tried to give you his best
6 guidance and his best advice. My concern is that this is
7 going to keep happening and it just can't.

8 I think one of the problems with this case is that
9 you get upset when people don't agree with your view and I'm
10 just concerned that we're going to have the same problem going
11 forward. This will be your -- we had Mr. Montgomery come in.
12 We had another lawyer come in. You've had nothing but
13 excellent counsel all the way through. So I guess what my
14 concern is, you know, are you ever going to be happy with
15 anybody and that's, that's part of the problem.

16 THE DEFENDANT: So --

17 THE COURT: Maybe you want to -- okay.

18 THE DEFENDANT: No one is ever going to happy.
19 Sorry to cut you off, Your Honor.

20 THE COURT: I'm sorry.

21 THE DEFENDANT: Nobody is going to be happy with
22 everything because life is not perfect, however, and no one is
23 entitled to a perfect trial is my understanding but people are
24 entitled to a fair trial.

25 With that said, I told Mr. Hueston to bring up the

1  fact that if Ms. Bensing does not hand over the visit
2  recording of Ms., of the lawyers from my state case, then it's
3  an ethical violation.  I told my state -- my state lawyer said
4  it was Mr. Hueston's problem.  Mr. Hueston said it was the
5  state lawyer's --
6              THE COURT:  Mr. Celli, you know, I'm just going to
7  interrupt you because we have our court reporter on the phone
8  too.
9              THE DEFENDANT:  I'm sorry.
10             THE COURT:  No, no, that's okay.  It's just that
11 it's really hard for the court reporter if you start talking
12 too fast.
13             So you're talking about this issue about a
14 recording.  Does this have to do -- I don't know why I
15 remember this, but is this --
16             THE DEFENDANT:  The state case.
17             THE COURT:  -- the case with Stacy Richmond, is that
18 it?
19             THE DEFENDANT:  Yes.
20             THE COURT:  So I know you have a disagreement with
21 him over that.  I have to say I am not a hundred percent sure
22 what you're talking about.  It has zero to do with this case
23 because of the accusations against you, but I know that that's
24 a very strong view that you have, but if someone doesn't agree
25 with you, it's not automatically, you just can't throw up your

hands and get fixated on it which is I think what happens. In any event --

THE DEFENDANT: Well --

THE COURT: Go ahead but do it slowly. Okay, Mr. Celli?

THE DEFENDANT: Well, I disagree with the fact that the state case has nothing to do with this case because the two marshals that came to see me on March 18, 2018 --

THE COURT: Slow down.

THE DEFENDANT: -- concerning my state case, they said it would be fixed. There's things that the judge did and I know you were a state judge. Under Sardino, if they deny you your constitutional rights, it's reasons for removal of a state judge.

The DA -- I'm sorry. What did you say, Your Honor?

THE COURT: Okay. The only reason I'm going to stop you is because maybe you have some grievance against the state judge. Remember that what we're talking about here are the accusations against you that you had made some threatening communications to federal judges, unrelated to whatever happened at the state court.

I'm just trying to have you keep your eye on the ball here. You may have a grievance with either Ms. Richmond or with whoever the state judge was and all of that, but just remember, I'm just focusing on your criminal case here. So if

1    there's a cause of action that you have in connection with
2    your state court case, that's not something that I'm going to
3    have anything to say about.
4        Do you understand?
5        THE DEFENDANT:  Well, well, you haven't seen all --
6    even though that you were a part of the e-mail chain on
7    March 18th, some of the other e-mails to Catherine includes
8    pictures from the state case and e-mails to Stacy Richmond.
9        THE COURT:  Right.
10       THE DEFENDANT:  So I also have to prove my intent
11   and my intent is what the, what has occurred to me and what
12   the U.S. Marshals told me.  So in my mind, it has everything
13   to do with this case.
14       THE COURT:  All right.  The only thing I'll say, we
15   might have had this conversation before a few times but, you
16   know, people -- as I said, you have had some of the best
17   lawyers that we have in our court and I'm sure that the advice
18   that they have given you is the correct advice.  You know, if
19   somebody -- sometimes somebody is going to tell you something
20   that you don't want to hear.  The only analogy that I can make
21   is, you know, if you were to go to the doctor and the doctor
22   told you, gave you a medical opinion, the doctor, unless the
23   doctor is a quack, is in the best position to tell you that
24   because you don't have a medical degree.  And this is the same
25   thing.

