```
 1  UNITED STATES DISTRICT COURT
    SOUTHERN DISTRICT OF NEW YORK
 2  ------------------------------x

 3  UNITED STATES OF AMERICA,                 E.D.N.Y.
                    v.                        19-CR-127(PAE)(VJ)
 4                                            21-SD-2656(PAE)
    LUCIO CELLI,
 5
                    Defendant.
 6
    ------------------------------x
 7                                            Plea

 8

 9                                            New York, N.Y.
                                              MAY 7, 2021
10                                            10:00 a.m.

11
    Before:
12
                              HON.
13
                                              District Judge
14

15                        APPEARANCES

16  AUDREY STRAUSS
         United States Attorney for the
17       Southern District of New York
    ANNA KARMIGIOS
18  JENNIFER SASSO
         Assistant United States Attorney
19
    BENJAMIN SILVERMAN
20       Attorney for Defendant

21

22

23

24

25
```

1          (In open court; case called)

2          THE DEPUTY CLERK:  State your appearance for the

3     record.

4          MS. KARMIGIOS:  Anna Karmigios and Jennifer Sasso for

5     the government.  Good morning, your Honor.

6          MR. SILVERMAN:  Good morning, your Honor.  Benjamin

7     Silverman for Lucio Celli.

8          Good morning, Mr. Silverman.

9          And good morning to you, Mr. Celli.

10         THE DEFENDANT:  Good morning.

11         THE COURT:  Mr. Silverman, I am also informed that

12    Mr. Celli's mother is here.

13         MR. SILVERMAN:  Yes, your Honor.  Mr. Celli's mother,

14    Ms. Celli and my colleague Ms. Daffy are both seated in the

15    back.

16         THE COURT:  Let me just welcome both of you and thank

17    you for being here today.

18         Mr. Silverman, I have been informed that your client

19    today wishes to plead guilty to the sole count --

20         One moment.

21         Mr. Smallman is going to get the line open.

22         (Pause)

23         THE COURT:  I will note for the record that Mr.

24    Smallman has opened up the phone line to the public.  So if

25    there are members of the public who wish to attend this

1  conference without exposing themselves to whatever risks might

2  be present with an in-person proceeding, they are able to do

3  so.

4          With that, Mr. Silverman, I understand that your

5  client wishes today to plead guilty to the sole count in the

6  indictment in this case pursuant to a plea agreement with the

7  government; is that correct?

8          MR. SILVERMAN:  Yes, your Honor.

9          THE COURT:  Mr. Celli; is that correct?

10         THE DEFENDANT:  Yes.

11         THE COURT:  Counsel have handed up the plea agreement

12 and I am going to mark it as Government Exhibit 1.  Later on in

13 this proceeding, I will have questions for the counsel and for

14 Mr. Celli about the agreement.

15         Before turning though to the plea allocution, I have a

16 couple of preliminary matters.  The first is I just want to

17 make sure I understand a particular feature of the Eastern

18 District version plea agreement.  It appears to me that as to

19 the guideline range, the government is setting out its view of

20 the guideline range; but unlike the plea agreements that are

21 customarily in this district, there is no agreement by the

22 defense as to what the guideline range is.

23         Am I reading the agreement correctly?

24         MS. KARMIGIOS:  That's correct with respect to this

25 particular agreement, your Honor.

1          THE COURT:  Very good.

2          Mr. Silverman, am I correct to understand the

3     agreement that way?

4          MR. SILVERMAN:  Yes, your Honor.

5          THE COURT:  The second issue I want to make up as a

6     preliminary matter involves the fact that we're having this

7     conference here in the Southern District of New York, not the

8     Eastern District of New York.  In recent conferences in the

9     case, which have been in person, have been held with

10    everybody's consent.  Here, I want to take an extra few moments

11    and just question all counsel.

12          First of all, just to confirm that all counsel consent

13    to this proceeding being occurring here in the Southern

14    District of York.

15          Government?

16          MS. KARMIGIOS:  Yes, your Honor, we consent.

17          THE COURT:  Defense?

18          MR. SILVERMAN:  Yes, your Honor.

19          THE COURT:  I want to put a few questions to Mr. Celli

20    and again just to confirm his consent to that.

21          Mr. Celli, I was informed only late yesterday of the

22    prospect of a guilty plea proceeding today, and I knew that we

23    would be able to arrange it this morning right away in my

24    courtroom in this court, and I had less certainty about whether

25    I would be able to do that in the Eastern District.  It was on

1  on that account that I proposed that we do this here today.

2          It is important for me, though, to underscore for you

3  that have a right to have this guilty plea proceeding occur in

4  the Eastern District of the New York, which is where the

5  indictment was returned.

6          Do you understand that you have that right?

7          THE DEFENDANT:  (Unintelligible).

8          THE COURT:  I understand, but I am just asking you --

9          THE DEF:  Yes.

10         THE COURT:  -- if you understand?

11         And if you would prefer to have this proceeding occur

12  in that district, of course I will accommodate than and I would

13  schedule that proceeding for early as we could arrange time

14  next week.

15         Do you understand that?

16         THE DEFENDANT:  Yes.

17         THE COURT:  Do you understand you are under no

18  obligation to have this plea proceeding occur in this district

19  as opposed to the Eastern District across the river; do you

20  understand that?

21         THE DEFENDANT:  That's fine, sir.

22         THE COURT:  I just want to make sure you understand.

23         THE DEFENDANT:  Uh-huh.

24         THE COURT:  Yes, you do?

25         THE DEFENDANT:  Yes.

THE COURT:  Do you waive your right to have this proceeding occur in the Eastern District and instead to have it in the Southern District of New York?

THE DEFENDANT:  I do, your Honor.

THE COURT:  Government, need I inquire any further on that subject?

MS. KARMIGIOS:  No, your Honor.  Thank you.

THE COURT:  So, Mr. Celli, before I accept your guilty plea, I am going to ask you certain questions so that I can establish to my satisfaction that you wish to plead guilty because you are guilty and not for some other reason.  If you don't understand any of my questions or if you would like further opportunity to consult with Mr. Silverman, will you please let me know?

THE DEFENDANT:  Yes.

