# CASE NO. 19-cr-127

# UNITED STATES COURT for
## EASTERN DISTRICT OF NEW YORK

Lucio Celli, Plaintiff, v. USA, Defendants.

Brief To Support Engelmayer's Order was an Overreach in my 3020a

Federalism is at the core of this brief and support my Habeas Corps petition

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................1

STATEMENT OF ISSUES .................................................................................................1

STATEMENT OF CASE ..................................................................................................12

SUMMARY OF ARGUMENT ...........................................................................................1

ARGUMENT .......................................................................................................................1

CONCLUSION ....................................................................................................................2

STATEMENT REGARDING ORAL ARGUMENT ..........................................................2

# TABLE OF AUTHORITIES

## Cases

- Pell v. Board of Education, 34 N.Y.2d (p. 5)
- Leslie Block Kaye v. Marc E. Grossman, Laura Anne Grossman, 202 F.3d 611 (2d Cir. Feb. 2000) (p. 9)
- Bridgestone/Firestone, Inc. v. Recovery Credit Services, Inc., Revenue Recovery, Inc. and George Beladino, 98 F.3d 13 (2d Cir. Oct. 1996) (p. 12)
- Cleveland Bd. of Educ. v. Loudermill (p. 20)

## Statutes

- N.Y. Educ. Law § 3020-a (Disciplinary Procedures and Penalties) (p. 6)

## Rules and Regulations

- Federal Register Rule at 85 FR 84229 (Approval of Civil Consent Decrees with State and Local Governmental Entities) (p. 23)

## Statement of Issue

There is an ongoing suppression of Engelmayer's orders that conceals the criminal conduct of Randi Weingarten, the UFT and Judge Cogan. It is truly disturbing that Randi Weingarten is allowed to commit any crime against me and the court has ignored the facts with Lehrburger intentionally misusing his office for a quid pro quo with Chief Livingston, as Judge Rearden rewrote the other found and this is exactly what Judge Lehrburger.

With Judge Cronan commenting on May 28, 2025 that "my claims have been frivolous."

**Safir v. United States Lines Inc., 792 F.2d 19 (2d Cir. 1986)**

"The court must not impose restrictions without first making a determination that a litigant has **abused the judicial process** and that the restriction is **narrowly tailored to address that abuse**."

"[Filing injunctions] should not bar access to courts for those who **have not abused the system** or **who possess legitimate claims**."

This has not happened, as Judge Cronan knows that I am entitled to my wages stolen by Judge Cogan for Randi Weingarten and the UFT.

2

# Argument
## Engelmayer's order prohibiting communication with the DOE and NYSED during the 3020a process deprived the Plaintiff of property and liberty interests without appropriate process, as defined in Cleveland Bd. of Educ. v. Loudermill, due to the lack of a pretermination hearing and the misrepresentation of probation terms by AUSA Bensing.[1]

Engelmayer's order effectively acted as an injunction on the Plaintiff's ability to communicate with the DOE and NYSED, which is a critical component of the 3020a process (Disciplinary Procedures and Penalties). This prohibition deprived the Defendant of the opportunity to engage in a meaningful defense, thereby violating the due process rights established in Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532 (1985). In Loudermill, the Supreme Court held that public employees with a property interest in their employment are entitled to a pretermination hearing. By preventing communication, Engelmayer's order denied the Plaintiff this fundamental right.

The misrepresentation of probation terms by AUSA Bensing further exacerbates the due process violation. AUSA Bensing's actions were intended to prevent the creation of a record of events that—everyone knew, like Engelmayer and Livingston— Weingarten and Cogan were interfering in my criminal case, which is crucial for the Defendant to establish a legitimate claim of entitlement to continued employment. This misrepresentation directly undermines the Plaintiff's ability to assert his property interest, as recognized in Board of Regents of State Colleges v. Roth, where a nontenured

---

[1] At the behest of AUSA Pearce, who was a Schumer operative for him and Randi Weingartne

3

public employee does not have a constitutional right to a hearing unless they have a legitimate claim of entitlement. Board of Regents of State Colleges v. Roth, 408 U.S. 564, 92 S. Ct. 2701, 33 L. Ed. 2d 548 (Jun. 1972).