1         You know, it's not uncommon for people to feel very
2   strongly that they have something, a claim that's relevant and
3   it turns out not to be relevant, but I'm not sure how much we
4   can accomplish by debating this.
5         THE DEFENDANT:  Okay.  I'm not done.  That's not the
6   only thing.
7         THE COURT:  So I'm going to grant --
8         THE DEFENDANT:  There's also the fact, you know, on
9   March -- sorry -- on February 5th, Ms. Bensing made a
10  misrepresentation to Judge Cogan.  Judge Cogan worked for,
11  Judge Cogan worked for UFT for 20 years.  You know, there are
12  several things that need to be addressed.  I know that --
13        THE COURT:  So --
14        THE DEFENDANT:  So these are things I feel, like, I
15  am still entitled to.  Like, if I wanted to, because I have
16  three federal judges saying that Judge Cogan didn't act in his
17  capacity as a judge, he acted as an advocate.  If you look
18  at --
19        THE COURT:  Okay.  Mr. Celli, I'm not going to
20  listen to this part.  I mean, I'll listen to it, but casting
21  aspersions on Judge Cogan, that's what got you in trouble in
22  the first place.
23        MR. HUESTON:  Your Honor --
24        THE COURT:  Let's not do that.  Okay?
25        MR. HUESTON:  Your Honor, this is Michael Hueston.

1           THE COURT: Yes.

2           MR. HUESTON: A couple of things, and I don't want

3 to, I'm not trying to provoke or incite in any way Mr. Celli.

4           THE COURT: No.

5           MR. HUESTON: The reason that the issue with the

6 calls regarding Ms. Richmond resonates here, remember, we did

7 have this conversation before where --

8           THE COURT: Right.

9           MR. HUESTON: -- the government made a

10 representation that -- Ms. Bensing said that she was not in

11 possession of the, I think there was four phone calls between

12 Mr. Celli's, Mr. Celli and Ms. Richmond's office or her.

13           You know, granted, you know, maybe the Bureau of

14 Prisons has them, and no one is saying that that may not

15 actually be the case, and the remedy, if he wanted to use

16 these in terms of his state proceeding, with his state

17 attorneys, you know, would have a basis for perhaps to ask for

18 a subpoena or a FOIL request to deal with the issue.

19           THE COURT: Right.

20           MR. HUESTON: So we did have this discussion.

21           THE COURT: Right.

22           MR. HUESTON: The other issues in terms of, you

23 know, that go to the practice of a defense, you know,

24 obviously, as an attorney, I'll look at any defense that

25 makes, that I do think is meritorious.

1 THE COURT: Right.
2 MR. HUESTON: I think any lawyer would look at that.
3 THE COURT: Of course.
4 MR. HUESTON: But as I see it, there is a certain
5 fixation. You know, we need to move forward with the
6 competency exam.
7 THE COURT: Right.
8 MR. HUESTON: At this point, we're not able, I'm not
9 able to facilitate that with Mr. Celli. You know, that's, you
10 know, that's problematic for a couple of reasons.
11 One is that, obviously, a competency exam deals with
12 the issue of decision-making specifically. So we need
13 clearance of that issue. We need to know about that so we can
14 proceed. Without that, we're really at loggerheads in terms
15 of, you know, taking any, you know, much of any action.
16 THE COURT: Can I just say, why hasn't that
17 proceeded? I thought -- is that because Mr. Celli is unhappy
18 with you? I don't understand why.
19 THE DEFENDANT: So may I answer? One of the things
20 I have an issue is the fact that Michael Dorn misrepresented
21 the fact of -- if you hear my audio recordings, I have been
22 saying that I wanted a competency exam since last September.
23 So I don't have any problem with the actual competency exam.
24 Let me be straightforward.
25 THE COURT: Okay.

1   THE DEFENDANT: I have an issue with -- I do not
2  trust the government. The government has -- Michael Dorn has
3  misrepresented what my therapist said because my therapist
4  read the e-mail that was sent to Michael Dorn and it was not
5  what was represented to the court. So --
6   THE COURT: Okay.
7   THE DEFENDANT: Sorry to cut you off. I do not want
8  to proceed with only one therapist, what do you call,
9  psychological exam. I want two of them because I don't trust
10 Barry Moore, Barry whatever his name is, sorry.
11  THE COURT: But let's just do this though. Let's
12 just do the one first and then if we need a second one, we'll
13 do a second one. Okay?
14  MR. HUESTON: And, Your Honor, just to add --
15  THE COURT: It's not hard.
16  Yes?
17  MR. HUESTON: In the order that was submitted,
18 unless my recollection is wrong, that there is a provision in
19 it that states that a second exam can be done.
20  THE COURT: Yes.
21  MR. HUESTON: But in any event, I haven't been able
22 to facilitate it.
23  THE COURT: All right.
24  MR. HUESTON: I have had communications with
25 Mr. Rosenfeld, Dr. Rosenfeld, and they're able to do the

```
                                                                12
```