THE COURT:  I know the answer to this question, but I am obliged to ask.  Are you able to speak and understand English?

THE DEFENDANT:  Yes.

THE COURT:  Mr. Smallman, will you place the defendant under oath.

(Defendant sworn)

THE COURT:  Mr. Celli, do you understand that you are now under oath and that if you answer any of my questions falsely, your answers to my questions may be used against you

1    in another prosecution for perjury?

2              THE DEFENDANT:  Yes.

3              THE COURT:  What is your full name?

4              THE DEFENDANT:  Lucio Celli.

5              THE COURT:  How old are you, sir?

6              THE DEFENDANT:  45.

7              THE COURT:  45?

8              THE DEFENDANT:  45.

9              THE COURT:  How far did you go in school?

10             THE DEFENDANT:  High school.

11             THE COURT:  What was the masters in?

12             THE DEFENDANT:  Special ed.

13             THE COURT:  Where was that?

14             THE DEFENDANT:  Touro College.

15             THE COURT:  I am going to ask you now some questions

16   that may seem personal, and some of these of course have been

17   covered by either proceedings in the case but I need to make a

18   clear record that I am assessing your competence to plead

19   today.  So please forgive me if I am going over an area that we

20   covered before, but I need to do that here today.

21             Have you ever been treated or hospitalized for any

22   mental illness?

23             THE DEFENDANT:  Yes.

24             THE COURT:  Briefly tell me when and where.

25             THE DEFENDANT:  I was diagnosed with PS -- PTSD and

1    anxiety.

2            THE COURT:  How long ago was that approximately?

3            THE DEFENDANT:  2009.

4            THE COURT:  Are you currently being treated for those

5    or any other mental health conditions?

6            THE DEFENDANT:  Yes.

7            THE COURT:  Does the treatment entail the use of my

8    medications?

9            THE DEFENDANT:  Yes.

10           THE COURT:  Do those medications interfere with your

11   ability to understand what is being said to you?

12           THE DEFENDANT:  No.

13           THE COURT:  Do they interfere with your ability to

14   reason?

15           THE DEFENDANT:  No.

16           THE COURT:  Do they interfere with your ability to

17   communicate?

18           THE DEFENDANT:  No.

19           THE COURT:  Other than what we've just covered about

20   mental health, are you now or have you recently been under the

21   care of a doctor or psychiatrist?

22           THE DEFENDANT:  Yes.

23           THE COURT:  Again, other than what we covered for

24   mental health, for what conditions?

25           THE DEFENDANT:  PTSD and anxiety.

1          THE COURT:  Other than for PTSD and anxiety, are you

2     now or have you recently been under the care of a doctor or a

3     psychiatrist?

4          THE DEFENDANT:  Yes.

5          THE COURT:  For what conditions?

6          THE DEFENDANT:  PTSD and anxiety.

7          Oh, yes, diabetes and stuff like that.

8          THE COURT:  Are you on medication for that condition?

9          THE DEFENDANT:  Yes, I am.

10         THE COURT:  Are the same answers you gave as to the

11    medications for PTSD and anxiety, do those same answers apply

12    as to the medications you are on for the other conditions?

13         In other words --

14         THE DEFENDANT:  (Unintelligible).

15         THE COURT:  -- you can reason, listen, understand,

16    with clarity while you are taking those medications?

17         THE DEFENDANT:  Yes.

18         THE COURT:  In the past 24 hours, other than the

19    prescription medications that you referred to -- other than

20    those -- have you taken any drugs, medicine, or pills or drunk

21    new alcoholic beverages?

22         THE DEFENDANT:  No.

23         THE COURT:  Is your mind clear today?

24         THE DEFENDANT:  Yes.

25         THE COURT:  Do you understand what is happening in

1   this proceeding?

2           THE DEFENDANT:  Of course.

3           THE COURT:  Mr. Silverman, you spent a great deal of

4   time with your client.  Do you have any doubt as to your

5   client's competence to plead at this time?

6           MR. SILVERMAN:  No, your Honor.

7           THE COURT:  Ms. Karmigios, I know you have spent a lot

8   of time as the lead prosecutor in this proceeding, do you have

9   any doubt about Mr. Celli's competence to plead at this time?

10          MS. KARMIGIOS:  No, your Honor.

11          THE COURT:  I have had extensive access to Mr. Celli

12  since this matter was reassigned to me.  Among other things, I

13  have reviewed with care the entire history of the case

14  preceding my appointment.  I have presided over numerous

15  conferences.  Some by video.  The most recent ones by phone.  I

16  have also questioned Mr. Celli at length *in camera* in

17  connection with for Faretta hearing that we recently held.  I

18  have reviewed the reports, finding him competent it stand

19  trial.  In particular, I am referring to the report by

20  Dr. Rosenfeld.

21          Based on Mr. Celli's responses today, based on his

22  demeanor today, based on all the materials that I have read and

23  importantly based on counsel's independent assessments of this

24  point, I find that Mr. Celli is competent to enter a plea of

25  guilty at this time.

1          Mr. Celli, have you had a sufficient opportunity to

2   discuss your case with your attorney?

3          THE DEFENDANT:  Yes.

4          THE COURT:  Have you had a sufficient opportunity to

5   discuss the charge to which you intend to plead guilty, any

6   possible defenses to that charge, and the consequences of

7   entering a plea of guilty?

8          THE DEFENDANT:  We discussed but not to my

9   satisfaction, yes.

10          THE COURT:  Would you like more time to speak with Mr.

11   Silverman about those matters?

12          THE DEFENDANT:  No.

13          THE COURT:  I want to just pause because you said not

14   to your satisfaction.  It is important to me that you have had

15   sufficient time with your lawyer to discuss these matters

16   before you enter a plea of guilty.

17          Do you want to take a moment with Mr. Silverman now?

18          THE DEFENDANT:  No.  That's fine. I don't need to.

19          THE COURT:  Mr. Silverman.

20          MR. SILVERMAN:  Can I have one moment, please, your

21   Honor?

22          (Pause)

23          THE DEFENDANT:  I am satisfied.

24          THE COURT:  You're satisfied in fact you have had

25   enough time with Mr. Silverman?