Furthermore, the interference by Randi Weingarten and Judge Cogan, which influenced the actions of the attorney Silverman, adds another layer of due process violation. Silverman's admission of not fulfilling his duties due to their influence indicates a breach of the Plaintiff's right to a fair and impartial process—fair trial in criminal proceedings. This interference is akin to the stigmatizing charges discussed in Linda Donato v. Plainview-Old Bethpage Central School District, where an employee is entitled to a name-clearing hearing if their professional reputation is damaged. Lastly, Silverman did not docket my motions for structural errors –which Judge Copper acknowledged Linda Donato v. Plainview-Old Bethpage Central School District Edward Metzendorf, 96 F.3d 623, 12 I.E.R. Cas. (BNA) 104 (2d Cir. Sep. 1996).

The Federal Register rule published at 85 FR 84229 emphasizes the need for heightened scrutiny and leadership approval when federal court decrees impose broad, ongoing responsibilities on state or local governments. Federal Register. Engelmayer's order, by prohibiting communication, imposed such responsibilities without the necessary scrutiny, raising sensitive federalism concerns. This lack of scrutiny and oversight further supports the argument that the Plaintiff''s due process rights were violated.

In conclusion, Engelmayer's order, combined with AUSA Bensing's misrepresentation and the undue influence on Silverman, deprived the Plaintiff' of both

property and liberty interests without the appropriate process. The lack of a pretermination hearing left me at only notice and was a violation of what was required by Loudermill, and the failure to provide a name-clearing hearing, as discussed in Donato (Linda Donato v. Plainview-Old Bethpage Central School District Edward Metzendorf, 96 F.3d.), constitutes clear violations of the Plaintiff''s due process rights. Therefore, the order should be deemed unlawful and the Plaintiff''s rights restored.

### Engelmayer's order violated the Plaintiff's due process rights by exceeding the permissible scope of federal intervention into state affairs, given the federalism concerns and lack of compelling justification for such intervention.

Engelmayer's order, which restricted my communication with the Department of Education (DOE) and the New York State Education Department (NYSED) during the 3020a process, raises significant federalism concerns as outlined in the Federal Register rule at 85 FR 84229.

In evaluating whether Engelmayer's order violated the Plaintiff's due process rights, the court would likely consider the principles established in Board of Regent, and Cleveland Bd. of Educ. These cases underscore the importance of due process for public employees, which includes the right to a fair hearing and the opportunity to communicate relevant information. By prohibiting communication with DOE and NYSED, the order may have deprived the Defendant of a legitimate claim of entitlement to manage its obligations without undue federal interference.

Furthermore, the court would assess whether the order exceeded the permissible scope of federal intervention into state affairs. U.S. Const. amend. XIV, § 1. The balance

5

between federal authority and state sovereignty is crucial, and any federal action that disrupts this balance must be justified by a compelling federal interest. Due Process Clause of the Fourteenth Amendment. **In this case**, the order's impact on the state's administrative processes and obligations with DOE could be seen as an overreach, lacking sufficient justification to warrant such federal intervention. Board of Regents of State Colleges v. Roth, 408 U.S.

Given the precedent set by Burkybile v. Board of Education, where state administrative fact-finding is given preclusive effect in federal actions, the court may also consider whether the 3020a process provided a full and fair opportunity to litigate the issues at hand. Burkybile v. Board of Education, 411 F.3d 306, 23 I.E.R. Cas. (BNA) 52 (2d Cir. Jun. 2005). The process was inadequate, **therefore**, further federal intervention is deemed necessary. As a direct result, supporting the argument that Engelmayer's order violated due process rights by exceeding the permissible scope of federal intervention. Disciplinary Procedures and Penalties.

**Causation: Engelmayer's Order as Retaliatory Adverse Action—and to continue his conspiracy with her**

Engelmayer's directive barring all communication with the DOE and NYSED during the § 3020-a process constitutes a classic adverse action that would not have been imposed but for AUSA Bensing's protected speech—and, notably, her failure to perform her prosecutorial duties. By silencing my ability to raise concerns with the very agencies

6

responsible for investigating and remedying employment grievances, the order directly impeded my First Amendment rights.