1  examination through Zoom, you know, that sort of, what we're
2  dealing with now but, you know, I have -- I won't say much
3  more.  You know, Mr. Celli sort of alluded to it, that he has
4  issues about going forward until other issues are resolved and
5  that doesn't, that's not feasible.
6              THE COURT:  No.
7              MR. HUESTON:  And so that's sort of where -- that's
8  my loggerhead right now and if I can't achieve it, then
9  someone else needs to be able to achieve it.
10             THE COURT:  I think that's right.  I mean, I hate to
11 throw another wrench into the proceedings, but just as a
12 practical matter, how would we facilitate Mr. Celli having a
13 Zoom meeting?  Because I've kept him from -- I don't want him
14 on the computer.
15             MR. HUESTON:  I've spoken --
16             MS. BENSING:  Your Honor --
17             MR. HUESTON:  I did speak to Ms. Bensing about this.
18             THE COURT:  Okay.
19             MS. HUESTON:  So I can let Ms. Bensing, you know,
20 talk about it, you know, a suggestion as to how to facilitate
21 it.
22             THE COURT:  Okay.  Well, you know what, as long
23 as -- I'm cutting you off, Ms. Bensing, only because if you
24 all have worked that out, I don't need to be involved in that
25 part.  That's one and might as well -- I wasn't trying to

1  borrow trouble here.  It just occurred to me.

2  So if you have a method to do that, that's great,
3  but I think what we have to do now is just move on to the next
4  step and that's to relieve Mr. Hueston with the thanks of the
5  Court and that doesn't actually seem to be enough to express
6  my gratitude to Mr. Hueston for the really selfless and
7  vigorous representation he's given to Mr. Celli.  It just -- I
8  agree that you've kind of reached the end of your, of the
9  relationship here.

10  That means, I'm going to assign Mr. Taylor to
11  Mr. Celli's case.

12  Mr. Celli, I'm going to ask you to be cooperative
13  with another excellent lawyer that I'm assigning to you, but,
14  you know, we've got to move ahead with this case.  It's in
15  your interest too to move on with your life.  You know, I'm
16  sure you're tired of coming to court or calling in to court
17  and all of that so I think it's really time to move ahead with
18  your case.  The first thing that we're going to have to do is
19  to facilitate the competency exam and if there's a need for
20  another one, we'll do a second one as well.

21  THE DEFENDANT:  All right.  So what's going to be
22  done about that audio recording?  Can I have that audio
23  recording?  That's the bottom line.  I'm sorry to cut you off,
24  Your Honor.

25  THE COURT:  I also didn't hear what you said.  Just

1 say it slowly.

2 THE DEFENDANT: Sorry. I need a remedy to what
3 happened prior to this because the lack of the audio recording
4 caused an issue in my state court. So I need a remedy.

5 THE COURT: Is your state case over with?

6 THE DEFENDANT: Well, somewhat, because of the audio
7 recording.

8 THE COURT: I'm sorry. What?

9 THE DEFENDANT: There was a decision made without
10 the audio recording, yes.

11 MR. HUESTON: Your Honor --

12 THE COURT: So I -- go ahead, Mr. Hueston.

13 MR. HUESTON: I can just give some information. My
14 understanding is -- Mr. Celli, correct me if I'm wrong.

15 THE COURT: I'm sure he will.

16 MR. HUESTON: There was an application made to
17 vacate his plea.

18 THE COURT: Right.

19 MR. HUESTON: And it was denied by that, by the
20 judge I believe in Westchester County. And I do believe
21 Mr. Celli is either looking into or, you know, whatever remedy
22 he can make in terms of challenging that finding.