1          THE DEFENDANT:  Yes.

2          THE COURT:  Are you satisfied with Mr. Silverman's

3     representation of you, including in connection with reaching

4     this plea agreement?

5          THE DEFENDANT:  Yes.

6          THE COURT:  I am now going to explain certain

7     constitutional rights that you have.  You'll be giving up these

8     rights if you enter a plea of guilty.  Mr. Celli, what I am

9     going to do is go one by one and ask you a yes-or-no question

10    after each one.

11          Under the Constitution and laws of the United States,

12    you are entitled to a speedy and a public trial by a jury on

13    the charge contained in the indictment.

14          Do you understand that?

15          THE DEFENDANT:  Yes.

16          THE COURT:  At that trial you would be presumed to be

17    innocent.  The government would be required to prove you guilty

18    by competent evidence and beyond a reasonable doubt before you

19    could be found guilty.  You would not have to prove that you

20    were innocent.  A jury of 12 people would have to agree

21    unanimously that you were guilty.

22          Do you understand that?

23          THE DEFENDANT:  Yes.

24          THE COURT:  At that trial and at every stage of your

25    case, you would be entitled to be represented by an attorney.

1    If you could not afford one, one would be appointed to

2    represent you free of charge.

3            Do you understand that?

4            THE DEFENDANT:  I do, your Honor.

5            THE COURT:  During the trial the witnesses for the

6    government would have to come to court and testify in your

7    presence and your lawyer could cross-examine the witnesses for

8    the government, object to the evidence offered by the

9    government, and if you desire issue subpoenas, offer evidence,

10   and compel witnesses to testify on your behalf.

11           Do you understand that?

12           THE DEFENDANT:  I do.

13           THE COURT:  At a trial, although you would have the

14   right to testify if you chose to do so, you'd also have the

15   right not to testify and no inference or suggestion of guilt

16   could be drawn to the fact that you did not testify if that was

17   what you chose to do.

18           Do you understand that?

19           THE DEFENDANT:  Yes.

20           THE COURT:  At trial the government would have to

21   prove each and every part or element of the charge beyond a

22   reasonable doubt for you to be convicted of that charge.

23           Do you understand that?

24           THE DEFENDANT:  Yes.

25           THE COURT:  Do you understand that if you were

1  convicted at a trial, you would then have the right to appeal

2  that verdict?

3  　　　　　　THE DEFENDANT:  Yes.

4  　　　　　　THE COURT:  And on that appeal were you convicted at

5  trial, you would also have to the right to challenge the

6  various pretrial rulings I have made.  For example, as to which

7  evidence will be received at trial and which evidence will be

8  included at trial.

9  　　　　　　Do you understand that?

10  　　　　　　THE DEFENDANT:  Yes.

11  　　　　　　THE COURT:  Even at this time, right now, even as you

12  are in the process of entering this guilty plea, you have the

13  right to change your mind, plead not guilty, and go to trial.

14  　　　　　　Do you understand that?

15  　　　　　　THE DEFENDANT:  I do.

16  　　　　　　THE COURT:  If you plead guilty and I accept your

17  plea, you will give up your right to a trial and the other

18  rights that I have just described.  There will be no trial and

19  I will enter a judgment of guilty and sentence you on the basis

20  of your guilty plea after considering the submissions relating

21  to sentencing that I receive from you and Mr. Silverman and the

22  government as well as a presentence report prepared by the

23  Probation Department.

24  　　　　　　Do you understand that?

25  　　　　　　THE DEFENDANT:  Yes.

1          THE COURT:  If you plead guilty, you'll also have to

2     give up your right not to incriminate yourself because today I

3     will ask you questions about what you did in order to satisfy

4     myself that you are guilty as charged.

5          Do you understand that?

6          THE DEFENDANT:  Yes.

7          THE COURT:  Mr. Celli, have you received a copy of the

8     indictment containing the charge against you?

9          THE DEFENDANT:  It was given to me right now, but I

10    have it somewhere in my house, too.

11         THE COURT:  What is important to me is that you have

12    received it?

13         THE DEFENDANT:  Yes.

14         THE COURT:  Have you read it?

15         THE DEFENDANT:  Of course.

16         THE COURT:  Have you discussed it with Mr. Silverman?

17         THE DEFENDANT:  I discussed it with Mr. Scalavera.

18         THE COURT:  Have you also discussed the indictment

19    with Mr. Silverman?

20         THE DEFENDANT:  Yeah.  To a certain extent, yeah.

21         THE COURT:  Have you discussed it sufficiently with

22    Mr. Silverman that you understand the nature of the charges

23    against you?

24         THE DEFENDANT:  I mean, I discussed it with

25    Mr. Scalavera.  It is what it is.  He just went over it.  I

1  know.

2  THE COURT:  Look, I appreciate it that you've

3  discussed it with others, but for the purposes of today--

4  THE DEFENDANT:  Then, yes.  I discussed it with him.

5  THE COURT:  You've discussed it with Mr. Silverman?

6  THE DEFENDANT:  Yes.

7  THE COURT:  Do you understand that you are charged in

8  the one count in the indictment with violating a statute whose

9  number is 18, United States Code, Section 875(c), which

10  involves the transmittal in interstate or foreign commerce of

11  threats to injure a person of another; do you understand that?

12  THE DEFENDANT:  Yes.

13  THE COURT:  Ms. Karmigios, can you please slowly and

14  distinctly set out the elements of that offense?

15  MS. KARMIGIOS:  Yes, your Honor.

16  The government would have to prove three elements

17  beyond a reasonable doubt:

18  First, that the defendant threatened to injure another

19  person.

20  Second, that the theft was transmitted in interstate

21  commerce.

22  Third, that the defendant transmitted a threat

23  knowingly and intentionally.

24  Additionally the government would have to prove venue

25  in the Eastern District of New York by a preponderance of the

1  evidence.

2      THE COURT:  And in light of the Elonis case, which

3  construed that statute when we discuss the intent that is

4  required, does the government agree that the threat would have

5  to be made with either the purpose of issuing a threat or to

6  acknowledge that the communication could be viewed as a threat?

7      MS. KARMIGIOS:  Yes, your Honor, that's correct.

8      THE COURT:  Mr. Silverman, do you agree with the

9  government's articulation of the elements of that offense as

10  amplified by the Court?