1. **Adverse Action:**

   The prohibition was far more than a routine case-management measure; it was a substantive gag order on **my efforts to address public-interest issues** within the DOE's disciplinary framework and **within US Courts giving Randi Weingarten and the UFT special privileges that no other America has**. Preventing such communications deprived me of meaningful participation in a matter of public concern—namely, the integrity of the teacher-discipline and probation procedures or how Weingarten with the help of Schumer's judicial soldiers that deprived me of every single right. This meets the adverse-action threshold under *Connick v. Myers*, 461 U.S. 138 (1983), where restrictions on speech about the conduct of public institutions were held actionable.

2. **Protected Speech and Pickering Balance:**

3. My own communications—criticizing political influence over probation decisions and advocating for transparency in the 3020-a process—fall squarely within the protection of *Pickering v. Board of Education*, 391 U.S. 563 (1968). There is no evidence that my remarks were knowingly or recklessly false. In contrast, AUSA Bensing's misstatements concerning probation terms—conduct she was duty-bound to verify—were neither part of her official prosecutorial obligations nor essential to any pending litigation. First Amendment protection under *Garcetti v. Ceballos*, 547 U.S. 410 (2006).

7

4. **But-For Causation:** the timing and tailoring of Engelmayer's order—imposed immediately after Bensing's failure to fulfill her obligations and her attempt to suppress a public record of events—establish a causal nexus. Had Bensing performed her role properly, no purported need for an injunction against me would have arisen. Courts have long recognized that linking an adverse employment decision to prior protected activity satisfies the causation element of a § 1983 retaliation claim. See *Hartman v. Moore*, 547 U.S. 250, 256–57 (2006).

5. **Context and External Influence:** the order's genesis, influenced by outside actors such as Randi Weingarten and Judge Cogan—who sought to shield their own political interests—confirms its retaliatory character. Attorney Silverman's admission that he neglected his duties under their direction further illustrates the conspiratorial backdrop against my protected speech.

6. **Federalism Concerns:**
Finally, enforcing such a broad, long-term communication ban on state and local entities without the requisite high-level approvals violates principles of federalism outlined in the Federal Register rule governing civil-consent decrees. This overreach underscores the substantive irregularity of Engelmayer's order and its use as a tool of retaliation rather than legitimate case control.

7. **Conclusion:** Engelmayer's order is a non-ministerial, adverse action, imposed in direct response to my protected speech. It silenced my core First Amendment activities, and but for Bensing's dereliction and attempted suppression of record,

8

the order never would have been issued. This satisfies the causation prong of a retaliation claim under § 1983, in violation of the First Amendment.

## Engelmayer's order, by restricting communication with the Department of Education and New York State Education Department during the 3020a process, deprived the Plaintiff' of property or liberty interests without due process, violating constitutional rights under 42 U.S.C. § 1983.

Engelmayer's order effectively acted as an injunction on the Defendant's ability to communicate with the Department of Education (DOE) and New York State Education Department (NYSED) during the 3020a process. Disciplinary Procedures and Penalties. This restriction directly impacted my ability to fulfill their employment obligations and defend themselves, thus infringing upon their property and liberty interests. Board of Regents v. Roth, 408 U.S. 564 (1972).

Under Cleveland Board of Education v. Loudermill, public employees with a property interest in their employment are entitled to a pretermination hearing, which includes notice and an opportunity to be heard. Loudermill. The restriction on communication imposed by Engelmayer's order hindered the Plaintiff's ability to adequately prepare and present their case, thereby violating their due process rights.

The restriction also raises significant federalism concerns, as highlighted in the Federal Register rule at 85 FR 84229, "Approval of Civil Consent Decrees with State and Local Governmental Entities." Federal court decrees that impose broad, ongoing responsibilities on state or local governments are considered extraordinary remedies and require heightened scrutiny. Engelmayer's order, by interfering with the state's

9

administrative processes, constitutes such an extraordinary remedy and should be scrutinized for its necessity and impact.

Furthermore, the restriction on communication could be seen as a violation of the Defendant's liberty interest, as established in Linda Donato v. Plainview-Old Bethpage Central School District The inability to communicate with DOE and NYSED could damage the Plaintiff''s professional reputation and foreclose future employment opportunities, entitling them to a name-clearing hearing.