23 THE COURT: Okay.

24 THE DEFENDANT: Personal jurisdiction.

25 THE COURT: I'm sorry?

1  THE DEFENDANT: On the first one, jurisdiction.
2  Strictly, due process for that, personal jurisdiction of the
3  circumstances that would offend traditional notions of fair
4  play and substantial justice.
5  THE COURT: Okay. That's fine, but it's not in my,
6  it's not involved in this case. Okay?
7  So if you -- Mr. Celli, do you have something on in
8  the background?
9  THE DEFENDANT: No, not me. That's someone else.
10 Oh, I think it is me. Sorry.
11 THE COURT: That's okay. That's okay. Better now.
12 So, Mr. Celli, I know you feel very strongly about
13 that but I, that doesn't have anything to do with this case.
14 That's a state case and I'm sure your research has also told
15 you that federal judges can't tell state judges, state court
16 judges what to do in their cases.
17 THE DEFENDANT: I read that as well.
18 THE COURT: Yes, and state judges feel pretty
19 strongly about that.
20 So if there's a civil proceeding that you want to
21 bring, that's something to bring in state court or you can
22 appeal. I don't know what judge it was in Westchester County
23 but you can appeal that decision as well.
24 But that case closed, you took a plea and you wanted
25 to withdraw the plea, is that right?

1         THE DEFENDANT: Well, it's not closed yet because
2 the courts are closed.
3         THE COURT: Oh, I see. I see. Okay.
4         So let's just take this one step at a time now.
5 Let's focus on what we have to focus on for this case which is
6 getting that competency exam done. Once that is done, if you
7 feel that, you know, with your lawyer, that we should have a
8 second one, we'll do that as I said.
9         Mr. Taylor, you haven't had a chance to say very
10 much but I'm sure Mr. Hueston will fill you in on everything
11 you need to know.
12         Ms. Bensing, I haven't given you much of a chance to
13 say anything. Is there anything that you want to add?
14         MS. BENSING: I would just note for the record,
15 Your Honor, just as a means of explaining some of the delay
16 with the competency evaluation, there was an issue with, you
17 know, just the general practice of getting medical records --
18         THE COURT: Right.
19         MS. BENSING: -- from Dr. Rosenfeld. So I think
20 that has now largely been accomplished and I just wanted to
21 put on the record that that was part of the delay and then, of
22 course, the pandemic is another thing that is factored in.
23         I do think that it may be when we come to Your Honor
24 with some sort of temporary bail modification with respect to
25 conducting the competency evaluation itself, I'm hopeful that

1  we can come to a consent agreement on that.
2          THE COURT: All right. That makes sense.
3          Mr. Taylor, do you want to say anything?
4          MR. TAYLOR: No, Your Honor.
5          THE COURT: Okay. All right. So we need to pick a
6  date for our next conference. I want to say, should we check
7  in 45 days or is that not enough time? Too much time?
8          MS. BENSING: I think that that should be
9  sufficient, Your Honor.
10          THE COURT: Okay. And I don't know what our
11  situation is going to be. I guess when we get closer to that
12  date, we'll figure that if that will be an in-person or a
13  telephone conference.
14          Donna, can you pick a date for me?
15          THE CLERK: How is June 9th at 11:30? That's a
16  Tuesday.
17          THE COURT: Is that good for everybody?
18          MR. TAYLOR: I apologize. This is Zachary Taylor.
19  I am not available. I have a sentencing that morning in the
20  Southern District. I am available the afternoon on that day.
21          THE CLERK: Great. 2:30?
22          THE COURT: 2:30?
23          MR. TAYLOR: 2:30 is fine.
24          THE COURT: All right. So June 9th, 2:30. The time
25  is excludable. I might have excluded the time already but

1  it's excludable in the interest of justice to get this
2  competency hearing done.
3       Mr. Celli, I hope everybody in your family is
4  healthy.
5       THE DEFENDANT:  Likewise.
6       THE COURT:  And stay healthy and just try to keep
7  your eye on the ball.  Okay?
8       THE DEFENDANT:  All right.  Oh -- I'll tell
9  Mr. Taylor.  Forget it.  I'll speak to him.  Oh, can I have
10 his number?
11      THE COURT:  Why don't you all deal with that and you
12 can get -- you mean the lawyer's number?
13      THE DEFENDANT:  I'll get it from Mr. Hueston.
14 That's fine.
15      MR. HUESTON:  Mr. Taylor, I'll follow up with you in
16 getting the file.  Thank you.
17      THE DEFENDANT:  Have a nice day, everyone.
18      THE COURT:  Okay.  Thanks.
19      MR. TAYLOR:  Thank you, Your Honor.
20      THE COURT:  Mr. Hueston, thanks again.
21      MR. HUESTON:  Thank you, Your Honor.
22      (Matter concluded.)
23
24
25