11     MR. SILVERMAN:  Yes, your Honor.

12     THE COURT:  Mr. Celli, did you hear what Ms. Karmigios

13  said in setting out the elements --

14     THE DEFENDANT:  I read the case.

15     THE COURT:  Sorry.

16     Mr. Celli, just because we have a court reporter, you

17  always need to wait until I am done speaking before answering

18  even though I appreciate you likely anticipate correctly where

19  I am going.

20     So just to back up, did you hear what Ms. Karmigios

21  said as to the elements of the offense as amplified by me?

22     THE DEFENDANT:  Yes.

23     THE COURT:  I appreciate you've also done reading in

24  the area; but I will ask you just to focus on a specific

25  question.

1          Do you understand that if you were to go to trial, the

2     government would have to prove all of those elements beyond a

3     reasonable doubt?

4          THE DEFENDANT:  Yes.

5          THE COURT:  Do you understand as well that the

6     government would have to prove venue in the Eastern District of

7     New York, although it would have to prove venue only by a

8     preponderance of the evidence?

9          THE DEFENDANT:  Yes.

10         THE COURT:  I am going to turn now to penalties and

11    the consequences of a guilty plea in this case.

12         Do you understand that the maximum possible penalty

13    for Count One is five years' imprisonment and that Count One

14    does not carry any minimum term of imprisonment?

15         THE DEFENDANT:  Uh-huh, yes.

16         THE COURT:  Sorry.  I just need a yes or no.

17         THE DEFENDANT:  Yes.

18         THE COURT:  The maximum fine for -- I am calling it

19    Count One, but it is really the only count.  The maximum fine

20    for Count One may reach the greatest of $250,000, twice the

21    gross pecuniary gain derived from the offense, or twice the

22    gross pecuniary loss to people other than you as a result of

23    the offense.

24         Do you understand that?

25         THE DEFENDANT:  Yes.

1      THE COURT:  For pleading guilty you may receive up to

2 three years of what is called supervised release.

3      Do you understand that?

4      THE DEFENDANT:  Yes.

5      THE COURT:  Supervised release refers to the period of

6 time after a person is released from prison and in your case

7 that includes the time you had previously served in pretrial

8 custody.  So what I am about to say does not presuppose that I

9 will be sentencing you to additional prison.  I don't want you

10 to take away from what I am about to say any premise one way or

11 another as to that.

12      Supervised release means that you will be subject to

13 monitoring when you are released from prison.  There are terms

14 of supervised release with which a person must comply.  If you

15 don't comply with them, you can be returned to prison without a

16 jury trial for all or part of the term of supervised release

17 imposed by the Court.  Under hose circumstances, you would not

18 be given any credit towards that term for the time you served

19 in prison as a result of your sentence for this crime nor would

20 you necessarily be given any credit towards that term for any

21 time you already spent on postrelease supervision.

22      Do you understand that?

23      THE DEFENDANT:  Yes.

24      THE COURT:  For pleading guilty to this crime, you

25 will be required to pay a mandatory $100 special assessment.

1          Do you understand that?

2          THE DEFENDANT:  Yes.

3          THE COURT:  For pleading guilty to this crime, you may

4     be required to pay restitution to any person injured as a

5     result of your criminal conduct.

6          Do you understand that?

7          THE DEFENDANT:  Yes.

8          THE COURT:  Government, I take it this is not a case

9     in which forfeiture is a relevant concept; correct?

10         MS. KARMIGIOS:  That's correct, your Honor.

11         THE COURT:  Mr. Celli, do you also understand that if

12    I accept your guilty plea and adjudge you guilty that may

13    deprive you of valuable civil rights such as the right to vote,

14    the right to hold public office, the right to serve on a jury,

15    and the right to possess any kind of firearm?

16         THE DEFENDANT:  Yes.

17         THE COURT:  Are you a United States citizen?

18         THE DEFENDANT:  Yes, I am.

19         THE COURT:  Under current law there are sentencing

20    guidelines as well as other factors set forth in the sentencing

21    statutes that judges are required to consider in determining

22    what a just and reasonable sentence is.

23         Do you understand that?

24         THE DEFENDANT:  I do.

25         THE COURT:  Have you spoken with Mr. Silverman about

1    the sentencing guidelines and those other factors?

2                    THE DEFENDANT:  I did.

3                    THE COURT:  Do you understand that I will not be able

4    to determine the guideline range that will form one part of my

5    determination of what a reasonable sentence will be in your

6    case until after a presentence report has been prepared and

7    until after you and your attorney and the government have all

8    had an opportunity to challenge any of the facts contained in

9    that report?

10                   THE DEFENDANT:  Yes.

11                   THE COURT:  Do you understand that even though the

12   government has represented in the plea agreement that it

13   presently calculates the sentencing guidelines to recommend a

14   sentence of between 24 and 30 months' imprisonment provided you

15   plead guilty on or before May 12th, 2021, that calculation of

16   the guidelines range is not binding on the Probation Department

17   and it is not binding upon the Court.

18                   Do you understand that?

19                   THE DEFENDANT:  I do.

20                   THE COURT:  Do you understand that even after the

21   Court has determined what guideline range applies to your case,

22   the Court has the discretion under the current law to impose a

23   sentence that is higher or lower than the one recommended by

24   the sentencing guidelines?

25                   THE DEFENDANT:  I do.

1       THE COURT:  Do you understand that even though the

2   government has agreed in the plea agreement not to impose the

3   defendant's request for a sentence of time-served with a

4   two-year term of supervised release under certain specified

5   conditions, the Court is not bound by that agreement?

6       THE DEFENDANT:  Yes, I do.

7       THE COURT:  In other words, I will consider carefully

8   and with great respect the parties' submissions and the

9   government's decision not to oppose a sentence of time-served;

10   but in the end the Court is not bound by the government's

11   position with respect to sentencing.