The opposing party cannot argue—in good faith and not violate FRCP 11— the 3020a process was granted to me because they all knew of Engelmayer's order placed me at "mere notice" and is a violation of my due process rights.  ALJ Taylor knew and concealed the fact of Engelmayer's order with the fact that my lawyer contacted him with a request from Englemayer to adjourn the processing until the judge figures out a way for me to represent myself which was left out of the opinion. However, this argument fails to justify the deprivation of due process rights, as the Defendant was not afforded a full and fair opportunity to litigate, as required by Burkybile v. Board of Education

In conclusion, Engelmayer's order deprived the Defendant of property or liberty interests without due process, violating their constitutional rights under 42 U.S.C. § 1983, [Civil action for deprivation of rights.](#) The restriction's impact on the Defendant's employment obligations and the federalism concerns it raises further support the argument that the order was unjustified and unconstitutional.

10

## The Engelmayer order, by restricting communication with the DOE and NYSED during the 3020a process, effectively denied me a meaningful opportunity to be heard, thereby violating their Fourteenth Amendment rights under Loudermill.

Engelmayer's order, which prohibited communication with the Department of Education (DOE) and New York State Education Department (NYSED) during the 3020a process, constitutes a violation of my due process rights as established under Cleveland Board of Education v. Loudermill. Cleveland Board of Education v. Loudermill, 470 U.S. In Loudermill, the Supreme Court held that public employees with a property interest in their employment are entitled to a pretermination hearing. Loudermill. This hearing must provide the employee with a meaningful opportunity to be heard, which includes the ability to present my side of the story and respond to any allegations against them.

By restricting communication with the DOE and NYSED, Engelmayer's order effectively denied me the ability to gather necessary information and evidence to defend against the allegations. Disciplinary Procedures and Penalties. In fact, I limited to mere notice and no other procedures guarantee by 3020a statute or by the CBA between the UFT and the DOE. This restriction undermined the fundamental fairness required in the 3020a process, as it prevented me from accessing critical resources and support that could have been provided by these entities. Mathews v. Eldridge, 424 U.S. 319, 96 S. Ct. 893, 47 L. Ed. 2d 18 (Feb. 1976). The order, therefore, deprived me of a meaningful opportunity to be heard, as it limited their ability to fully participate in the pretermination hearing process. Goss v. Lopez, 419 U.S. 565, 95 S. Ct. 729, 42 L. Ed. 2d 725 (Jan. 1975).

Furthermore, the order's restriction on communication can be seen as arbitrary and capricious, lacking a rational basis, and thus shocking to one's sense of fairness, as outlined in [Pell v. Board of Education, 34 N.Y.2d 222 (NY May 1974).](#) The prohibition on communication was not justified by any compelling state interest and instead served to hinder my ability to mount an effective defense. This lack of justification further supports the argument that the order violated my due process rights.

Opponents may argue that the Engelmayer order had no affect upon the hearing—which appears to be the issue, but Engelmayer has issued any order to correct his political misconduct for Schumer and Randi. However, this argument fails to recognize that the integrity of the process is inherently tied to the fairness and completeness of the hearing. By denying me access to critical communication channels, the order compromised the very integrity it purported to protect. Additionally, the Federal Register rule at 85 FR 84229 emphasizes the need for heightened scrutiny and leadership approval when federal court decrees impose broad, ongoing responsibilities on state or local governments, highlighting the sensitive federalism concerns at play The Engelmayer order, by imposing such restrictions, failed to meet this standard of scrutiny.

In conclusion, the Engelmayer order's restriction on communication with the DOE and NYSED during the 3020a process violated my Fourteenth Amendment rights under Loudermill by denying them a meaningful opportunity to be heard. [Loudermill.](#) The order was arbitrary, lacked a rational basis, and failed to uphold the fairness required in disciplinary proceedings, thereby warranting its invalidation.

The opposing party may argue that the disciplinary actions were not arbitrary and capricious, as per Pell v. Board of Education, which holds that actions are valid if they have a rational basis and are not shocking to one's sense of fairness. Pell v. Board of Education, 34 N.Y.2d. However, the interference and inadequate representation in this case are indeed shocking to one's sense of fairness, as they deprived my of the opportunity to adequately defend themselves, thus violating their due process rights. , which Judge Engelmayer said on August 9, 2023

In conclusion, the alleged interference by Randi Weingarten and Judge Cogan, coupled with Engelmayer's order, deprived me of a fair hearing and violated my procedural due process rights under N.Y. Educ. Law § 3020-a Disciplinary Procedures and Penalties. The failure to provide adequate representation and the impact on procedural safeguards necessitate a finding in favor to uphold the integrity of due process protections for me.