12       Do you understand that?

13       THE DEFENDANT:  I do.

14       THE COURT:  Do you understand that if your attorney or

15   anyone else has attempted to predict what your sentence will

16   be, their prediction could be wrong.  No one -- not your

17   attorney, not the government's attorney -- no one can give you

18   any assurance of what your sentence will be --

19       THE DEFENDANT:  I --

20       THE COURT:  Just one moment.

21       -- because I am going to decide your sentence.  And I

22   am not going to that now and I really can't do that now.

23   Instead, I have to wait.  I have to wait until I receive the

24   presentence report that is prepared by the Probation

25   Department.  I am going to wait until I receive what I know

1  will be a very thoughtful sentencing submissions from the

2  defense and from the government.  I am going to study those

3  materials very carefully.

4        Most of all, Mr. Celli, I am going to determine what a

5  just and reasonable sentence is for you based on all of the

6  factors contained in the sentencing statute, which is known as

7  Section 3553(a).

8        Do you understand all that?

9        THE DEFENDANT:  Yes.  It is up to your discretion.

10        THE COURT:  But you understand what I have just said?

11        THE DEFENDANT:  Yes.

12        THE COURT:  Have you discussed these issues and the

13  overall sentencing process with Mr. Silverman?

14        THE DEFENDANT:  Yes.

15        THE COURT:  Even if your sentence is different from

16  what your attorney or anyone else has told you it might be,

17  even if it is different from what you expect, even if it is

18  different from the guideline range that is calculated in the

19  plea agreement that you have with the government, or the

20  time-served recommendation that is reflected as the defense

21  recommendation in the plea agreement, even if it is different

22  from any or all of those things, you would still be bound by

23  your guilty plea and you would not be allowed to withdraw your

24  plea of guilty.

25        Do you understand that?

1          THE DEFENDANT:  I knew that, yes.

2          THE COURT:  Sorry.  I didn't hear.

3          THE DEFENDANT:  I knew that already, yes.

4          THE COURT:  Very good.

5          Has anyone threatened you or anyone else or forced you

6     in any way to plead guilty?

7          THE DEFENDANT:  Not physically, no.  No.

8          THE COURT:  Sorry.  I want to make sure.

9          THE DEFENDANT:  No.

10          THE COURT:  You orally indicated there had been a plea

11     agreement entered into between you and your counsel and counsel

12     for the government.  I am going to turn to that now.  I am

13     looking at Government Exhibit 1.

14          Ms. Karmigios, I see on page 7 what appear to be your

15     signatures and the signature of Nadia Jihada, a supervising

16     assistant United States attorney.

17          Are those your respective signatures?

18          MS. KARMIGIOS:  Yes.

19          THE COURT:  I would note that there is no date filled

20     in here on the agreement, but I take it I am at liberty to put

21     in today's date?

22          MS. KARMIGIOS:  Yes, your Honor.  Thank you.

23          THE COURT:  Mr. Silverman, I see here what appears to

24     be your signature.

25          Is that indeed your signature of today?

1          MR. SILVERMAN:  Yes, your Honor.

2          THE COURT:  Mr. Celli, I see hear what appears to be

3   your signature.

4          Is that your signature --

5          THE DEFENDANT:  Yes, it is, your Honor.

6          THE COURT:  -- signed today?

7          Mr. Celli, did you read this agreement before you

8   signed it?

9          THE DEFENDANT:  I did read it.

10          THE COURT:  Did you discuss it with your attorney

11   before you signed it?

12          THE DEFENDANT:  I did and I discussed it with my

13   brother and my family, yes.

14          THE COURT:  Wonderful.

15          Did you believe you understood the agreement at the

16   time you signed it

17          THE DEFENDANT:  Of course.

18          THE COURT:  Did you willingly sign this agreement?

19          THE DEFENDANT:  Yes.

20          THE COURT:  Did anyone force you to sign it?

21          THE DEFENDANT:  No.

22          THE COURT:  Do you have any agreement with the

23   government about your plea or your sentence that has been

24   omitted, that has been left out of this written agreement?

25          THE DEFENDANT:  No.

1          THE COURT:  Ms. Karmigios, would you kindly summarize

2     the material terms of the plea agreement.  Again, slowly and

3     distinctly for the benefit of everybody.

4          MS. KARMIGIOS:  Yes, your Honor.

5          This is an 11(c)(1)(B) plea agreement as you have

6     noted throughout the proceedings today.  The defendant has

7     agreed to plead guilty to the sole count of the indictment,

8     which charges the transmission of interstate threats to injure

9     Jane Doe and John Doe, whose identities were known to the grand

10    jury and are known to the defendant on or about November 12th,

11    2018.  The agreement, as you also noted, sets forth the

12    government's guidelines calculation, which is 24 to 30 months

13    of imprisonment with a three-level reduction for acceptance of

14    responsibility.  That is based on a total adjusted offense

15    level of 17 and a criminal history category of one.

16          Pursuant to Fed. R. Crim. P. 11(c)(1)(B), the

17    government has agreed not to appose the defendant's request for

18    a time-served sentence of imprisonment and two years of

19    supervised release with all of the standard conditions of

20    release and the special conditions identified in paragraphs 2 A

21    through 2 H.  The defendant in turn agrees that he will not

22    have the right to withdraw the plea if the Court imposes a

23    different sentence of imprisonment, a different term of

24    supervised release, or different conditions of supervised

25    release.

1          The defendant also agrees that he will not be entitled

2     to withdraw his plea if the guidelines calculation determined

3     by the Court is different than those that I have laid out.

4          Finally, the defendant agrees not to file an appeal or

5     otherwise challenge his conviction or sentence in the event the

6     Court imposes a term of imprisonment of 33 months or below.

7          THE COURT:  Thank you, Ms. Karmigios.

8          Mr. Silverman, are you in agreement with the

9     government's summary of the terms that government counsel

10    addressed?

11         MR. SILVERMAN:  Yes, your Honor.

12         THE COURT:  Mr. Celli, did you hear and understand Ms.

13    Karmigios as she set out those terms?

14         THE DEFENDANT:  Yes.

15         THE COURT:  A couple of items here that I just want to

16    draw your attention to.  As the prosecutor just stated, the

17    government takes the position that the guidelines call for a

18    term of imprisonment of between 24 and 30 months' imprisonment.

19    Again just to reinforce, do you understand that that position

20    by the government does not bind the Court; I have to make my

21    own calculation of how the guidelines apply?