## The alleged interference by Randi Weingarten and Judge Cogan proximately caused the DOE and NYSED to sustain pecuniary damages, satisfying the element of 'Damages' under Common Law Fraud.

The crux of the argument lies in establishing that the actions of Randi Weingarten and Judge Cogan were a substantial factor in causing AUSA Bensing's failure to fulfill her duties or lawyer Silverman, which directly led to the DOE and NYSED sustaining pecuniary damages. The precedent set in Leslie Block Kaye v. Marc E. Grossman underscores the necessity of proving economic injury directly caused by misrepresentation. Leslie Block Kaye v. Marc E. Grossman, Laura Anne Grossman, 202

13

F.3d 611 (2d Cir. Feb. 2000). Here, the alleged interference by Weingarten and Cogan can be seen as a form of misrepresentation, as it influenced AUSA Bensing to act contrary to his obligations, thereby causing economic harm to the DOE and NYSED.

In Bridgestone/Firestone, Inc. v. Recovery Credit Services, Inc., the court held that a claim of fraud requires a materially false representation, intent to defraud, reasonable reliance, and resulting damage. Bridgestone/Firestone, Inc. v. Recovery Credit Services, Inc., Revenue Recovery, Inc. and George Beladino, 98 F.3d 13 (2d Cir. Oct. 1996). The interference by Weingarten and Cogan can be construed as a material misrepresentation, as it led Bensing to neglect her duties. The DOE and NYSED reasonably relied on Silverman to perform his duties without external influence, and the resulting damage is evident in the pecuniary losses they sustained.

The foreseeability of the damages is another critical element. It was foreseeable that interference in the 3020a proceedings would disrupt the legal process and lead to economic harm. Disciplinary Procedures and Penalties. The damages sustained by the DOE and NYSED were not remote or speculative; they were a direct consequence of the interference, satisfying the foreseeability criterion.

Furthermore, the Federal Register rule at 85 FR 84229 emphasizes the need for heightened scrutiny in federal court decrees imposing broad responsibilities on state or local governments. Approval of Civil Consent Decrees with State and Local Governmental Entities. This rule supports the argument that the interference, which contravened the federal court's order, had significant implications for the DOE and NYSED, leading to quantifiable economic injury.

14

In conclusion, the alleged interference by Randi Weingarten and Judge Cogan was a substantial factor in causing AUSA Bensing's failure to fulfill her duties, directly leading to pecuniary damages for the DOE and NYSED. [Leslie Block Kaye v. Marc E. Grossman, Laura Anne Grossman, 202 F.3d.](#) The damages were foreseeable, quantifiable, and directly attributable to the interference, thereby satisfying the 'Damages' element under Common Law Fraud. [Bridgestone/firestone, Inc. v. Recovery Credit Services, Inc., Revenue Recovery, Inc. And George Beladino, 98 F.3d.](#)

## Conclusion

In conclusion, the order issued by Judge Engelmayer, which prohibited communication with the Department of Education (DOE) and the New York State Education Department (NYSED) during the 3020a process, constitutes a grave violation of the Defendant's constitutional rights. This order deprived me of property and liberty interests without due process, as mandated by Cleveland Bd. of Educ. v. Loudermill, due to the absence of a pretermination hearing and the misrepresentation of probation terms by AUSA Bensing. Furthermore, the order exceeded the permissible scope of federal intervention into state affairs, infringing upon the principles of federalism without compelling justification. The restriction on communication also represents an adverse action that would not have occurred but for AUSA Bensing's misrepresentation of terms of probation" before Engelmayer and part and parcel Engelmayer's conspiracy with Weingarten, thereby satisfying the causation element of a First Amendment retaliation claim.

**/s/ Lucio Celli**
**DATED: June 15, 2025**
**Respectfully submitted,**
Lucio Celli
89 Widmer Road
Wappingers Falls, New York 12590
917-275-3919
Lucio.Celli.12@gmail.com

# Certificate of Service

I hereby certify that on June 15, 2025, a copy of the foregoing Motion regarding constitutional violations and First Amendment retaliation claims was filed electronically. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt. Parties may access this filing through the Court's system.