22         THE DEFENDANT:  Yes.

23         THE COURT:  Do you understand that under the agreement

24    you are giving up your right appeal or otherwise challenge your

25    sentence so long as I don't sentence you to more than 33 months

1    in prison?

2            THE DEFENDANT:  Yes.

3            THE COURT:  Has anyone made any promise or done

4    anything other than what is contained in the plea agreement to

5    induce you to plead guilty?

6            THE DEFENDANT:  No.

7            THE COURT:  Has anyone made a promise to you as to

8    what your sentence will be?

9            THE DEFENDANT:  No.

10           THE COURT:  Do you still wish to plead guilty pursuant

11   to this agreement?

12           THE DEFENDANT:  Yes.

13           THE COURT:  Mr. Celli, we're now up to that point

14   where I am about to ask you to tell me in your own words what

15   it is that you did that makes you believe you are guilty of the

16   one charge in the indictment.

17           Before I ask you that let me ask Mr. Silverman whether

18   Mr. Celli will be consulting a writing as he answers that

19   questions?

20           MR. SILVERMAN:  He will be, your Honor.

21           THE COURT:  That is more than fine.

22           Mr. Celli, I just need to confirm with you before you

23   start to speak that you have already reviewed what is written

24   in front of you and that you're confident that everything in

25   there is accurate?

1        THE DEFENDANT:  For the most part, yes.

2        THE COURT:  Would you take a moment with Mr.

3   Silverman --

4        THE DEFENDANT:  Yes.  Yes.

5        THE COURT:  One moment.

6        I need to make sure that it is not "for the most

7   part," but that in its entirety everything you are going to say

8   to me is truthful and accurate.  You are under oath.  I need to

9   make sure that if you are going to be reading from a document,

10  what is written there is something that you are confident is

11  true.

12       (Pause)

13       THE DEFENDANT:  I don't remember this email so...

14       THE COURT:  Take a moment, Mr. Silverman.

15       (Pause)

16       MR. SILVERMAN:  We're ready to proceed, your Honor.

17  Thank you.

18       THE COURT:  Mr. Celli, I just want to make sure is

19  everything you are about to read from as you answer the

20  question I just put to you, are you confident it is all

21  accurate?

22       THE DEFENDANT:  Yes.

23       THE COURT:  So then the question to you is:  Tell me

24  in your own words what you did that makes you believe you are

25  guilty of the charge in the indictment.

1     I will ask you to speak slowly and distinctly for the

2 benefit of the court reporter.

3     THE DEFENDANT:  On November 12th, 2018, emailed

4 people, including two judges in the Eastern District of New

5 York, an email stating --

6     THE COURT:  Mr. Celli, you are doing great.  Slow it

7 down a little more.  I think the last word that the court

8 reporter got down is "Eastern District of New York."

9     THE DEFENDANT:  I apologize.

10     THE COURT:  Nothing to apologize for.

11     Go ahead.

12     THE DEFENDANT:  *Katzmann, Steward, if I hurt anyone,*

13 *it is on you because you want to cover up their crimes.*

14 *Meaning* (unintelligible).  *I promise that I kill them if you*

15 *don't address the crimes against me, motherfuckers.*

16     I intended that they would -- they were -- oh, sorry.

17     I intended that they would be frightened and alarmed

18 so I can get an answer.  I knew this was wrong.

19     THE COURT:  All right.  Thank you, Mr. Celli.

20     Let me confirm with the court reporter that you were

21 able to take down all the words used by Mr. Celli?

22     OFFICIAL REPORTER:  I didn't get the words before *I*

23 *promise that*, your Honor.

24     THE COURT:  Mr. Silverman, could you just reorient

25 Mr. Celli to that point in the allocution?

1        THE DEFENDANT:  It says, *I intended*.

2        MR. SILVERMAN:  If I may, your Honor.  There was a

3   deviation from the content of the email where Mr. Celli

4   explained that what he meant by *their crimes* what was he was

5   referring to Judge Cogan and Judge Brodie.

6        THE COURT:  Is that correct, Mr. Celli?

7        THE DEFENDANT:  Yes, it is.

8        THE COURT:  Very helpful.

9        Mr. Celli, I just need to follow up with just a couple

10  questions.

11       The email was sent to two judges who sit in the

12  Eastern District of New York; is that correct?

13       THE DEFENDANT:  They were sent to many judges.

14       THE COURT:  Right.  The judges in question sit in the

15  Eastern District of New York, correct, Judges Brodie and --

16       THE DEFENDANT:  Yes.  And also Katzmann and Stewart.

17       THE COURT:  You understand that some of the recipients

18  of your email are judges in the Eastern District of New York;

19  is that correct?

20       THE WITNESS:  And the Court of Appeals.

21       THE COURT:  Very good.

22       When you sent the email, you said that you intended

23  that they would be frightened and alarmed so that you would get

24  an answer; correct?

25       THE DEFENDANT:  Yes.

1          THE COURT:  You understood therefore that your

2    communication would be perceived by the recipients as a threat;

3    correct?

4          THE DEFENDANT:  Yes.

5          THE COURT:  When you did these acts, did you know that

6    what you were doing was wrong?

7          THE DEFENDANT:  No.

8          Well, yeah.

9          There's a --

10          THE COURT:  Why don't you take a moment with Mr.

11    Silverman.

12          (Pause)

13          THE DEFENDANT:  So this is actually the truth.  I was

14    warned not to email judges and I continued.

15          THE COURT:  You understood that it was wrong to email

16    those threats to the judges?

17          THE DEFENDANT:  Yes.

18          THE COURT:  Did you understand that by emailing a

19    threat to injure the persons of those judges, you were

20    committing a crime?

21          THE DEFENDANT:  Yes.

22          THE COURT:  Does government counsel agree that there

23    is a sufficient factual predicate for a guilty plea?

24          MS. KARMIGIOS:  Your Honor, there are three additional

25    emails that are charged in this case that I am prepared to

1    proffer details about, and I believe that the defendant is

2    willing to stipulate to sending if we may.

3         THE COURT:  I am happy for you to do that, but just

4    before you do, you agree that even without those emails what

5    Mr. Celli has stated in open court under oath now supplies a

6    sufficient factual predicate for a guilty plea?

7         MS. KARMIGIOS:  Yes, your Honor, with the added piece

8    that the government would introduce evidence that the email was

9    transmitted through a server that is located outside the state

10   of New York, and I believe that the defense would also

11   stipulate to that.

12        THE COURT:  Mr. Silverman, is that factually correct?

13        MR. SILVERMAN:  Yes, your Honor, we so stipulate.

14        THE COURT:  And, Mr. Celli, is that correct?

15        THE DEFENDANT:  Yes.

16        THE COURT:  Go ahead, Ms. Karmigios.  I am happy for

17   you to amplify the record.

18        MS. KARMIGIOS:  As I noted, there are three additional

19   emails charged in this case other than the one that the

20   defendant just allocuted to.  The first was sent on

21   November 12th, 2018, from the email address ENVO0MAD@AOL.com.

22   It was at approximately 6:56 p.m. and it starts with the words,

23   *Brodie and Cogan, you* -- expletive that I won't say.

24        The second email --

25        THE COURT:  Ms. Karmigios, given the nature of the

1   case, you have dispensation to state the expletive.  It is
2   relevant context here and I'd rather the record be complete.
3           MS. KARMIGIOS:  Thank you, your Honor.
4           It states, *Brodie and Cogan, you motherfuckers*, and
5   continues on.  would your Honor, like me to read the entirety?
6           THE COURT:  Yes.
7           MS. KARMIGIOS:  *You sent the U.S. Marshals and they*
8   *threatened my DUI case.  Fraud upon the Court.  I spent all*
9   *night reading, but I can't file in court like a normal person.*
10  *I have to fuck stab you to get justice.*
11          The second email was sent on November 12th, 2018, from
12  the same email address at approximately 7:00 p.m.  That one
13  read, *Katzmann and Steward, either you deal with the U.S.*
14  *Marshal threat from Brodie and Cogan, or I hunt them down and*
15  *kill them.  Because they want to act like the mafia, they have*
16  *to die like the mafia.*
17          The third email was sent also on November 12th, 2018,
18  from the same email address at approximately 7:07 a.m.  It
19  read, *Katzmann and Steward, you both are fucking provoking me*
20  *by not answering.  They sent and carried out their threat and*
21  *now either you deal with it or I kill them.*
22          THE COURT:  Thank you, Ms. Karmigios.
23          Mr. Silverman, factually is it disputed that those
24  emails were sent by your client?
25          MR. SILVERMAN:  No, your Honor.

1          THE COURT:  Mr. Celli, same answer?

2          THE DEFENDANT:  Yes.

3          THE COURT:  When you sent those additional emails, did

4    you have the same intention and state of mind that you

5    testified to a moment ago as to the email you addressed?

6          THE DEFENDANT:  Yes.

7          THE COURT:  Mr. Silverman, do you agree that there is

8    a sufficient factual predicate for a guilty plea?

9          MR. SILVERMAN:  Yes, your Honor.

10          THE COURT:  Mr. Silverman, do you know of any valid

11    defense that would prevail at trial or any reason why your

12    client should not be permitted to plead guilty?

13          MR. SILVERMAN:  No, your Honor.

14          THE COURT:  Mr. Celli, are you pleading guilty

15    voluntarily and of your own free will and because you are in

16    fact guilty?

17          THE DEFENDANT:  Yes.

18          THE COURT:  Can government counsel represent that had

19    the case gone to trial, it had sufficient evidence of each

20    element to establish a conviction?

21          MS. KARMIGIOS:  Yes, your Honor.

22          THE COURT:  Mr. Celli, because you acknowledge that

23    you are in fact guilty as charged in the indictment, because I

24    am satisfied that you know of your rights including your right

25    to go to trial, because I am satisfied that you are aware of

the consequences of your plea including the sentence that may

be imposed, and because I find that you are voluntarily

pleading guilty, I accept your guilty plea and enter a judgment

of guilty on the one count to which you have pled.

Now, Mr. Celli, the next phase of your case is going

to involve the sentencing process and I want you to listen

closely and attentively to what I am about to say. The

Probation Department is going to want to interview you in

connection with the presentence report that it will prepare.

If you choose to speak with the Probation Department, please

make sure that anything you say to them is truthful and

accurate. That is because I read those reports carefully.

Along with the sentencing submissions that I receive from the

parties, they are important to me. They help form my judgment

about what a reasonable and just sentence is in a particular

case. You and your counsel have the right to examine the

report and to comment on it at the time of sentencing. I urge

you to read it carefully and to discuss it with Mr. Silverman

before sentencing. If there are any mistakes in the report,

please point them out to Mr. Silverman so that he can bring

them to my attention before sentencing.

Will you agree to do that?

THE DEFENDANT: Yes.

THE COURT: More broadly, please work closely and

collaboratively with Mr. Silverman during the sentencing

1　process.  I am well aware that this is a complicated case and I

2　am very much mindful of your journey and the challenges that

3　you have faced.  I am very eager and interested in learning

4　about you and understanding the context not just about the

5　threats that we just talked about but your life that proceeds

6　it.  That is a great interest to me and I will be enormously

7　benefited by your working closely with Mr. Silverman so that he

8　can help develop that context for me.

9　　　　　　Will you agree to do that?

10　　　　　THE DEFENDANT:  Yes.

11　　　　　THE COURT:  Mr. Silverman, I take it under the

12　circumstances with your client not being in custody and there

13　being a pandemic afoot in the land, this is not a case in which

14　you are seeking an expedited sentence; correct?

15　　　　　MR. SILVERMAN:  I am not, your Honor.

16　　　　　THE COURT:  Counsel, how about Tuesday, August 17th at

17　10:30 for sentencing?

18　　　　　MS. KARMIGIOS:  That's fine for the government, your

19　Honor.

20　　　　　MR. SILVERMAN:  That's fine for the defense, your

21　Honor, with the caveat that I may -- though, it is not

22　confirmed -- have a trial before Judge Caproni that week.  So I

23　am happy to schedule it, but if I need to request a short

24　adjournment --

25　　　　　THE COURT:  Well, if you request a short adjournment,

1    it will be granted but I would ask you to let us know as soon

2    as possible just for everybody's scheduling needs.  So as soon

3    as you have a sense.

4            Look, the other thing we can do is simply right now do

5    a week later.  There is no harm in doing that.  Would that

6    precure that problem?

7            MR. SILVERMAN:  Your Honor, if the trial is scheduled

8    that week -- your Honor may know better than I how the district

9    is scheduling trials at the moment -- that would make my

10   sentencing submission due mid trial.  So I would request that

11   it be the week after Labor Day if at all possible or the week

12   of August 30th.

13           THE COURT:  Why don't we put it down for the week of

14   August 30th.

15           Mr. Smallman.

16           How about Thursday, September 2 at 10:30?

17           Government, does that work for you?

18           MS. KARMIGIOS:  Your Honor, with apologies.  I am

19   supposed to be out of the city that day.

20           THE COURT:  Why don't we do this:  Mr. Silverman,

21   let's go back to August 17th.  Hopefully that will work.  If

22   there is a conflict, you will promptly move for an adjournment

23   and I will grant it.

24           MR. SILVERMAN:  Thank you, your Honor.

25           THE COURT:  Tuesday, August 17th at 10:30.

1        Mr. Karmigios, I am of course not going to schedule

2   this at a time that presents a personal inconvenience.  You can

3   rest assured that if I need to move it, I am not going to move

4   it at a time that you are unavailable.

5        MS. KARMIGIOS:  I appreciate that, your Honor.

6        THE COURT:  As to sentencing, Mr. Silverman, you must

7   arrange for your client to be interviewed if he is going to be

8   interviewed by the Probation Department within the next two

9   weeks.  I strongly encourage defense counsel to be present.

10       And, Mr. Silverman, I take it you are requesting to be

11  present?

12       MR. SILVERMAN:  Yes, your Honor.

13       THE COURT:  Government, you should provide your case

14  summary to the Probation Department again within the next two

15  weeks.

16       MS. KARMIGIOS:  Yes, your Honor.

17       THE COURT:  In connection with sentencing, defense

18  submissions are due two weeks before sentencing and the

19  government's submission is due one week beforehand.  There are

20  procedures that the Court has for the filing of sentencing

21  submission.  I am mindful of this case there may be medical or

22  mental health dimensions to the filings that are properly

23  redacted, and I of course authorize matters like that to be

24  filed with the discrete items that are properly redacted.

25       So, Mr. Silverman, you don't need to seek leave for

1    that; but I do expect you to carefully tailor any redactions to

2    only that which are properly redacted.

3            MR. SILVERMAN:  Understood, your Honor.

4            THE COURT:  Ms. Karmigios, I need to ask about the

5    defendant's bail status.  Is there any objection to Mr. Celli's

6    present bond being continued up through the date of sentence?

7            MS. KARMIGIOS:  No, your Honor.

8            THE COURT:  Mr. Celli, do you understand that all of

9    the conditions under which you have been released up until now

10    continue to apply and that a violation of any of those

11    sentences can have very serious consequences for you at the

12    time of sentencing?

13            THE DEFENDANT:  Yes.

14            THE COURT:  Look, to state the obvious the period

15    between now and sentencing is an important one for you.  I will

16    be eager to understand how you have conducted yourself during

17    that period.  It is very, very much in your interest to --

18            THE DEFENDANT:  Behave.

19            THE COURT:  -- punctiliously comply with all the

20    conditions of release between now and sentencing.

21            Do you understand that?

22            THE DEFENDANT:  Yes.

23            Yes, your Honor.

24            THE COURT:  You must be in my courtroom -- in a moment

25    I will discuss where that will be -- that is set for sentencing

1   at the time and date that I have set or you will be guilty of a

2   separate crime known as bail jumping and subject to a fine

3   and/or a prison term in addition to whatever sentence you

4   receive for the crime that you have just pled guilty to.

5           Do you understand?

6           THE DEFENDANT:  Yes.

7           THE COURT:  Now, as to that, Mr. Silverman, again

8   Mr. Celli has the right to have the sentencing proceed in the

9   Eastern District of York, but it may be something that you want

10  to confer with your client about.

11          THE DEFENDANT:  It can be here.

12          THE COURT:  There you go.

13          Mr. Silverman, we might as well address that well.

14  Are you comfortable agreeing to have the sentencing occur in

15  this district as the plea did?

16          MR. SILVERMAN:  Yes, we consent, your Honor.

17          THE COURT:  Mr. Celli, is that correct?

18          THE DEFENDANT:  Yes.

19          THE COURT:  Government, do you also consent?

20          MS. KARMIGIOS:  Yes, your Honor.

21          THE COURT:  Look, Mr. Silverman, in the event

22  Mr. Celli wishes to withdraw his consent to that in the Eastern

23  District, I am not in any way precluding an application along

24  those lines; but if there is silence on that point, I am going

25  to take his consent as durable.  Meaning, we'll hold the

1  sentencing in this courtroom.

2          MR. SILVERMAN:  We understand.  Thank you, your Honor.

3          THE COURT:  Very good.

4          Anything further from the government?

5          MS. KARMIGIOS:  No, your Honor.

6          THE COURT:  Anything further from the defense?

7          MR. SILVERMAN:  No, your Honor.  Thank you for

8  scheduling this.

9          THE COURT:  Let me take a moment to commend everybody

10  here.  I want to commend counsel for the thoughtful process

11  that resulted in this agreement and for the high quality

12  advocacy that I have been privileged to received in writing and

13  orally during the months beforehand.

14          Mr. Celli, I want to commend you.  It has been obvious

15  to me, in particular in the last several proceedings, how

16  focused and attentive you have been and how much you are

17  endeavoring to follow the rules here and consult in good faith

18  with your lawyer in your best interest.

19          THE DEFENDANT:  Thank you, your Honor.

20          THE COURT:  I am very happy to see that the

21  constructive way in which you are engaging with your counsel in

22  this process.

23          THE DEFENDANT:  Thank you, your Honor.

24          THE COURT:  To your mother I want to wish you well and

25  thank you for being here.

1          With that we stand adjourned.  Be well, everyone

2                          o0o